**E-FILED**
Tuesday, 19 October, 2004 12:03:22 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| ANTHONY MALONE & BARBARA SIMS-MALONE, both on behalf of ANTHONY DeLANCE MALONE, deceased, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT NIELSON, n/a Robert Nielsen, Superintendent, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

**FILED**

OCT 1 8 2004

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Case No. 04-01137

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

NOW COME the Plaintiffs, Anthony Malone & Barbara Sims-Malone, both on behalf of

Anthony DeLance Malone, deceased, by and through their attorney, Susan Frances of the Law

Offices of Thomson & Weintraub, and, in support of their Response to Defendants' Motion to

Dismiss Plaintiffs' Second Amended Complaint, hereby submits their memorandum of law as

follows:

### I.     INTRODUCTION

This Court should deny Defendant's, ILLINOIS STATE BOARD OF

EDUCATION's ("ISBE"), Motion to Dismiss because this Court has subject matter jurisdiction

of the pending cause of action and the Plaintiffs filed the pending cause of action within the

statute of limitations.

## II.    ARGUMENT

### A.    Plaintiffs Having Standing to Sue Under Article III

Standing as granted by Article III of the U.S. Constitution is invoked by the plaintiffs establishing "(i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual . . .; (ii) a causal relationship between the injury and the challenged conduct . . .; and (iii) a likelihood that the injury will be redressed by a favorable decision." *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). Even though the party invoking federal jurisdiction has the burden of establishing these three elements, "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," because once the first element is satisfied, even a minor or non-economic injury will satisfy the second element and the third element does not need to be shown absolutely, as showing a "probabilistic benefit from winning a suit" is sufficient. *Family & Children's Center, Inc. v. School of Mishawaka*, 13 F.3d 1052, 1058 (7th Cir. 1994), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) and *North Shore Gas Co. v. E.P.A.*, 930 F.2d 1239, 1242 (7th Cir. 1991). The Plaintiffs have listed out the actual injuries incurred by their son, Anthony DeLance Malone, in their Second Amended Complaint. The specifics of the Defendant's conduct that caused the injuries to the student are concrete and particularized in the Plaintiffs' Second Amended Complaint. The Plaintiffs have met the first two elements of establishing standing under Article III.

Finally, the likelihood of redress does lie in the remedies requested in Count I of the Second Amended Complaint. The United State Supreme Court addressed the issue of whether or not the IDEA's "grant of authority includes the power to order school authorities to reimburse

2

parents for their expenditures on private special education for a child." *School Committee of the Town of Burlington v. Department of Education of Massachusetts*, 471 U.S. 359, 369 (1985). The Court determined that the IDEA does authorize such reimbursement. This case specifically granted reimbursement for parents who placed their child in a private educational setting and then requested reimbursement from the school. However, the Court went on to state that the "statute [IDEA] directs the court to 'grant such relief as [it] determines is appropriate.'" *Id.* Although the *Burlington* case is distinguishable from the case at bar in that the relief request was significantly more and was for a change in placement, the principal is the same. Due to the school's failure to implement an appropriate Individualized Educational Program ("IEP"), Mr. and Mrs. Malone were forced to seek out private psychological and medical services for their son. Should the Court find that these services were appropriate rather than the implemented IEP, then this Court would have the discretion of awarding either direct payment of these services to the providers or reimbursement for these services to the Plaintiffs.

The United States Supreme Court again upheld the principal that once a court determines that the IEP has been violated, that court is authorized to grant such relief as the court determines is appropriate. *Florence County School District Four v. Carter*, 510 U.S. 7, 15-16 (1993). The *Carter* case is also distinguishable from the case at bar because it dealt with the issue of reimbursement for private placement of a child by the parents. But again, the principal of reimbursing the parents when the school has failed to implement the child's IEP and, therefore, failed to provide a free appropriate public education is the same. "Under previous incarnations of the IDEA, exceptional circumstances were needed to justify monetary relief, . . . . However, the Supreme Court's opinion in . . . *Burlington* . . . eliminates any such requirement." *Mary P. V. Illinois State Board of Education*, 919 F. Supp. 1173, 1181 (N.E. Ill. 1996). In *Mary P.*, the

3

school's "public placement," or lack thereof, violated the IDEA by failing to provide appropriate speech therapy to the student. The Court ordered the school to reimburse the parents for the cost of private speech therapy. *Id*. at 1181 - 1182.

The Seventh Circuit has provided that the IDEA "does not contain an explicit limit [on money damages], but the structure of the statute - - with its elaborate provision for educational services and payments to those who deliver them - - is inconsistent with monetary awards to children and parents." *Charlie F. v. Board of Education of Skokie School District 68*, 98 F.3d 989, 991 (7th Cir. 1996). The Court in *Charlie F.* dismissed that case for failure of the plaintiffs to exhaust all administrative remedies and would not award monetary damages because the plaintiffs had not attempted to receive the relief available under the IDEA. However, the Court went on to state that the IDEA requires that the school district provide "related services," which include "supportive services (including . . . social work services, counseling services . . . )." *Id*. at 992-993. In the case at bar, the Plaintiffs did exhaust all administrative remedies. The Plaintiffs requested relief in Count I of their Second Amended Complaint is relief this Court may grant under the IDEA and governing case law. Even if the only remedy the Plaintiffs recover is the costs incurred for psychological services for the student, they will have benefitted from the suit. Hence, the Plaintiffs' Second Amended Complaint satisfies the third element of establishing standing under Article III.

Even if a party satisfies the Article III criteria, a federal court may preclude a litigant's standing based on prudential limitations. *Family & Children's Center, Inc. v. School of Mishawaka*, 13 F.3d 1052, 1059 (7th Cir. 1994). The U.S. Supreme Court explained that, in the cases where only Article III needs to be satisfied and the prudential limitations are barred, as long as the Article III elements are established, "persons to whom Congress has granted a right of

4

action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others." *Id.* at 1060. The Seventh Circuit held, in *Family & Children's Center, Inc. v. School of Mishawaka*, that "Congress has implicitly granted standing under the IDEA to the limits of Article III . . . [and] a litigant under the IDEA must only satisfy the rather 'undemanding' requirements of Article III." *Barbara Z. V. Board of Education of District #156*, 937 F. Supp. 710, 718 (N.D. Ill. 1996), citing *Family & Children's Center, Inc. v. School of Mishawaka*, 13 F.3d 1052, 1058 (7th Cir. 1994). As stated above, the Plaintiffs have satisfied the requirements of Article III. In addition, in Defendant's Memorandum of Law, they only challenge the Plaintiffs' constitutional standing.

## B. **Plaintiffs Having Standing to Sue Under IDEA**

The Seventh Circuit dismissed a class action suit against the ISBE and affirmed that the Individuals with Disabilities Education Act ("IDEA") is meant to provide for "a 'free appropriate public education' to individual children with disabilities." *Reid L. v. Illinois State Board of Education*, 358 F.3d 511, 516 (7th Cir. 2004). The Seventh Circuit also held that the minimal procedural requirements required by IDEA "shall include, but shall not be limited to" the procedures provided in the federal statute. *Family & Children's Center, Inc. v. School of Mishawaka*, 13 F.3d 1052, 1060 (7th Cir. 1994). State statutes may create even more protections than those provided in the federal statute. The Illinois School Code defines "children with disabilities" and "children with specific learning disabilities" as "children between the ages of 3 and 21" years who meet certain requirements laid out under Illinois and federal law. 105 ILCS 5/14-1.02 and 5/14-1.03a. Further, the Illinois School Code provides that "the parents" may request a Level I due process hearing, that "[a]ny party" aggrieved by the Level I hearing officer's decision may appeal to a Level II review, and that "[a]ny party" aggrieved by the Level

II hearing officer's decision may bring a civil action. 105 ILCS 5/14-8.02. In this matter, the student, Anthony DeLance Malone, was sixteen years old when the due process hearing, which Hearing Officer Ladenson eventually dismissed, was initiated. In his Opinion and Order of Dismissal, Hearing Officer Ladenson stated that the student achieved his age of majority on September 2, 2002 and "on April 5, 03 the Student submitted a letter affirming that he wanted the due process hearing to go forward." (See Exhibit A attached hereto.) Despite the student having attained the age of majority prior to Hearing Officer Ladenson issuing his order, Mr. and Mrs. Malone have standing under the IDEA to bring this civil action on the student's behalf.

The Seventh Circuit recognizes that the Illinois Survival Act provides that actions to recover damages for injury to the person survive death and that although "[e]arly interpretations of the act held that only actions for physical damages, not emotional damages, survived death[,] [c]ourts now view that act as a remedial statute that is to be construed liberally to avoid abatement." *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002); *see also Owens v. Archer-Daniels-Midland Company*, 30 F. Supp. 2d 1082 (C.D. Ill. 1999). As the administrators of their son's intestate estate, filed on October 15, 2004, in the Circuit Court of the Tenth Judicial Circuit, State of Illinois, McLean County Case Number 04 P 265, Mr. and Mrs. Malone have the right to follow up on a cause of action to recover damages for an injury to the person of their son. 755 ILCS 5/9-1, 5/9-2, and 5/27-6. In addition, Federal Rules of Civil Procedure 17 provides that an administrator or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought. 28 U.S.C. 17. Despite the student having died prior to Hearing Officer Ladenson issuing his order, the parents of the student still have standing to bring the pending cause of action.

6

## C.  Plaintiffs' Cause of Action is Not Moot

The United States Supreme Court has long held that "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486 (1969).  In Sections II.A. and II.B. above Plaintiffs have argued that they have standing.  Within their arguments for standing, the Plaintiffs set forth allegations of wrongdoing and allege the wrongdoing is the cause of the student's injuries and these allegations are clearly contested between the parties.  In *Nathan R.*, the Court determined the case was moot because the student graduated and the relief sought was no longer viable.  *Board of Educ. Of Oak Park v. Nathan R.*, 199 F.3d 377 (7th Cir. 2001).  The Court stated that since the relief requested would neither affect the student's rights nor the school's rights that the case was moot.  *Id.*, citing *Crane v. Indiana High Sch. Athletic Ass'n*, 975 F.2d 1315 (7th Cir. 1992) (stating that the test for mootness is whether the relief sought would affect a legal interest of the parties and deciding that a graduated high school student's legal interest could still be affected by the disposition because the plaintiff sought the return of an award the student received while in high school).  In *Stotts*, the Court found the case moot because the relief requested was no longer available upon the student's graduation.  *Stotts v. Comm. Unit Sch. Dist. No. 1*, 230 F.3d 989 (7th Cir. 2000).   Unlike *Stotts* and *Nathan R.,* the Plaintiffs in this case have requested relief that is appropriate to administer at this time to the student's estate.  Like in *Crane*, the ability of the court to administer relief in this case is indicative of a "live" case and controversy.

In *McCormick v. Waukegan School District*, the Court stated that the fact that the student had graduated from high school did not necessarily eliminate the ability of the student to receive benefits provided under IDEA and therefore the issue was not moot.  *McCormick v.*

7

*Waukegan School District*, 374 F.3d 564, 568 (7th Cir. 2004). As in the *McCormick* case, this Court has the discretion to hear the case at hand.

### D.    Requested Damages Available under IDEA

The United States Supreme Court addressed the issue of whether or not the IDEA's "grant of authority includes the power to order school authorities to reimburse parents for their expenditures on private special education for a child." *School Committee of the Town of Burlington v. Department of Education of Massachusetts*, 471 U.S. 359, 369 (1985). The Court determined that the IDEA does authorize such reimbursement. This case specifically granted reimbursement for parents who placed their child in a private educational setting and then requested reimbursement from the school. However, the Court went on to state that the "statute [IDEA] directs the court to 'grant such relief as [it] determines is appropriate.'" *Id*. Although the *Burlington* case is distinguishable from the case at bar in that the relief request was significantly more and was for a change in placement, the principal is the same. Due to the school's failure to implement an appropriate Individualized Educational Program ("IEP"), the Plaintiffs were forced to seek out private psychological and medical services for their son. Should the Court find that these services were appropriate rather than the implemented IEP, then this Court would have the discretion of awarding either direct payment of these services to the providers or reimbursement for these services to the Plaintiffs.

The United States Supreme Court again upheld the principal that once a court determines that the IEP has been violated, that court is authorized to grant such relief as the court determines is appropriate. *Florence County School District Four v. Carter*, 510 U.S. 7, 15-16 (1993). The *Carter* case is also distinguishable from the case at bar because it dealt with the issue of reimbursement for private placement of a child by the parents. But again, the principal of

8

reimbursing the parents when the school has failed to implement the child's IEP and, therefore, failed to provide a free appropriate public education is the same. "Under previous incarnations of the IDEA, exceptional circumstances were needed to justify monetary relief, . . . . However, the Supreme Court's opinion in . . . *Burlington* . . . eliminates any such requirement." *Mary P. V. Illinois State Board of Education*, 919 F. Supp. 1173, 1181 (N.D. Ill. 1996). In *Mary P.*, the school's "public placement," or lack thereof, violated the IDEA by failing to provide appropriate speech therapy to the student. The Court ordered the school to reimburse the parents for the cost of private speech therapy. *Id.* at 1181 - 1182. The Plaintiffs requested relief for reimbursement of services in Counts I thru IV is available through the IDEA.

## E.    Plaintiffs' IDEA Claims Fall Within Statute of Limitations

Under IDEA, a request for judicial review of an administrative decision regarding a student's educational program is governed by a 120 day statute of limitations. *Dell v. Board of Education of Township High School District 113*, 32 F.3d 1053 (7th Cir. 1994). Hearing Officer Ladenson sent his Opinion and Order of Dismissal (see Exhibit A attached hereto) by fax transmission, certified, and regular U.S. mail on January 5, 2004. Plaintiffs filed their Complaint (see Exhibit B attached hereto) on May 3, 2004. Hence, Plaintiffs' Complaint was filed 119 days after Hearing Officer Ladenson's decision was sent to the parties. Therefore, Plaintiffs' cause of action falls within the 120 day statute of limitations.

## III.    CONCLUSION

Plaintiffs have standing to pursue the pending cause of action because they satisfy the elements required under Article III of the U.S. Constitution. Plaintiffs have standing under IDEA as the parents of a child between the ages of 3 and 21 and as the administrators of their son's intestate estate. Finally, the Complaint was filed within the applicable 120 day statute of

9

limitations. Therefore, this Court has subject matter jurisdiction and the cause of action was brought within the statute of limitations. Hence, the Defendants' Motion to Dismiss should be denied.

WHEREFORE, the Plaintiffs, Anthony Malone & Barbara Sims-Malone, both on behalf of Anthony DeLance Malone, deceased, respectfully request that this Honorable Court deny the Defendants' Motion to Dismiss, and grant such further relief as this Honorable Court deems in equity to be proper and just.

Respectfully submitted,
Anthony Malone and Barbara Sims-Malone,
Plaintiffs,

By: _____
Susan Frances, Plaintiffs' Attorney

Prepared by:
SUSAN FRANCES
LAW OFFICES OF THOMSON & WEINTRAUB
105 NORTH CENTER STREET
P.O. BOX 3577
BLOOMINGTON, ILLINOIS 61702-3577
TELEPHONE (309)829-7069
FAX (309)827-3458
EMAIL: SFRANCES@TNWLAW.COM

Robert F. Ladenson
1466 E. 56th St.
Chicago, IL 60637
(312) 567-3474 (O)
(773) 643-5307 (H)
(312) 567-5187 (Fax)

Sent by Fax Transmission, Certified, and Regular U.S. Mail

1/5/04

Mr. Anthony and Ms Barbara Malone
601 Normal Avenue
Normal, IL 61761

Ms Megan Guenther
Miller, Tracy, Braun, Funk & Guenther Ltd.
316 S. Charter
P.O. Box 80
Monticello, IL 61856-0080

Re: Anthony Malone and Bloomington School District 87 (Case # 002615)

### Opinion and Order of Dismissal

#### Background:

The Hearing Officer received his notice of appointment on January 25, 02. After several phone calls he succeeded in contacting both parties, who agreed upon the date of March 18, 02 for a face-to-face pre-hearing conference meeting, which took place as scheduled in the administrative offices of the School District. At the meeting the parties agreed upon the date of May 24, 02 for the Due Process Hearing in this matter to take place. On April 5, 02 the Hearing Officer received a motion from the School District requesting him to order that the issues in controversy at the Due Process Hearing be limited to complaints of the Parents relating to events that had taken place subsequent to the date of October 23, 2000. On May 17, 02 the Hearing Officer issued a ruling that granted the School District's motion.

Several days before the Due Process Hearing scheduled for May 24, 02 was to take place, the Student's Mother notified the Hearing Officer of a severe medical condition, requiring hospitalization, as a result of which the Hearing Officer postponed the proceedings until the beginning of the 2002-03 school term. During the fall of 2002 several jointly requested postponements followed, with the result that the parties agreed to hold a reconvened Pre-Hearing Conference meeting, by way of a telephone conference call, on November 25, 02. At the reconvened Pre-Hearing Conference, which took place

### EXHIBIT A

as scheduled, the parties agreed to reschedule the Due Process Hearing for February 3, 03.

On January 10, 03 the Hearing Officer received a motion to dismiss from the School District, based upon the fact, represented in the motion, that the Student had achieved his age of majority on September 2, 2002. The Hearing Officer attempted immediately to schedule a conference call meeting with the parties to determine the Student's wishes concerning whether the Due Process Hearing should go forward. On January 23, 03 the Hearing Officer received another motion from the School District. This second motion requested that the Hearing Officer continue the proceedings, noting that, according to information the Parents had conveyed to the School District, their home had suffered serious fire damage, which required the family to move while repair and rehab work was taking place. The Hearing Officer granted the motion. Subsequently, on April 5, 03 the Student submitted a letter affirming that he wanted the due process hearing to go forward, and, accordingly, the Hearing Officer set May 28, 03 and May 29, 03 as hearing dates.

On May 28, 03, the day of the first session of the Due Process Hearing, the Parents presented a request, conveyed in a letter signed by the Student, that the Due Process Hearing be postponed because he could not attend owing to illness. By way of explanation, the Parents stated at the Hearing that the Student had a severe sore throat and high fever. They requested that the Hearing Officer postpone the proceedings, and reschedule them to take place in late August at the beginning of the 2003-04 school year. Counsel for the School District objected to the Parents' request. She noted that the Due Process Hearing in this matter had been postponed several times already over the past year. She noted also the effort and expense to which the School District had been put to prepare for the Hearing. Counsel for the School District stated as well that one of the School District witnesses was about to retire as a teacher, and another witness, who had already retired, was substantially inconvenienced by having to appear at the Due Process Hearing.

After due deliberation, the Hearing Officer decided to grant the Parents' request for postponement of the Hearing. In doing so, he acknowledged the inconvenience and expense to which the School District had been put. He noted also, however, that several issues in the case, identified in his Pre-Hearing Conference Reports of March 18, 02 and November 24, 02, concerned treatment of the Student by his teachers, including comments they made to him, which, according to the viewpoint of the Parents and the Student, amounted to significant failures in the implementation of the Student's IEP.

The Hearing Officer thus decided to postpone the Due Process Hearing until the beginning of the 2003-04 school year. In addition, he ruled that the issues to be considered at the Hearing would be limited only to those that the Hearing Officer had ruled were to be considered at the sessions of the Hearing scheduled for May 28, 03 and May 29, 03, and that the cut-off date for introduction of witnesses and evidence would remain as May 23, 03 (i.e. the cut-off date for the sessions scheduled to take place on May 28, 03 and May 29, 03).

On September 2, 03 the Hearing Officer received word from the School District that the Student in this matter had died on August 29, 03.

On October 31, 03 the School District presented to the Hearing Officer a motion to dismiss the request for a Due Process Hearing. The Hearing Officer responded on November 11, 03 by giving the Parents an opportunity to respond by November 21, 03. The Parents responded on November 20, 03, indicating that they wished for the Due Process hearing to proceed, and informing the Hearing Officer that they had had not received a copy of the School District's motion to dismiss. The Hearing Officer enclosed a copy of the School District's motion in a communication he sent to the Parents on November 26, 03, which he sent also to the School District, stating that he would give the Parents until December 19, 03 to respond to the School District's motion, and then issue his ruling on the motion by no later than January 5, 04. The Parents responded on December 19, 03 with their argument in support of denying the School District's motion to dismiss.

## Position of the School District:

1. The parents of [the Student] initiated the instant proceeding.
2. 20 U.S.C. 1414 (m)(1)(B) recites that states may provide that when a child with a disability reaches the age of majority "all other rights accorded to parents under this subchapter transfer to the child."
3. 23 Ill.Adm.Code sec. 226.690(a) provides for the transfer of parental rights to the student with a disability when the student reached eighteen (18) years of age.
4. [The Student] attained majority on September 2, 2002, and the School District informed [the Student] of the rights that would be transferred to him upon his attaining the age of majority. ....
5. The rights afforded to the Parents under state and federal [law] devolved upon [the Student].
6. Due to a sad and unfortunate turn of events, [the Student] passed away on August 29, 2003.
7. For the foregoing reason, the issues underlying the Due Process Request [are] moot. **WHEREFORE** [the School District] prays that the Impartial Due Process Hearing Officer dismiss the due process hearing request with prejudice and for such other further relief as he deems just and proper.

## Position of the Parents:

1. The parents of [the Student] did initiate the instant proceeding and hereby request a continuation of said proceedings.
2. Acknowledging 23 U.S.C. 1414 (m)(1)(B) recites that states may provide that when a child with a disability reaches the age of majority "all other rights accorded to parents under subsection transfer to the child."

3

3. Acknowledging 23 Ill.Adm.Code 226.690(a) provides for the transfer of parental rights to the student with a disability when the student reaches eighteen (18) years of age.

4. Acknowledging, [the Student] attained majority on September 2, 2002, and the School District informed [the student] of the rights that would be transferred to him upon attaining the age of majority.

5. Subsequent to transference of parental rights, according to **23 Ill. Adm. Code 226.690**, [the Student], through a notarized legal document transferred parental rights back to [the Parents], submitted to [the Hearing Officer] and [the School District], May 2003. **Said Notarized and Legal Document stated that [the student] was aware of his legal rights, however, wished that [the Parents] continue to represent him. Further, he strongly insisted that the Due Process hearing go forward. ...**

6. The rights afforded to the parents under state and federal law were transferred and reinstated by [the Student] to [the Parents].

7. Despite the sad event of [the Student's] passing August 29, 03, for legal reasons, [the Student's] last request, and the trauma he experienced at the hands of teachers and administrators in [the School District]

8. For the foregoing reasons, the issues underlying the Due Process Request are established. **WHEREFORE,** [The Parents] pray that the Impartial Due Process Hearing Officer continue the due process hearing request with prejudice and for such other and further relief as he deems just and proper.

## Opinion:

After due consideration, the Hearing Officer had decided to grant the School District's motion to dismiss. In doing so, however, he believes he must provide a clear and full explanation of his reasons, not just as a matter of courtesy to the Parents, but also of moral obligation, given the deeply sorrowful and tragic circumstances of this case.

The Hearing Officer begins his explanation by noting that his legal authority is both grounded in, and determined, relative to its legitimate scope, by the Individuals With Disabilities Education Act (IDEA) 20 U.S.C. 1400-1485, which requires states receiving funds under the Act to establish and maintain due process hearing review systems. The only purpose of a due process hearing, specifically mentioned in the IDEA is to provide parents "an opportunity to present complaints relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. 1415 (b)(6) Furthermore, the paragraph immediately following the one containing the above quoted statutory language goes on to say:

... the Parent of a child with a disability, or the attorney representing the child [is required] to provide notice (which shall remain confidential) ... to the State educational agency or the local educational agency, as the case may be, in [her or his] complaint under [the immediately preceding paragraph in the Statute] ... that shall include ... a proposed

4

resolution of the problem to the extent known and available to the
parents at the time. 20 U.S.C. 1415 (b)(7)

The Hearing Officer concludes from his review of the statutory language of the IDEA
that a due process hearing may have only one purpose - to resolve a controversy between
parties over the identification, evaluation, educational placement, or provision of a free
appropriate public education to a specific student. This purpose, in turn, the Hearing
Officer believes, entails, both logically and legally, two significant limitations upon the
legitimate scope of his authority in the circumstances of this case, which he shall develop
immediately below.

First, a due process hearing officer is not authorized, under the IDEA, to announce
findings in regard to a given matter, apart from issuing definite orders to the parties
concerning the identification, evaluation, educational placement, or provision of a free
appropriate public education for the student in the case. In this regard, a special
education due process hearing differs, in virtue of the restriction placed upon its purpose
by the IDEA, from the proceedings of bodies that at times are created, and given
significant legal authority, to analyze the presentation of evidence and testimony of
witnesses for no other reason than to arrive at legal, moral, or factual findings in regard to
a particular matter (e.g. the Warren Commission that investigated the assassination of
President John F. Kennedy). A due process hearing officer, however, lacks such
authority. Under the IDEA, any findings she or he announces in a given case must
provide the basis for issuance of definite orders to the parties concerning the
identification, evaluation, educational placement, or provision of a free appropriate public
education for the student in the case.

Second, and implicit in the limitation developed immediately above, a due process
hearing must be child specific. That is to say, a due process hearing officer would exceed
the legitimate scope of her or his authority by issuing orders that called upon a school
district to make system wide changes in its policies, practices, and procedures, rather than
focusing upon issues concerning identification, evaluation, educational placement, or
provision of a free appropriate public education with respect the student involved in the
case. Some governmental agencies have the authority to order implementation by a
school district of system wide changes -- e.g. the Office of Civil Rights (OCR) and the
Office of Special Education Programs (OSEP) of the U.S. Department of Education. In
contrast, the orders issued by a due process hearing officer, under the IDEA, may relate
only to a specific student with respect to whom identification, evaluation, educational
placement, or provision of a free appropriate public education are matters in controversy
at a due process hearing.

If this Hearing Officer were to allow the proceedings in this matter to continue, he
would have to reach a conclusion, after reviewing evidence and testimony presented, as
to whether or not the School District fulfilled its responsibilities to the Student under state
and federal laws relating to special education. Based upon the preceding analysis,
however, it seems apparent to this Hearing Officer that after reaching such a conclusion
he would find himself in the following legally untenable position. In virtue of the

5

untimely and tragic death of the Student in this matter, the Hearing Officer no longer can issue any child specific orders with respect to the Student concerning identification, evaluation, educational placement, or measures the School District must implement to provide the Student a free appropriate public education. Accordingly, either (a) the Hearing Officer could simply announce his conclusion without issuing any orders based upon it, or (b) he could issue orders based upon his conclusion, but of a system wide, rather that a child specific, nature, directing the School District to implement changes in its general policies, practices, and procedures. As already indicated, however, in the opinion of the Hearing Officer, given the purpose of a due process hearing, under the IDEA, both courses of action (a) and (b) lie outside the legitimate scope of his authority.

Based upon the preceding reasons, which the Hearing Officer has sought to develop clearly, fully, and, as best he can, with appropriate consideration for the feelings of the Parents in light of the tragic and sorrowful circumstances of this case, he concludes that he has no other alternative, under State and federal law, than to grant the motion presented by the School District. Accordingly,

## IT IS ORDERED THAT:

The proceedings in the above captioned matter are hereby dismissed.

## Right to Request Clarification

Either party may request clarification of this order by submitting a written request to the Hearing Officer within five (5) days of receipt of this order. The request for clarification shall specify the portions of the order for which clarification is sought, and a copy of the request shall be mailed to the other party and to the Illinois State Board of Education. **The right to request such clarification does not permit a party to request reconsideration for the order itself, and the Hearing Officer is not authorized to entertain a request for reconsideration.**

## Finality of Order

This order shall be binding upon the parties unless a civil action is commenced.

## Right to File a Civil Action

Any party to this matter aggrieved by this final order has the right to commence a civil action. Pursuant to 105 ILCS 5/14-8.02a (i), that civil action shall be brought in any court of competent jurisdiction within 120 days after a copy of this order is mailed to the parties.

*Robert F. Ladenson*

Robert F. Ladenson
Due Process Hearing Officer

Cc: Mr. Dale E. Boyd, Due Process Coordinator
    Illinois State Board of Education

COPY

RECEIVED
MAY - 3 2004
U.S. CLERK'S OFFICE
PEORIA, ILLINOIS

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

Anthony and Barbara Malone                    )
Re: ANTHONY D. MALONE **Plaintiff**           )
                                              )
                                              )
        **vs.**                               ) **Case No.** 04-1137
                                              )
Illinois State Board of Education             )
Bloomington School District #87              )
Robert Neilson, Becky Francois;              )
Barry Reilley, Cindy Helmers                 )
Cindy Lundberg **Defendant(s)**               )
AnnMarie Stephen, Tim Moore
Joel Misukonis, Donna Engles **COMPLAINT**
Bloomington Dist. 87 School Board

X42 U.S.C. §1983 (suit against state officials for constitutional violations)

□28 U.S.C. § 1331 (suit against federal officials for constitutional violations)

XOther  105 ILCS 5/14-8.02a(i)
____  Public Law 101-476 (IDEA)
____

*Please note: This form has been created for prisoners but can be adapted for use by non-prisoners.*

        Now comes the plaintiff, Anthony + Barbara Moore , **and states as**
**follows:**

**My current address is:**  408 E. Douglas   Bloomington, IL 61701
_____

**The defendant** Robert Nielson , **is employed as** Superintendent
_____ **at** Bloomington School Dist. #87

**The defendant** Becky Francois , **is employed as** Director of Special
       Education        **at** Bloomington School Dis #87

EXHIBIT
B

The defendant _Barry Reilly_, is employed as _Assist. Superintendent_ at _Bloomington Public School Dist #87_

The defendant _Cindy Helmers_, is employed as _Principal_ at _Bloomington H.S. Dist # 87_

(revised 9/96)

The defendant _Cindy Lundberg_, is employed as _Counselor_ at _Bloomington H.S. Dist. #87_

Additional defendants and addresses _attached_

For additional plaintiffs or defendants, provide the information in the same format as above on a separate page.

**LITIGATION HISTORY**

**A.** Have you brought any other lawsuits in state or federal court dealing with the same facts involved in this case?        Yes        ☐        No  ☒

If yes, please describe

_____

_____

_____

**B.** Have you brought any other lawsuits in state or federal court while incarcerated?

_N/A_        Yes        ☐        No  ☐

**C.** If your answer to B is yes, how many? _____ Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

   1. Parties to previous lawsuit:

     Plaintiff(s) _____

     Defendant(s) _____

     _____

   2. Court (if federal court, give name of district; if state court, give name of county)

*ADDITION   ' Defendant list*

Attachment of additional defendants and addresses

The defendant <u>Ann Marie Stephens</u> , is employed as
<u>Home Economics Teacher</u> at <u>Bloomington H.S. Dist. #87</u>

The defendant <u>Tim Moore,</u> is employed as
<u>Assistant Principal</u> at <u>Bloomington H.S. Dist. #87</u>

The defendant <u>Joel Misukonis</u> is employed as
<u>Art Teacher</u>    at   <u>Bloomington H.S. Dist. #87</u>

The defendant <u>Donna Engel, is employed as</u>
<u>Special Education Teacher</u> at <u>Bloomington H.S. Dist. #87</u>

The defendant <u>Bloomington Public School District #87</u> in
<u>Bloomington, Illinois</u>

The defendant <u>Sally Tucker</u> is the <u>Assistant Superintendent of Curriculum & Instructions</u>
<u>and supervisor of Becky Francois Special Education Director of Bloomington Public</u>
<u>School District #87</u> in <u>Bloomington, Illinois</u>

<u>Bloomington Public School District #87 Past and Present</u>
<u>Janella Cooley</u>
<u>Diana McCauley</u>
<u>Randy Burge</u>
<u>Keith Davis</u>
<u>Janice Smith</u>
<u>Cheryl Jackson</u>
<u>Kathy Havens</u>

<u>Attorney Richard Simpkins</u>
<u>State Farm Insurance Company</u>
<u>Bloomington, Illinois</u>

<u>Hearing Officer Julia Dempsy</u>
<u>Illinois State Board of Education</u>
<u>Springfield, Illinois</u>

Officers of the Illinois State Board of Education
Springfield, Illinois

_____

3. **Docket Number/Judge**

_____

4. **Basic claim made**

_____

5. **Disposition (That is, how did the case end. Was the case dismissed? Was it appealed? Is it        still pending?)**

_____

6. **Approximate date of filing of** lawsuit_____

7. **Approximate date of disposition**

_____

For additional cases, provide the above information in the same format on a separate page.


## EXHAUSTION OF ADMINISTRATIVE REMEDIES

A. **Is there a grievance procedure available at your institution?  Yes  ☒  No  ☐**

B. **Have you filed a grievance concerning the facts relating to this complaint?   Yes  ☒ No  ☐  If your answer is no, explain why not**

_____

_____

_____

C. **Is the grievance process completed?    Yes  ☒  No  ☐**

*PLEASE NOTE:  THE PRISON LITIGATION REFORM ACT BARS ANY*

*INCARCERATED PERSON FROM BRINGING SUIT CONCERNING THE CONDITIONS OF HIS CONFINEMENT UNLESS AND UNTIL HE HAS EXHAUSTED AVAILABLE ADMINISTRATIVE REMEDIES. PLEASE ATTACH COPIES OF MATERIALS RELATING TO YOUR GRIEVANCE.*

## STATEMENT OF CLAIM

Place of the occurrence  Bloomington High School / Bloomington, Illin.

Date of the occurrence  1999 — 2004

Witnesses to the occurrence _____

*State here briefly the FACTS that support your case. Describe how EACH defendant is involved.*
*Do not give any legal arguments or cite cases or statutes. Number each claim in a separate paragraph.*
*Unrelated claims should be raised in a separate civil action.*
        *THE COURT STRONGLY URGES THAT YOU USE ONLY THE SPACE PROVIDED.*

## STATEMENT OF CLAIM

Place of the occurrence  Bloomington High School District #87-1202 E. Locust Street, B
                         Bloomington, IL

Date of the occurrence  School years 1999 thru 2003

Witnesses  Administrators, School Psychologist, Private Psychologist, Teachers,
classmates, attendance clerk, minister and family, siblings, parents

The Illinois State Board of Education, Bloomington District # 87, Bloomington Public
Schools Board of Education. Bloomington High School District #87 and individual
defendant.

1. Student was removed from regular education classroom without notification to parent, special education case manager and other staff, and placed in a detention room for approximately three weeks.

2. School district failed to convene a multidisciplinary staffing with notification to parent to determine change in students Individualized Educational Plan.

3. During a three week period, student was denied cafeteria privileges. Student was not allowed to eat with his peers or given the same lunch menu. Student was restricted to water and a cold sandwich.

4. Student was threatened by assistant principal that he would be suspended for the remainder of the school year if he left the detention room during the fourth hour period.

5. Student was told by assistant principal that his parents had no say over her power or her authority to discipline him in any way she chose.("I can do anything to you that I want, and nobody is going to do anything to me about it. I don't care who you tell")

6. Student was suspended in excess of the legal limit of 10 days.

7. Student was suspended frequently for conduct that other students committing the same offense would not be suspended for.

8. Parent was denied the right granted to other parents to call in sick excuses for student. (Attendant clerk under the order of her supervisor was told if the Malone's call in for their son for any reason, that only the supervisor could approve the call whether he was sick or not- and on several occasions the student was marked truant instead of being approved for being sick. The student suffered an excessive number of Saturday detentions and school suspensions.)

9. Teachers refused to provide needed modifications and assistance to student.

10. Special Education department failed to provide legally required three-year evaluations for student.

11. Special Education department, teachers, and school district failed to provide an appropriate education for student.

12. Teachers retaliated against student because of due process proceedings. **(Student was given failing grades in two classes and parents were told by teachers that they were going to fail the student because due process was filed, and we were rudely told to "get your attorney")**

13. Student was unfairly and inappropriately required to make-up an excessive amount of work missed because of illegal removal from regular class by school counselor and administrator.

14. Student was subjected to physical and verbal abuse by hall monitor.

15. Counselor subjected student to psychological abuse. **(Counselor told the student that all of his teachers complained that he had a body odor and he needed to bathe. She also stated that he was not wanted in their classroom smelling up their classroom.)**

16. Student suffered from lack of self esteem and he felt unwanted because of the way the counselor spoke down to him and made him feel unwanted, unclean, and helpless. and **they took his dignity.**

17. Mother suffered over 30-day hospitalization and traumatized for more than six months due to the severity of the stress related disease. "Shingles" Documentation of the time and duration of the diagnosis will be provided upon request.

18. Stress from abuse contributed to son's death. (Because of the four years of continued stress and racial discrimination, singling out, taunting by the assistant principals, and feeling hurt and unwanted until he graduated.)

## RELIEF REQUESTED

1. All defendants should be disciplined through the courts for federal, state and local violations. Specifically, discipline should be handed out due to violations of Public Law 101-476 IDEA.

   A. Order of implementation by the School District

   B. To analyze the presentation of evidence and testimony of witnesses for reason to arrive at legal, moral, and factual findings in regards to the harmful abuse of Anthony DeLance Malone and other students that suffer the same abuse from teachers and administrators in over stepping their boundaries, their authority when discipline is needed for students, and also when discipline **is not needed**, and **some still suffered unwarranted suspensions and detentions.**

   C. Make School District, to make system wide changes in its policies, practices, and procedures, any teachers or administrators breaking these changes willingly putting students in harms way of failing, not being successful, breaking students spirits-self-esteem, being singled out for racial or religion and discriminatory acts should face very hard and strict punishment, to even loosing their jobs.

D. Specifically speaking of the Superintendent, principal, assistant principal should loose their jobs because of the racial discrimination and actions that were imposed willingly by these superiors. (If these superiors were African American they would have been fired if these things would have happened to a Caucasian child.

E. The superiors (Superintendent, principal, assistant principal, and teachers) should go through a psychological assessment and if they fail, they should **loose their jobs.**

2. Plaintiffs are requesting punitive/monetary damages for pain and suffering based on the following claims:

   - I want a written apology from all of the defendants for abusing my son, denying him his educational and civil rights.
   - Denial of equal access to a quality education (books on tape, reading program, extra curricular activities (sports)
   - Denial of a free and appropriate education (forced to leave lunch tray because he did not have identification badge)
   - Forced to replace identification badge ($3.00) or suspended from school, not allowed to attend class-Violation of civil rights.
   - Damage to self esteem: emotional pain and suffering (Student was routinely ridiculed and embarrassed in front of friends and classmates due to unfair and harmful discipline policies
   - Physical pain and suffering (Cost of hospitalization, damage to physical and emotional health of parent (s)- Mrs. Malone
   - Economic pain and suffering ( transportation costs and psychological services, time taken off from work to attend an excessive number of meetings to address unfair policies for a two year period)

3. Installation of an Parent/Student Advocacy Board

   - To help parents and students with complaints against teachers, administrators, principals, assist. principals, and anyone holding a title that is employed by the Bloomington Public Schools, District # 87;
   - To help with the writing and filing complaints;
   - To advocate and speak on behalf of parents and students at school meetings, staffings, multidisciplinary meetings and hearings;
   - To use school funds to provide educational programs for parents of special and regular education students on parental and school legal rights and responsibilities;
   - To collect complaints and make sure they are directed to the appropriate place (s) and person (s).

## RELIEF REQUESTED

*(State exactly what relief you want from the court.)*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**JURY DEMAND**        Yes ☒        No ☐

Signed this *May 3rd* day of *May* ,

~~19~~ *2004*.

**(** *Signature of Plaintiff)*

| Name of Plaintiff: *Anthony Malone* | Inmate Identification Number: |
|---|---|
| *Barbara Sims-Malone* | |
| Address: *408 East Douglas St.* | Telephone Number: |
| *Bloomington, Ill. 61701* | *(309) 828-4602* |