E-FILED
Friday, 1~ ~~~ust 2005  12:57:56 PM
Clerk, U.S. District Court, ILCD

Board of Education of Bloomington      )
Public Schools, District No. 87,       )
                                       )               AUG 1 1 2005
and                                    )
                                       )         JOHN M. WATERS, Clerk
Illinois State Board of Education,     )         U.S. DISTRICT COURT
                                       )         CENTRAL DISTRICT OF ILLINOIS
        Defendants.                    )      $04-1137$

## SUMMARY JUDGEMENT

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR RESPONSE TO BLOOMINGTON SCHOOL DISTRICT DEFENDANTS FOR "SUMMARY JUDGEMENT"    STATEMENT OF FACTS

Now come the Plaintiffs, Anthony Malone & Barbara Sims-Malone, both on

behalf of Anthony DeLance Malone, deceased, by and through pro se and , in support of

their Response to Bloomington School District Defendants' Summary Judgment, hereby

submit their memorandum in law as follows.

1.      This suit is brought and jurisdiction lies pursuant to Section 1415 of the

Individuals with Disabilities Act (hereinafter, "IDEA"), 20 U.S.C. §1415.

2.      All conditions precedent to jurisdiction under Section 1415 of the IDEA, 20

U.S.C.1415(e), have occurred or been complied with.

        a.      All administrative remedies were exhausted, in that, a Due Process

Hearing was held and a final order was entered on January 5, 2004.

        b.      The original Complaint was filed on May 3, 2004, within 120 days of the

entry of the Hearing Officer's Order.

3.      Plaintiffs are the biological father and mother of Anthony DeLance Malone

(hereinafter, "Lance"). Lance died on August 29, 2003. The Plaintiffs were the administrators of

his intestacy estate.

4.      Lance and the Plaintiffs, Anthony Malone and Barbara Sims-Malone, are citizens of the United States and reside in the City of Bloomington in McLean County, State of Illinois, and resided there at all times relevant to this Amended Complaint.

5.      At all relevant times, Lance was a child with disabilities and a child with specific learning disabilities as defined by the Illinois School Code, 105 ILCS 5/14-1.02 and 5/14-1.03a, and a handicapped child as defined by the IDEA, 20 U.S.C. 1401(a)(1).

6.      All of the alleged violations of the IDEA were committed within the State of Illinois.

7.      Defendant Board of Education of Bloomington Public Schools, District No. 87, (hereinafter, "School District") is a local educational agency as defined by the IDEA, 20 U.S.C. 1401(a)(8).

8.      Defendant Illinois State Board of Education (hereinafter, "ISBE") is a State educational agency as defined by the IDEA, 20 U.S.C. 1401(a)(7).

9.      A Due Process Hearing was initiated by Plaintiffs, Anthony Malone and Barbara Sims-Malone, on behalf of their minor child, Anthony DeLance Malone.

10.      The order of relevant pleadings of the Due Process Hearing are as follows:

a.      On or about April 5, 2002, the School District filed a Motion in Limine and for Other Relief. Plaintiffs filed a response.

b.      On May 17, 2002, Hearing Officer Ladenson entered his Opinion and Ruling on School District's Motion in Limine and for Other Relief granting the School District's Motion.

c.      On or about October 31, 2003, the School District filed a Motion to Dismiss Due Process Hearing Request. Plaintiffs filed a response.

4

d. On January 5, 2004, Hearing Officer Ladenson entered his Opinions and

Order of Dismissal granting the School District's Motion.

11. On May 3, 2004, Plaintiffs filed their original Complaint in this Court seeking

redress for the issues alleged in the Due Process Hearing.

12. The relevant issues alleged in the Due Process Hearing by Lance and Plaintiffs,

Anthony Malone and Barbara Sims-Malone, include the following:

a. Plaintiffs received an "Explanation of Procedural Safeguards Available to

Parents of Students with Disabilities" and "A Parents' Guide, The Educational Rights of

Students with Disabilities." These publications by the ISBE clearly stated the student and

parents' rights under the Illinois School Code and the IDEA.

Plaintiffs claimed the following violations:

(i) No written notice prior to actual change in the student's educational

placement, 20 U.S.C. 1412, 1414, 1415 and 105 ILCS 5/14-6.01, 8.02;

(ii) Failure to provide a free, appropriate public education, including, but

not limited to, Lance's IEP being implemented in such a way that he was not being educated with

his peers, 20 U.S.C. 1412, 1414, 1415, and 105 ILCS 5/14-6.01;

(iii) No parental consent to re-evaluations and re-evaluations not

conducted in manner that was best to ensure the results accurately reflect the child's performance

level, 20 U.S.C. 1412, 1414 and 105 ILCS 5/14-6.01, 8.02;

(iv) Violation of process for disciplining a student and change of

placement process in that Lance was removed from two class periods with no notice to parents

and suspended for more than 10 days with no IEP meeting being conducted, 20 U.S.C. 1414,

1415 and 105 ILCS 5/14-6.01, 8.02, 8.05;

5

(v) Even after being suspended for more than 10 days no Manifestation Determination Review was conducted, no functional assessment was conducted, and no behavior intervention plan was implemented, 20 U.S.C. 1415 and 105 ILCS 5/14-6.01, 8.05; and

(vi) Student was not provided with a free-appropriate public education during his suspensions from school, including, but not limited to, student not receiving make-up work and make-up work completed not being counted, 20 U.S.C. 1412 and 105 ILCS 5/14-6.01, 8.02, 8.05.

b.      Lance was a freshman at Bloomington Public Schools, District No. 87, High School during the 1999-2000 academic year and remained at the High School until he graduated at the end of the 2002-2003 academic year.

c.      Lance had an IEP under IDEA during his entire attendance at Bloomington Public Schools, District No. 87, High School.

d.      On February 17, 2000, Ms. Helmers, School District's High School Principal, sent a Student Referral Form to Ms. Steffen, School District's High School Home Economics Teacher, and they permanently removed Lance from Ms. Steffen's class. No notice was given to the parents and Lance's IEP was not changed.

e.      On or about February 17, 2000, Lance was removed from the cafeteria for lunch and ate his meals in a detention room alone. Lance was not allowed to buy food, but was brought water and a cold sandwich. This occurred for approximately three weeks. No notice was given to the parents and Lance's IEP was not changed.

f.      On or about March 2, 2000, an IEP meeting was held and no mention of the change in the minor child's classroom assignment or removal of the minor child from lunch was mentioned to Plaintiffs.

6

        g.      Letter dated March 3, 2000, from Plaintiffs to Robert Nielsen, School District's Superintendent, and Rebecca Francois, School District's Director of Special Education, about Ms. Steffen, Ms. Helmers, and Ms. Lundberg removing Lance from Ms. Steffen's class without notice to the parents and without a change to Lance's IEP.

        h.      Second letter dated March 3, 2000, from Plaintiffs to Ms. Steffen and copied to Robert Nielsen, School District's Superintendent, Rebecca Francois, School District's Director of Special Education, Barry Reilly, School District's Assistant Superintendent, and Lance's IEP team, including Sally Tucker, School District's Assistant Superintendent of Curriculum & Instructions, about Ms. Steffen and Ms. Helmers removing Lance from Ms. Steffen's class without notice to the parents and without a change to Lance's IEP.

        i.      Third letter dated March 3, 2000, from Plaintiffs to Ms. Helmers, School District's High School Principal, about Lance's numerous suspensions.

        j.      Letter dated June 2, 2000, from Plaintiffs to Robert Nielsen, School District's Superintendent, Rebecca Francois, School District's Director of Special Education, Barry Reilly, School District's Assistant Superintendent, Lance's IEP team, including Sally Tucker, School District's Assistant Superintendent of Curriculum & Instructions, Board of Education of Bloomington Public Schools, District No. 87, and Illinois State Board of Education about Ms. Steffen's not following Lance's IEP and about Ms. Helmers and Ms. Lundberg removing Lance from Ms. Steffen's class without notice to the parents and without a change to Lance's IEP.

        k.      Letter dated August 10, 2000, from Plaintiffs to Robert Nielsen, School District's Superintendent, Rebecca Francois, School District's Director of Special Education, Lance's IEP team, including Sally Tucker, School District's Assistant Superintendent of

7

Curriculum & Instructions, and Illinois State Board of Education about Ms. Helmers, Ms. Lundberg, and Ms. Steffen removing Lance from Ms. Steffen's class without notice to the parents and without a change to Lance's IEP; Ms. Helmers and Ms. Lundberg removing Lance from lunch without notice to the parents and without a change to Lance's IEP; and about Ms. Engle's failure to implement Lance's IEP.

l.      During the 1999-2000 academic school year, Lance was removed from his regular course of study thirty-one (31) days for (i) all day out-of-school suspensions for fifteen (15) days, on or about October 18 and 19, 1999, December 6, 20, 21, and 31, 1999,  February 1, 2, 7, 8, 9, 11, 14, 15, and 16, 2000; and (ii) all day in-school suspensions for sixteen (16) days, on or about October 14 and 15, 1999, December 9, 1999, February 25, 28, and 29, 2000, March 2, 3, and 7, 2000, and April 14, 25, 26, 27, and 28, 2000, and May 1 and 2, 2000.  No Manifestation Determination Review was conducted.  No Functional Behavioral Assessment was contemplated and no Behavioral Intervention Plan was implemented.  Lance was not assisted with his curriculum during these suspensions, including not being given make-up work and not counting his completed make-up work.

m.      On October 23, 2000, Hearing Officer Julia Dempsey conducted a Due Process Hearing in which no written order was ever issued.

n.      Based on the transcript of the October 23, 2000, Due Process Hearing the School District and the ISBE were made fully aware of: 1) the School District's failure to provide a free appropriate public education and implement Lance's IEP, specifically of Ms. Steffen, Ms. Engle, and Mr. Misukonis failing to provide the required assistance to Lance; 2) the School District removing Lance from class and school for a period in excess of ten (10) days without notice to the parents or a change in Lance's IEP, including Ms. Helmers and Ms. Lundberg

8

having Lance eat lunch alone in a detention room for approximately three weeks without notice to his parents; 3) the School District, specifically Ms. Helmers, Ms. Lundberg, and Ms. Steffen removing Lance from Ms. Steffen's classroom and having Lance remain in a detention room alone during that class hour for approximately three weeks; 4) the above-referenced all day in-school and out-of-school suspensions; and 5) the School District's failure to provide Lance with a free, appropriate public education during his suspensions such that he was not given make-up work or his make-up work was not counted.

        o.     Letter on March 1, 2002, from Plaintiffs to Board of Education of Bloomington Public Schools, District No. 87, including Janella Cooley, Diana McCauley, Randy Berg, Keith Davis, Janet Smith, Cheryl Jackson, and Kathy Havens-Payne, and copied to Robert Nielsen, School District's Superintendent, Sally Tucker, School District's Assistant Superintendent of Curriculum & Instructions, and Rebecca Francois, School District's Director of Special Education, about the School District's failure to accept consent by the parents for re-evaluation of Lance and to implement his IEP.

        p.     Letter on March 13, 2002, from Plaintiffs to Board Members of the Board of Education of Bloomington Public Schools, District No. 87, and copied to Robert Nielsen, School District's Superintendent, Sally Tucker, School District's Assistant Superintendent of Curriculum & Instructions, Rebecca Francois, School District's Director of Special Education, and Attorney Megan Paisley-Miller about the School District's failure to accept consent by the parents for re-evaluation of Lance.

        13.     Lance incurred costs for psychological counseling services, including, but not limited to, being seen by Robert Stoner, due to the actions of Defendants Bloomington Public Schools, District No. 87, and Illinois State Board of Education.

14. Lance incurred costs for medical services due to the actions of Defendants Bloomington Public Schools, District No. 87, and Illinois State Board of Education.

15. Lance incurred the costs for transportation to and from his psychological counseling and medical services due to the actions of Defendants Bloomington Public Schools, District No. 87, and Illinois State Board of Education.

16. 20 U.S.C. §1415(e)(4) allows Plaintiffs to recover attorneys' fees and related costs.

17. The Plaintiffs have incurred attorneys' fees and related costs in the preparation and prosecution of this Complaint.

WHEREFORE, Plaintiffs, Anthony Malone and Barbara Sims-Malone, both on behalf of Anthony DeLance Malone, deceased, respectfully prays this Honorable Court to enter an order:

A. Finding and holding that Plaintiffs have suffered from Defendants' actions on the basis of failure to implement Lance's IEP and violation of the IDEA's procedural safeguards;

B. Requiring Defendants Bloomington Public Schools, District No. 87, and Illinois State Board of Education to reimbursement Plaintiffs for transportation costs and services rendered on behalf of Lance by psychologists and medical providers;

C. Requiring Defendants Bloomington Public Schools, District No. 87, and Illinois State Board of Education to pay Plaintiffs attorneys' fees and costs; and

D. Granting such further relief as this Court determines is just and proper.

## COUNT II - - SECTION 1983 VIOLATIONS BY OFFICIALS AND EMPLOYEES AS INDIVIDUALS

Plaintiffs, Anthony Malone & Barbara Sims-Malone, both on behalf of Anthony DeLance Malone, deceased, by and through pro se and , in support of their Response to Bloomington School District Defendants' Summary Judgment, hereby submit their memorandum in law as follows.

10

ROBERT NIELSON, n/a Robert Nielsen, Superintendent, Bloomington Public Schools, District

No. 87, individually, Rebecca Francois, Director of Special Education, Bloomington Public

Schools, District No. 87, individually, Barry Reilly, Assistant Superintendent, Bloomington

Public Schools, District No. 87, individually, Cindy Helmers, High School Principal,

Bloomington Public Schools, District No. 87, individually, Cindy Lundberg, High School

Counselor, Bloomington Public Schools, District No. 87, individually, AnnMarie Steffen, High

School Home Economics Teacher, Bloomington Public Schools, District No. 87, individually,

Timothy Moore, High School Assistant Principal, Bloomington Public Schools, District No. 87,

individually, Joel Misukonis, High School Art Teacher, Bloomington Public Schools, District

No. 87, individually, and Donna Engle, High School Special Education Teacher, Bloomington

Public Schools, District No. 87, individually:

1.      This suit is brought and jurisdiction lies pursuant to 42 U.S.C. §1983 (hereinafter,
"Section 1983").

2.      The original Complaint was filed on May 3, 2004, within two years of the entry of
the Hearing Officer's Order filed on January 5, 2004.

3.      Plaintiffs are the biological father and mother of Anthony DeLance Malone
(hereinafter, "Lance"). Lance died on August 29, 2003. The Plaintiffs were the administrators of
his intestacy estate.

4.      Lance and the Plaintiffs, Anthony Malone and Barbara Sims-Malone, are citizens
of the United States and reside in the City of Bloomington in McLean County, State of Illinois,
and resided there at all times relevant to this Amended Complaint.

5.      At all relevant times, Lance was a child with disabilities and a child with specific
learning disabilities as defined by the Illinois School Code, 105 ILCS 5/14-1.02 and 5/14-1.03a,

11

and a handicapped child as defined by the IDEA, 20 U.S.C. 1401(a)(1).

6.    All of the alleged violations were committed within the State of Illinois.

7.    All Defendants individually named in this Count are employees of the Board of Education of Bloomington Public Schools, District No. 87.

8.    Actions of ROBERT NIELSON, n/a Robert Nielsen, Superintendent, include, during the 1999-2000 academic year, causing emotional distress to Lance and failing to implement Lance's IEP by removing him from Ms. Steffen's classroom and his lunch period without notice to parents and without an IEP meeting, by suspending him in excess of 10 days without conducting a Manifestation Determination Review or functional behavioral analysis or implementing a behavioral intervention plan, by not providing him with or allowing him to turn in make-up work during his suspensions, and by not conducting the required re-evaluation in a timely manner.

9.    Actions of Rebecca Francois, Director of Special Education, include:

(i) During the 1999-2000 academic year, causing emotional distress to Lance and failing to implement Lance's IEP by removing him from Ms. Steffen's classroom and his lunch period without notice to parents and without an IEP meeting, by suspending him in excess of 10 days without conducting a Manifestation Determination Review or functional behavioral analysis or implementing a behavioral intervention plan, by not providing him with or allowing him to turn in make-up work during his suspensions, and by not conducting the required re-evaluation in a timely manner; and

(ii) During the 2000-2001 academic year, causing emotional distress to Lance and failing to implement Lance's IEP by not allowing him to be educated with his peers, including instructing teachers to literally put Lance at a desk in the corner instead of sitting with the class

12

while he worked on his curriculum and not allowing him to work with peers in groups, and by not conducting the required re-evaluation in a timely manner.

10. Actions of Barry Reilly, Assistant Superintendent, include, during the 1999-2000 academic year, causing emotional distress to Lance and failing to implement Lance's IEP by removing him from Ms. Steffen's classroom and his lunch period without notice to parents and without an IEP meeting, by suspending him in excess of 10 days without conducting a Manifestation Determination Review or functional behavioral analysis or implementing a behavioral intervention plan, by not providing him with or allowing him to turn in make-up work during his suspensions, and by not conducting the required re-evaluation in a timely manner.

11. Actions of Cindy Helmers, High School Principal, include:

(i) During the 1999-2000 academic year, causing emotional distress to Lance and failing to implement Lance's IEP by removing him from Ms. Steffen's classroom and his lunch period without notice to parents and without an IEP meeting, by suspending him in excess of 10 days without conducting a Manifestation Determination Review or functional behavioral analysis or implementing a behavioral intervention plan, by not providing him with or allowing him to turn in make-up work during his suspensions, and by not conducting the required re-evaluation in a timely manner; and

(ii) During the 2000-2001 academic year, causing emotional distress to Lance by pointing at him while talking to other administrators or teachers and talking loud enough that he could hear her say negative things about him when he walked by.

12. Actions of Cindy Lundberg, High School Counselor, include, during the 1999-2000 academic year, causing emotional distress to Lance and failing to implement Lance's IEP by removing him from Ms. Steffen's classroom and his lunch period without notice to parents

13

and without an IEP meeting and speaking to Lance about a hygiene problem and telling him none of his teachers wanted him in their classroom because of his body order and then denying to Plaintiffs that the conversation occurred.

13.    Actions of AnnMarie Steffen, High School Home Economics Teacher, include, during the 1999-2000 academic year, causing emotional distress to Lance and failing to implement Lance's IEP by removing him from her classroom without notice to parents and without alternate educational curriculum being assigned.

14.    Actions of Timothy Moore, High School Assistant Principal, include:

(i) During the 2000-2001 academic year, causing emotional distress to Lance by enforcing rules with regard to going to the parking lot during lunch period and wearing identification badges against Lance in a manner different than with other students; and

(ii) During the 2001-2002 academic year, causing emotional distress to Lance by interfering with Lance's ability to participate in extra-curricular activities, specifically basketball, just as students without disabilities are able; and

(iii) During the 2002-2003 academic year, causing emotional distress to Lance by enforcing rules with regard to going to the parking lot during lunch period and wearing identification badges against Lance in a manner different than with other students.

15.    Actions of Joel Misukonis, High School Art Teacher, include, during the 1999-2000 academic year, causing emotional distress to Lance and failing to implement Lance's IEP by not modifying assignments or tests, not providing one-on-one help when requested by student, and not accepting make-up homework.

16.    Actions of Donna Engle, High School Special Education Teacher, include, during the 1999-2000 academic year, causing emotional distress to Lance and failing to implement

14

Lance's IEP by not modifying assignments or tests, not providing one-on-one help when requested by student, not accepting make-up homework, and stating to Lance and Plaintiffs that it didn't matter what work Lance did, she was going to fail him.

17.    Lance's emotional distress was a direct proximate result of the actions of the Defendant individuals listed in Sections 8 - 16 above.

18.    One or more of the actions of the Defendant individuals listed in Sections 8 - 16 above proximately caused emotional distress to Lance.

19.    Lance saw Robert E. Stoner, a clinical psychologist, who issued a report on May 4, 2002, that stated Lance identified his current problems of anxiety and depression related symptoms as beginning during the 1999-2000 academic year and Lance had a significant degree of depression, DSM IV - - 300.4, Dysthymic Disorder, and, when in school, a high degree of tension and anxiety, DSM IV - - 300.02, Generalized Anxiety Disorder.

20.    As a result of the harm Lance suffered, he incurred costs for psychological counseling services, including, but not limited to, being seen by Robert Stoner, due to the actions of Defendants listed above.

21.    As a result of the harm Lance suffered, he incurred costs for medical services due to the actions of Defendants listed above.

22.    As a result of the harm Lance suffered, he incurred the costs for transportation to and from his psychological counseling and medical services due to the actions of Defendants listed above.

23.    The Plaintiffs have incurred attorneys' fees and related costs in the preparation and prosecution of this Complaint.

WHEREFORE, Plaintiffs, Anthony Malone and Barbara Sims-Malone, both on behalf of

15

Anthony DeLance Malone, deceased, respectfully request the judgement of this Court, against

Defendants listed in this Count, as follows:

A.     Find and hold that Plaintiffs have suffered as a result of Defendants' actions;

B.     Order the Plaintiffs be awarded compensatory damages incurred on behalf of

Lance in an amount to be determined at trial of this matter;

C.     Order the Plaintiffs be awarded damages for emotional distress suffered by Lance

in an amount to be determined at trial of this matter;

D.     Award Plaintiffs attorneys' fees and costs; and

E.     Grant such further relief as this Court determines is just and proper.

## COUNT III - - SECTION 1983 VIOLATIONS BY
## OFFICIALS AND EMPLOYEES IN THEIR OFFICIAL CAPACITIES
### STATEMENT OF FACTS

Plaintiffs, Anthony Malone & Barbara Sims-Malone, both on behalf of Anthony DeLance

Malone, deceased, by and through pro se and , in support of their Response to Bloomington School

District Defendants' Summary Judgment, hereby     submit their memorandum in law as follows.

ROBERT NIELSON, n/a Robert Nielsen, Superintendent, Bloomington Public Schools, District

No. 87, in his official capacity, Rebecca Francois, Director of Special Education, Bloomington

Public Schools, District No. 87, in her official capacity, Barry Reilly, Assistant Superintendent,

Bloomington Public Schools, District No. 87, in his official capacity, Cindy Helmers, High

School Principal, Bloomington Public Schools, District No. 87, in her official capacity, Cindy

Lundberg, High School Counselor, Bloomington Public Schools, District No. 87, in her official

capacity, AnnMarie Steffen, High School Home Economics Teacher, Bloomington Public

Schools, District No. 87, in her official capacity, Timothy Moore, High School Assistant

Principal, Bloomington Public Schools, District No. 87, in her official capacity, Joel Misukonis,

High School Art Teacher, Bloomington Public Schools, District No. 87, in his official capacity,

16

Donna Engle, High School Special Education Teacher, Bloomington Public Schools, District No. 87, in her official capacity, and Sally Tucker, Assistant Superintendent of Curriculum & Instructions, Bloomington Public Schools, District No. 87, in her official capacity:

1. This suit is brought and jurisdiction lies pursuant to 42 U.S.C. §1983 (hereinafter, "Section 1983").

2. The original Complaint in this cause of action was filed on May 3, 2004, within two years of the entry of the Hearing Officer Ladenson's final written order issued on January 5, 2004.

3. Plaintiffs are the biological father and mother of Anthony DeLance Malone (hereinafter, "Lance"). Lance died on August 29, 2003. The Plaintiffs were the administrators of his intestacy estate.

4. Lance and the Plaintiffs, Anthony Malone and Barbara Sims-Malone, are citizens of the United States and reside in the City of Bloomington in McLean County, State of Illinois, and resided there at all times relevant to this Amended Complaint.

5. At all relevant times, Lance was a child with disabilities and a child with specific learning disabilities as defined by the Illinois School Code, 105 ILCS 5/14-1.02 and 5/14-1.03a, and a handicapped child as defined by the IDEA, 20 U.S.C. 1401(a)(1).

6. All of the alleged violations were committed within the State of Illinois.

7. Defendant Board of Education of Bloomington Public Schools, District No. 87, (hereinafter, "School District") is a local educational agency as defined by the IDEA, 20 U.S.C. 1401(a)(8).

8. All Defendants individually named in this Count are either an employee of the Board of Education of Bloomington Public Schools, District No. 87, or a member of the Board

17

for the Board of Education of Bloomington Public Schools, District No. 87.

9.    For the relevant violations alleged by Lance and Plaintiffs, Anthony Malone and Barbara Sims-Malone, see Section 12(a)-(p) in Count I above and Sections 8-16 in Count II above.

10.    Lance's emotional distress was a direct proximate result of the actions of the Defendants listed in Sections 8 - 16 in Count II above.

11.    One or more of the actions of the Defendants listed in Sections 8 - 16 in Count II above proximately caused emotional distress to Lance.

12.    Lance saw Robert E. Stoner, a clinical psychologist, who issued a report on May 4, 2002, that stated Lance identified his current problems of anxiety and depression related symptoms as beginning during the 1999-2000 academic year and Lance had a significant degree of depression, DSM IV - - 300.4, Dysthymic Disorder, and, when in school, a high degree of tension and anxiety, DSM IV - - 300.02, Generalized Anxiety Disorder.

13.    As a result of the harm Lance suffered, he incurred costs for psychological counseling services, including, but not limited to, being seen by Robert Stoner, due to the actions of Defendants listed above.

14.    As a result of the harm Lance suffered, he incurred costs for medical services due to the actions of Defendants listed above.

15.    As a result of the harm Lance suffered, he incurred the costs for transportation to and from his psychological counseling and medical services due to the actions of Defendants listed above.

16.    The Plaintiffs have incurred attorneys' fees and related costs in the preparation and prosecution of this Complaint.

18

WHEREFORE, Plaintiffs, Anthony Malone and Barbara Sims-Malone, both on behalf of

Anthony DeLance Malone, deceased, respectfully request the judgement of this Court, against

Defendants listed in this Count, as follows:

A. Find and hold that Plaintiffs have suffered as a Defendants' actions;

B. Order the Plaintiffs be awarded compensatory damages incurred on behalf of

Lance in an amount to be determined at trial of this matter;

C. Order the Plaintiffs be awarded damages for emotional distress suffered by Lance

in an amount to be determined at trial of this matter;

D. Order the Plaintiffs be awarded punitive damages in an amount to be determined

at trial of this matter;

E. Award Plaintiffs attorneys' fees and costs; and

F. Grant such further relief as this Court determines is just and proper.

### COUNT IV - - SECTION 1983 VIOLATIONS BY SCHOOL DISTRICT
### STATEMENT OF FACTS

Plaintiffs, Anthony Malone & Barbara Sims-Malone, both on behalf of Anthony DeLance

Malone, deceased, by and through pro se and , in support of their Response to Bloomington School

District Defendants' Summary Judgment, hereby ₁ submit their memorandum in law as follows.

Janella Cooley, Board of Education of Bloomington Public Schools, District No. 87, in her

official capacity, Diana McCauley, Board of Education of Bloomington Public Schools, District

No. 87, in her official capacity, Randy Berg, Board of Education of Bloomington Public Schools,

District No. 87, in his official capacity, Keith Davis, Board of Education of Bloomington Public

Schools, District No. 87, in his official capacity, Janet Smith, Board of Education of

Bloomington Public Schools, District No. 87, in her official capacity, Board of Education of

Cheryl Jackson, Board of Education of Bloomington Public Schools, District No. 87, in her

19

official capacity, Kathy Havens-Payne, Board of Education of Bloomington Public Schools,

District No. 87, in her official capacity, and Board of Education of Bloomington Public Schools,

District No. 87:

1.      This suit is brought and jurisdiction lies pursuant to 42 U.S.C. §1983 (hereinafter,
"Section 1983").

2.      The original Complaint in this cause of action was filed on May 3, 2004, within

two years of the entry of the Hearing Officer Ladenson's final written order issued on January 5,

2004.

3.      Plaintiffs are the biological father and mother of Anthony DeLance Malone

(hereinafter, "Lance"). Lance died on August 29, 2003. The Plaintiffs were the administrators of

his intestacy estate.

4.      Lance and the Plaintiffs, Anthony Malone and Barbara Sims-Malone, are citizens

of the United States and reside in the City of Bloomington in McLean County, State of Illinois,

and resided there at all times relevant to this Amended Complaint.

5.      At all relevant times, Lance was a child with disabilities and a child with specific

learning disabilities as defined by the Illinois School Code, 105 ILCS 5/14-1.02 and 5/14-1.03a,

and a handicapped child as defined by the IDEA, 20 U.S.C. 1401(a)(1).

6.      All of the alleged violations were committed within the State of Illinois.

7.      Defendant Board of Education of Bloomington Public Schools, District No. 87,

(hereinafter, "School District") is a local educational agency as defined by the IDEA, 20 U.S.C.

1401(a)(8).

8.      All Defendants named individually above are members of the Board for the Board

of Education of Bloomington Public Schools, District No. 87.

20

9.    The violations of a federal statute by the Defendant Board of Education of Bloomington Public Schools, District No. 87 are set forth in Section 12(a)-(p) in Count I above and Sections 8-16 in Count II above.

10.    Defendant  Board of Education of Bloomington Public Schools, District No. 87, had actual notice as listed in Section 12(a)-(p) in Count I above of the actions of the individuals listed in Sections 8-16 in Count II above and did nothing to prevent the harm caused to Lance.

11.    The treatment of Lance by the agents of Defendant Board of Education of Bloomington Public Schools, District No. 87, are a part of the School District's informal, yet well-established practice of how to manage a student with an IEP.

12.    Lance's emotional distress was a direct proximate result of the actions and the failure to act by Defendant Board of Education of Bloomington Public Schools, District No. 87.

13.    The actions and inactions of the Defendant  Board of Education of Bloomington Public Schools, District No. 87, proximately caused emotional distress to Lance.

14.    Lance saw Robert E. Stoner, a clinical psychologist, who issued a report on May 4, 2002, that stated Lance identified his current problems of anxiety and depression related symptoms as beginning during the 1999-2000 academic year and Lance had a significant degree of depression, DSM IV - - 300.4, Dysthymic Disorder, and, when in school, a high degree of tension and anxiety, DSM IV - - 300.02, Generalized Anxiety Disorder.

15.    As a result of the harm Lance suffered, he incurred costs for psychological counseling services, including, but not limited to, being seen by Robert Stoner, due to the actions of Defendant Board of Education of Bloomington Public Schools, District No. 87.

16.    As a result of the harm Lance suffered, he incurred costs for medical services due to the actions of Defendant Board of Education of Bloomington Public Schools, District No. 87.

21

17.    As a result of the harm Lance suffered, he incurred the costs for transportation to and from his psychological counseling and medical services due to the actions of Defendant Board of Education of Bloomington Public Schools, District No. 87.

18.    The Plaintiffs have incurred attorneys' fees and related costs in the preparation and prosecution of this Complaint.

WHEREFORE, Plaintiffs, Anthony Malone and Barbara Sims-Malone, both on behalf of Anthony DeLance Malone, deceased, respectfully request the judgement of this Court, against Defendants listed in this Count, as follows:

A.    Find and hold that Plaintiffs have suffered as a result of Defendant's actions;

B.    Order the Plaintiffs be awarded compensatory damages incurred on behalf of Lance in an amount to be determined at trial of this matter;

C.    Order the Plaintiffs be awarded damages for emotional distress suffered by Lance in an amount to be determined at trial of this matter;

D.    Order the Plaintiffs be awarded punitive damages in an amount to be determined at trial of this matter;

E.    Award Plaintiffs attorneys' fees and costs; and Legal Consultant fees, And

F.    Grant such further relief as this Court determines is just and proper.

Respectfully submitted,

Anthony Malone & Barbara Sims-Malone, both on behalf of Anthony DeLance Malone, deceased

Prepared by:
Tallulah Shinault
Legal Consultant
1702 Erin Drive
Normal, Illinois 61761
(309) 452-2368

By: _____

EMAIL:tyshina@ilstu.edu

Anthony Malone and Barbara Sims-Malone
Plaintiffs,    Date August 10, 2005

408 EAST Douglas ST.

BLOOMINGTON, ILL. 61701

PH. 309- 828 -8650    Home
* 309 - 828 -9602   parents *
*    Rev. James + Corine Sims *

22

Robert F. Ladenson
1466 E. 56th St.
Chicago, IL 60637
(312) 567-3474 (O)
(773) 643-5307 (H)
(312) 567-5187 (Fax)

Sent by Fax Transmission, Certified, and Regular U.S. Mail

1/5/04

Mr. Anthony and Ms Barbara Malone
601 Normal Avenue
Normal, IL 61761

Ms Megan Guenther
Miller, Tracy, Braun, Funk & Guenther Ltd.
316 S. Charter
P.O. Box 80
Monticello, IL 61856-0080

**Re: Anthony Malone and Bloomington School District 87 (Case # 002615)**

### Opinion and Order of Dismissal

### Background:

The Hearing Officer received his notice of appointment on January 25, 02. After several phone calls he succeeded in contacting both parties, who agreed upon the date of March 18, 02 for a face-to-face pre-hearing conference meeting, which took place as scheduled in the administrative offices of the School District. At the meeting the parties agreed upon the date of May 24, 02 for the Due Process Hearing in this matter to take place. On April 5, 02 the Hearing Officer received a motion from the School District requesting him to order that the issues in controversy at the Due Process Hearing be limited to complaints of the Parents relating to events that had taken place subsequent to the date of October 23, 2000. On May 17, 02 the Hearing Officer issued a ruling that granted the School District's motion.

Several days before the Due Process Hearing scheduled for May 24, 02 was to take place, the Student's Mother notified the Hearing Officer of a severe medical condition, requiring hospitalization, as a result of which the Hearing Officer postponed the proceedings until the beginning of the 2002-03 school term. During the fall of 2002 several jointly requested postponements followed, with the result that the parties agreed to hold a reconvened Pre-Hearing Conference meeting, by way of a telephone conference call, on November 25, 02. At the reconvened Pre-Hearing Conference, which took place

**EXHIBIT** $\beta$

as scheduled, the parties agreed to reschedule the Due Process Hearing for February 3, 03.

On January 10, 03 the Hearing Officer received a motion to dismiss from the School District, based upon the fact, represented in the motion, that the Student had achieved his age of majority on September 2, 2002. The Hearing Officer attempted immediately to schedule a conference call meeting with the parties to determine the Student's wishes concerning whether the Due Process Hearing should go forward. On January 23, 03 the Hearing Officer received another motion from the School District. This second motion requested that the Hearing Officer continue the proceedings, noting that, according to information the Parents had conveyed to the School District, their home had suffered serious fire damage, which required the family to move while repair and rehab work was taking place. The Hearing Officer granted the motion. Subsequently, on April 5, 03 the Student submitted a letter affirming that he wanted the due process hearing to go forward, and, accordingly, the Hearing Officer set May 28, 03 and May 29, 03 as hearing dates.

On May 28, 03, the day of the first session of the Due Process Hearing, the Parents presented a request, conveyed in a letter signed by the Student, that the Due Process Hearing be postponed because he could not attend owing to illness. By way of explanation, the Parents stated at the Hearing that the Student had a severe sore throat and high fever. They requested that the Hearing Officer postpone the proceedings, and reschedule them to take place in late August at the beginning of the 2003-04 school year. Counsel for the School District objected to the Parents' request. She noted that the Due Process Hearing in this matter had been postponed several times already over the past year. She noted also the effort and expense to which the School District had been put to prepare for the Hearing. Counsel for the School District stated as well that one of the School District witnesses was about to retire as a teacher, and another witness, who had already retired, was substantially inconvenienced by having to appear at the Due Process Hearing.

After due deliberation, the Hearing Officer decided to grant the Parents' request for postponement of the Hearing. In doing so, he acknowledged the inconvenience and expense to which the School District had been put. He noted also, however, that several issues in the case, identified in his Pre-Hearing Conference Reports of March 18, 02 and November 24, 02, concerned treatment of the Student by his teachers, including comments they made to him, which, according to the viewpoint of the Parents and the Student, amounted to significant failures in the implementation of the Student's IEP.

The Hearing Officer thus decided to postpone the Due Process Hearing until the beginning of the 2003-04 school year. In addition, he ruled that the issues to be considered at the Hearing would be limited only to those that the Hearing Officer had ruled were to be considered at the sessions of the Hearing scheduled for May 28, 03 and May 29, 03, and that the cut-off date for introduction of witnesses and evidence would remain as May 23, 03 (i.e. the cut-off date for the sessions scheduled to take place on May 28, 03 and May 29, 03).

2

On September 2, 03 the Hearing Officer received word from the School District that the Student in this matter had died on August 29, 03.

On October 31, 03 the School District presented to the Hearing Officer a motion to dismiss the request for a Due Process Hearing. The Hearing Officer responded on November 11, 03 by giving the Parents an opportunity to respond by November 21, 03. The Parents responded on November 20, 03, indicating that they wished for the Due Process hearing to proceed, and informing the Hearing Officer that they had had not received a copy of the School District's motion to dismiss. The Hearing Officer enclosed a copy of the School District's motion in a communication he sent to the Parents on November 26, 03, which he sent also to the School District, stating that he would give the Parents until December 19, 03 to respond to the School District's motion, and then issue his ruling on the motion by no later than January 5, 04. The Parents responded on December 19, 03 with their argument in support of denying the School District's motion to dismiss.

### Position of the School District:

1.  The parents of [the Student] initiated the instant proceeding.
2.  20 *U.S.C.* 1414 (m)(1)(B) recites that states may provide that when a child with a disability reaches the age of majority "all other rights accorded to parents under this subchapter transfer to the child."
3.  23 *Ill.Adm.Code* sec. 226.690(a) provides for the transfer of parental rights to the student with a disability when the student reached eighteen (18) years of age.
4.  [The Student] attained majority on September 2, 2002, and the School District informed [the Student] of the rights that would be transferred to him upon his attaining the age of majority. ....
5.  The rights afforded to the Parents under state and federal [law] devolved upon [the Student].
6.  Due to a sad and unfortunate turn of events, [the Student] passed away on August 29, 2003.
7.  For the foregoing reason, the issues underlying the Due Process Request [are] moot. **WHEREFORE** [the School District] prays that the Impartial Due Process Hearing Officer dismiss the due process hearing request with prejudice and for such other further relief as he deems just and proper.

### Position of the Parents:

1.  The parents of [the Student] did initiate the instant proceeding and hereby **request a continuation of said proceedings.**
2.  Acknowledging 23 U.S.C. 1414 (m)(1)(B) recites that states may provide that when a child with a disability reaches the age of majority "all other rights accorded to parents under subsection transfer to the child."

3

3.  Acknowledging **23 Ill.Adm.Code 226.690(a)** provides for the transfer of parental rights to the student with a disability when the student reaches eighteen (18) years of age.

4.  Acknowledging, [the Student] attained majority on September 2, 2002, and the School District informed [the student] of the rights that would be transferred to him upon attaining the age of majority.

5.  Subsequent to transference of parental rights, according to **23 Ill. Adm. Code 226.690**, [the Student], through a notarized legal document transferred parental rights back to [the Parents], submitted to [the Hearing Officer] and [the School District], May 2003. **Said Notarized and Legal Document stated that [the student] was aware of his legal rights, however, wished that [the Parents] continue to represent him. Further, he strongly insisted that the Due Process hearing go forward. ...**

6.  The rights afforded to the parents under state and federal law were transferred and reinstated by [the Student] to [the Parents].

7.  Despite the sad event of [the Student's] passing August 29, 03, for legal reasons, [the Student's] last request, and the trauma he experienced at the hands of teachers and administrators in [the School District]

8.  For the foregoing reasons, the issues underlying the Due Process Request are established. **WHEREFORE,** [The Parents] pray that the Impartial Due Process Hearing Officer continue the due process hearing request with prejudice and for such other and further relief as he deems just and proper.

**Opinion:**

After due consideration, the Hearing Officer had decided to grant the School District's motion to dismiss. In doing so, however, he believes he must provide a clear and full explanation of his reasons, not just as a matter of courtesy to the Parents, but also of moral obligation, given the deeply sorrowful and tragic circumstances of this case.

The Hearing Officer begins his explanation by noting that his legal authority is both grounded in, and determined, relative to its legitimate scope, by the Individuals With Disabilities Education Act (IDEA) 20 U.S.C. 1400-1485, which requires states receiving funds under the Act to establish and maintain due process hearing review systems. The only purpose of a due process hearing, specifically mentioned in the IDEA is to provide parents "an opportunity to present complaints relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. 1415 (b)(6) Furthermore, the paragraph immediately following the one containing the above quoted statutory language goes on to say:

... the Parent of a child with a disability, or the attorney representing the child [is required] to provide notice (which shall remain confidential) ... to the State educational agency or the local educational agency, as the case may be, in [her or his] complaint under [the immediately preceding paragraph in the Statute] ... that shall include ... a proposed

resolution of the problem to the extent known and available to the parents at the time. 20 U.S.C. 1415 (b)(7)

The Hearing Officer concludes from his review of the statutory language of the IDEA that a due process hearing may have only one purpose - to resolve a controversy between parties over the identification, evaluation, educational placement, or provision of a free appropriate public education to a specific student. This purpose, in turn, the Hearing Officer believes, entails, both logically and legally, two significant limitations upon the legitimate scope of his authority in the circumstances of this case, which he shall develop immediately below.

First, a due process hearing officer is not authorized, under the IDEA, to announce findings in regard to a given matter, apart from issuing definite orders to the parties concerning the identification, evaluation, educational placement, or provision of a free appropriate public education for the student in the case. In this regard, a special education due process hearing differs, in virtue of the restriction placed upon its purpose by the IDEA, from the proceedings of bodies that at times are created, and given significant legal authority, to analyze the presentation of evidence and testimony of witnesses for no other reason than to arrive at legal, moral, or factual findings in regard to a particular matter (e.g. the Warren Commission that investigated the assassination of President John F. Kennedy). A due process hearing officer, however, lacks such authority. Under the IDEA, any findings she or he announces in a given case must provide the basis for issuance of definite orders to the parties concerning the identification, evaluation, educational placement, or provision of a free appropriate public education for the student in the case.

Second, and implicit in the limitation developed immediately above, a due process hearing must be child specific. That is to say, a due process hearing officer would exceed the legitimate scope of her or his authority by issuing orders that called upon a school district to make system wide changes in its policies, practices, and procedures, rather than focusing upon issues concerning identification, evaluation, educational placement, or provision of a free appropriate public education with respect the student involved in the case. Some governmental agencies have the authority to order implementation by a school district of system wide changes -- e.g. the Office of Civil Rights (OCR) and the Office of Special Education Programs (OSEP) of the U.S. Department of Education. In contrast, the orders issued by a due process hearing officer, under the IDEA, may relate only to a specific student with respect to whom identification, evaluation, educational placement, or provision of a free appropriate public education are matters in controversy at a due process hearing.

If this Hearing Officer were to allow the proceedings in this matter to continue, he would have to reach a conclusion, after reviewing evidence and testimony presented, as to whether or not the School District fulfilled its responsibilities to the Student under state and federal laws relating to special education. Based upon the preceding analysis, however, it seems apparent to this Hearing Officer that after reaching such a conclusion he would find himself in the following legally untenable position. In virtue of the

untimely and tragic death of the Student in this matter, the Hearing Officer no longer can issue any child specific orders with respect to the Student concerning identification, evaluation, educational placement, or measures the School District must implement to provide the Student a free appropriate public education. Accordingly, either (a) the Hearing Officer could simply announce his conclusion without issuing any orders based upon it, or (b) he could issue orders based upon his conclusion, but of a system wide, rather that a child specific, nature, directing the School District to implement changes in its general policies, practices, and procedures. As already indicated, however, in the opinion of the Hearing Officer, given the purpose of a due process hearing, under the IDEA, both courses of action (a) and (b) lie outside the legitimate scope of his authority.

Based upon the preceding reasons, which the Hearing Officer has sought to develop clearly, fully, and, as best he can, with appropriate consideration for the feelings of the Parents in light of the tragic and sorrowful circumstances of this case, he concludes that he has no other alternative, under State and federal law, than to grant the motion presented by the School District. Accordingly,

**IT IS ORDERED THAT:**

The proceedings in the above captioned matter are hereby dismissed.

### Right to Request Clarification

Either party may request clarification of this order by submitting a written request to the Hearing Officer within five (5) days of receipt of this order. The request for clarification shall specify the portions of the order for which clarification is sought, and a copy of the request shall be mailed to the other party and to the Illinois State Board of Education. **The right to request such clarification does not permit a party to request reconsideration for the order itself, and the Hearing Officer is not authorized to entertain a request for reconsideration.**

### Finality of Order

This order shall be binding upon the parties unless a civil action is commenced.

### Right to File a Civil Action

Any party to this matter aggrieved by this final order has the right to commence a civil action. Pursuant to 105 ILCS 5/14-8.02a (i), that civil action shall be brought in any court of competent jurisdiction within 120 days after a copy of this order is mailed to the parties.

6

*Robert F. Ladenson*

Robert F. Ladenson
Due Process Hearing Officer

Cc: Mr. Dale E. Boyd, Due Process Coordinator
    Illinois State Board of Education

COPY

RECEIVED
MAY -3 2004
U.S. CLERK'S OFFICE
PEORIA, ILLINOIS

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

Anthony and Barbara Malone )
Re: ANTHONY D. MALONE **Plaintiff** )
)
**vs.** )**Case No.** _04-1137_
)
Illinois State Board of Education )
Bloomington School District #87 )
Robert Neilson, Becky Francois; )
Barry Reilley, Cindy Helmers )
Cindy Lundberg **Defendant(s)** )
AnnMarie Stephen, Tim Moore
Joel Misukonis, Donna Engles **COMPLAINT**
Bloomington Dist. 87 School Board

☒ 42 U.S.C. §1983 (suit against state officials for constitutional violations)

☐ 28 U.S.C. § 1331 (suit against federal officials for constitutional violations)

☒ Other _105 ILCS 5/14-8.02a(i)_
_PubLic LAW 101-476 (IDEA)_

*Please note: This form has been created for prisoners but can be adapted for use by non-prisoners.*

Now comes the plaintiff, _Anthony + Barbara Moore_ , and states as follows:

My current address is: _408 E. Douglas Bloomington, IL 61701_

The defendant _Robert Nielson_ , is employed as _Superintendent_
at _Bloomington School Dist. #87_

The defendant _Becky Francois_ , is employed as _Director of Special Education_
at _Bloomington School Dis #87_

EXHIBIT
C
tabbies

The defendant _Barry Reilly_ , is employed as _Assist. Superintendent_
_____ at _Bloomington Public School Dist #87_

The defendant _Cindy Helmers_ , is employed as _Principal_
_____ at _Bloomington H.S. Dist #87_
                                                    (revised 9/96)
The defendant _Cindy Lundberg_ , is employed as _Counselor_
_____ at _Bloomington H.S. Dist. #87_

Additional defendants and addresses    _attached_ _____

For additional plaintiffs or defendants, provide the information in the same format as
above on a separate page.

## LITIGATION HISTORY

A.  Have you brought any other lawsuits in state or federal court dealing with the same
facts involved in this case?                Yes        ☐     No ☒

If yes, please describe

_____

_____

_____

B.  Have you brought any other lawsuits in state or federal court while incarcerated?
     _N/A_                    Yes        ☐     No ☐

C.  If your answer to B is yes, how many? _____  Describe the lawsuit in the space
below.  (If there is more than one lawsuit, describe the additional lawsuits on another
piece of paper using the same outline.)

   1.  Parties to previous lawsuit:

       Plaintiff(s)      _____

       Defendant(s)   _____

                          _____

   2.  Court (if federal court, give name of district; if state court, give name of county)

Attachment of additional defendants and addresses

The defendant  Ann Marie Stephens , is employed as
 Home Economics Teacher   at  Bloomington H.S. Dist. #87

The defendant  Tim Moore, is employed as
 Assistant Principal  at Bloomington H.S. Dist. #87

The defendant   Joel Misukonis  is employed as
 Art Teacher      at   Bloomington H.S. Dist. #87

The defendant  Donna Engel, is employed as
 Special Education Teacher  at  Bloomington H.S. Dist. #87

The defendant Bloomington Public School District #87  in
 Bloomington,  Illinois

The defendant Sally Tucker is the Assistant Superintendent of Curriculum & Instructions
and supervisor of Becky Francois  Special Education  Director of  Bloomington Public
School District #87 in Bloomington, Illinois

Bloomington Public School District #87 Past and Present
Janella Cooley
Diana McCauley
Randy Burge
Keith Davis
Janice Smith
Cheryl Jackson
Kathy Havens

Attorney Richard Simpkins
State Farm Insurance Company
Bloomington, Illinois

Hearing Officer Julia Dempsy
Illinois State Board of Education
Springfield,  Illinois

Officers of the Illinois State Board of Education
Springfield, Illinois

3. Docket Number/Judge

_____

4. Basic claim made

_____

5. Disposition (That is, how did the case end. Was the case dismissed? Was it appealed? Is it       still pending?)

_____

6. Approximate date of filing of lawsuit_____

7. Approximate date of disposition

_____

For additional cases, provide the above information in the same format on a separate page.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

A. Is there a grievance procedure available at your institution?  Yes  ☒   No  ☐

B. Have you filed a grievance concerning the facts relating to this complaint?   Yes  ☒

No  ☐   If your answer is no, explain why not

_____

_____

C. Is the grievance process completed?    Yes  ☒   No  ☐

   *PLEASE NOTE:  THE PRISON LITIGATION REFORM ACT BARS ANY*

*INCARCERATED PERSON FROM BRINGING SUIT CONCERNING THE CONDITIONS OF HIS CONFINEMENT UNLESS AND UNTIL HE HAS EXHAUSTED AVAILABLE ADMINISTRATIVE REMEDIES.  PLEASE ATTACH COPIES OF MATERIALS RELATING TO YOUR GRIEVANCE.*

## STATEMENT OF CLAIM

Place of the occurrence _BLOOMINGTON HIGH SCHOOl / BloominETON, ILLINᵢ_

Date of the occurrence _1999 — 200 ✓_

Witnesses to the occurrence _____

*State here briefly the FACTS that support your case. Describe how EACH defendant is involved.*
*Do not give any legal arguments or cite cases or statutes. Number each claim in a separate paragraph.*
*Unrelated claims should be raised in a separate civil action.*

    *THE COURT STRONGLY URGES THAT YOU USE ONLY THE SPACE PROVIDED.*

## STATEMENT OF CLAIM

Place of the occurrence  Bloomington High School District #87-1202 E. Locust Street, B
Bloomington, IL

Date of the occurrence  School years 1999 thru 2003

Witnesses  Administrators, School Psychologist, Private Psychologist, Teachers,
classmates, attendance clerk, minister and family, siblings, parents

The Illinois State Board of Education, Bloomington District # 87, Bloomington Public
Schools Board of Education. Bloomington High School District #87 and individual
defendant.

1. Student was removed from regular education classroom without notification to
parent, special education case manager and other staff, and placed in a detention
room for approximately three weeks.
2. School district failed to convene a multidisciplinary staffing with notification to
parent to determine change in students Individualized Educational Plan.
3. During a three week period, student was denied cafeteria privileges. Student was
not allowed to eat with his peers or given the same lunch menu.  Student was
restricted to water and a cold sandwich.
4. Student was threatened by assistant principal that he would be suspended for the
remainder of the school year if he left the detention room during the fourth hour
period.
5. Student was told by assistant principal that his parents had no say over her power
or her authority to discipline him in any way she chose.("I can do anything to
you that I want, and nobody is going to do anything to me about it. I don't
care who you tell")
6. Student was suspended in excess of the legal limit of 10 days.
7. Student was suspended frequently for conduct that other students committing the
same offense would not be suspended for.
8. Parent was denied the right granted to other parents to call in sick excuses for
student. (Attendant clerk under the order of her supervisor was told if the
Malone's call in for their son for any reason, that only the supervisor could
approve the call whether he was sick or not- and on several occasions the
student was marked truant instead of being approved for being sick. The
student suffered an excessive number of Saturday detentions and school
suspensions.)
9. Teachers refused to provide needed modifications and assistance to student.
10. Special Education department failed to provide legally required three-year
evaluations for student.
11. Special Education department, teachers, and school district failed to provide an
appropriate education for student.

12. Teachers retaliated against student because of due process proceedings. **(Student was given failing grades in two classes and parents were told by teachers that they were going to fail the student because due process was filed, and we were rudely told to "get your attorney")**

13. Student was unfairly and inappropriately required to make-up an excessive amount of work missed because of illegal removal from regular class by school counselor and administrator.

14. Student was subjected to physical and verbal abuse by hall monitor.

15. Counselor subjected student to psychological abuse. **(Counselor told the student that all of his teachers complained that he had a body odor and he needed to bathe. She also stated that he was not wanted in their classroom smelling up their classroom.)**

16. Student suffered from lack of self esteem and he felt unwanted because of the way the counselor spoke down to him and made him feel unwanted, unclean, and helpless. and **they took his dignity.**

17. Mother suffered over 30-day hospitalization and traumatized for more than six months due to the severity of the stress related disease. "Shingles" Documentation of the time and duration of the diagnosis will be provided upon request.

18. Stress from abuse contributed to son's death. (Because of the four years of continued stress and racial discrimination, singling out, taunting by the assistant principals, and feeling hurt and unwanted until he graduated.)


### RELIEF REQUESTED


1. All defendants should be disciplined through the courts for federal, state and local violations. Specifically, discipline should be handed out due to violations of Public Law 101-476 IDEA.

    A. Order of implementation by the School District

    B. To analyze the presentation of evidence and testimony of witnesses for reason to arrive at legal, moral, and factual findings in regards to the harmful abuse of Anthony DeLance Malone and other students that suffer the same abuse from teachers and administrators in over stepping their boundaries, their authority when discipline is needed for students, and also when discipline **is not needed,** **and some still suffered unwarranted suspensions and detentions.**

    C. Make School District, to make system wide changes in its policies, practices, and procedures, any teachers or administrators breaking these changes willingly putting students in harms way of failing, not being successful, breaking students spirits-self-esteem, being singled out for racial or religion and discriminatory acts should face very hard and strict punishment, to even loosing their jobs.

D. Specifically speaking of the Superintendent, principal, assistant principal should loose their jobs because of the racial discrimination and actions that were imposed willingly by these superiors. (If these superiors were African American they would have been fired if these things would have happened to a Caucasian child.

E. The superiors (Superintendent, principal, assistant principal, and teachers) should go through a psychological assessment and if they fail, they should **loose their jobs.**

2. Plaintiffs are requesting punitive/monetary damages for pain and suffering based on the following claims:

   - I want a written apology from all of the defendants for abusing my son, denying him his educational and civil rights.
   - Denial of equal access to a quality education (books on tape, reading program, extra curricular activities (sports)
   - Denial of a free and appropriate education (forced to leave lunch tray because he did not have identification badge)
   - Forced to replace identification badge ($3.00) or suspended from school, not allowed to attend class-Violation of civil rights.
   - Damage to self esteem: emotional pain and suffering (Student was routinely ridiculed and embarrassed in front of friends and classmates due to unfair and harmful discipline policies
   - Physical pain and suffering (Cost of hospitalization, damage to physical and emotional health of parent (s)- Mrs. Malone
   - Economic pain and suffering ( transportation costs and psychological services, time taken off from work to attend an excessive number of meetings to address unfair policies for a two year period)

3. Installation of an Parent/Student Advocacy Board
   - To help parents and students with complaints against teachers, administrators, principals, assist. principals, and anyone holding a title that is employed by the Bloomington Public Schools, District # 87;
   - To help with the writing and filing complaints;
   - To advocate and speak on behalf of parents and students at school meetings, staffings, multidisciplinary meetings and hearings;
   - To use school funds to provide educational programs for parents of special and regular education students on parental and school legal rights and responsibilities;
   - To collect complaints and make sure they are directed to the appropriate place (s) and person (s).

## RELIEF REQUESTED

*(State exactly what relief you want from the court.)*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**JURY DEMAND**        Yes  ☒        No  ☐

Signed this  *May 3rd*  day of  *May*  ,
~~19~~ *2004*.

( *Signature of Plaintiff)*

| Name of Plaintiff: *Anthony Malone* | Inmate Identification Number: |
|---|---|
| *Barbara Sims-Malone* | |
| Address: *408 East Douglas St.* | Telephone Number: |
| *Bloomington, Ill. 61701* | *(309) 828-4602* |

A-243

**ROBERT E. STONER, M.A.**
Clinical Psychologist
3077 W. Jefferson St.   Suite 204
Joliet  IL   60435
815/744-3226

**Treatment Report**

Date of Report:  May 4, 2002
Patient Name:  Anthony D. Malone, B.D. 9/2/84

Anthony was initially referred by his parents in October of 2000 for school related problems which were causing him to have significant stress symptoms such as feelings of anxiety, headaches, stomachaches, and difficulty in concentration.  In addition, he was said to have a reading disorder for which he was receiving special educational services.  Problems at that time were evolving around that which the parents and family believed as being unfair treatment by school officials relative to is handicapping educational condition.

Since the initial evaluation and contact, and until March of this year, the only other contact with this family has been by telephone due to distance to my office and the family's inability to pay fees.  Apparently, the school district which the youth attends wanted treatment to take place on a monthly basis and as this therapist sees such contact as monitoring of problems rather than treatment of problems, services were not provided.  Since March 15, 2002, Anthony has been seen twice monthly along with his family for 1 1/2 - 2 hours per session.  His last session was on April 28, 2002.

Anthony is an adolescent Black youth who is of tall slim build.  During the initial interview in October of 2000 and currently, the youth presents himself in a depressed mood tone. His speech, although clear, is quite low in volume which makes it difficult to hear that which he says.  When he is not directly engaged in conversation, he sits slumped in his chair with is eyes half-closed.  Facial features remain very placid and non-expressive and other bodily movement is extremely limited.  At times he appears to be asleep but upon questioning, he is fully alert.  The youth denies seeing or hearing things not normally seen or heard by others and has an intact memory for recent and remote events.  Thought processes although slightly disorganized relative to sequence of events evolving about the history of his school problems are otherwise normal.

Anthony is currently in his third year of high school and indicates that he has always had difficulty in reading.  He stated that through junior high school, he enjoyed coming to school as he had special help.  He also thought that high school would be "fun".  However, upon entering high school, he reported having difficulty receiving help because although he would raise his hand to ask for help and help was promised by his teachers, he believes that he was basically ignored as none was forthcoming.  The youth's strong belief was that this was so for


EXHIBIT D

P.5

A-244

Treatment Report
Anthony D. Malone
Page 2

himself as well as for two other Black students as, in his
opinion, the teacher always helped the non-Black students before
helping the Black students.

Anthony's current problems of anxiety and depression related
symptoms began in 9th grade and were prevalent at the time of the
initial interview in October of 2000.  Anthony stated while in
the 9th grade that he had been attending regular classes for
keyboarding, physical education, math and home economics.  He
reported that he was passing his freshman basic math class with a
"C" but was taken out and put into "L.D. math."  Subsequent to
this event, he was taken out of the home economics class and
placed into an in-school detention room because of having missed
too many days of that class.  The youth and his family reported
that subsequently after returning to school from an absence due
to the death of a relative, he was suspended as presumably the
assistant principal that works with him would not accept his
mother's call to school and labeled him as being "truant."

Anthony is of the very strong belief that he has been
harassed and constantly observed by this assistant principal.
Anthony also says that his counselor talked to him about why he
"stank" in class and that this inquiry was initiated by his
teachers who stated that were told by the assistant principal to
report this to the counselor.  Both the youth and his parents
insisted that he took baths daily and that this was not so.
Anthony reported also that he was searched and patted down by the
assistant principal because a teacher reported that he was seen
giving a cigarette to another student.  Anthony denies smoking or
having had any smoking materials in his possession at any time.
Thus, due to these and other incidents, Anthony stated that going
to school causes him to have headaches and stomach aches as he is
constantly "thinking about what is going to happen today?"
Consequently, these symptoms are even more pronounced whenever he
is around the assistant principal or any teachers known to be
this person's friend, even going down the hallway.

Overall, at present, Anthony is seen as having a significant
degree of depression (DSM IV -- 300.4, Dysthymic Disorder) and in
addition, when in school he suffers from a high degree of tension
and anxiety (DSM IV -- 300.02, Generalized Anxiety Disorder).
For these conditions, one session per month is not an effective
treatment strategy to help him overcome the problems.  Weekly
treatment would be most beneficial although bi-weekly treatment,
which we are attempting at present, can be of some help.

*Robert E. Stoner, M.A*

Robert E. Stoner, M.A.
Clinical Psychologist
IL. License #71-1561

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
COUNTY OF MCLEAN

IN THE MATTER OF THE ESTATE OF )
                                                    ) No.  04 P 265
ANTHONY DELANCE MALONE,           ) Docket
                    Deceased.                     ) Page
                                                    )

**FILED**

**OCT 1 5 2004**

McLEAN                    COUNTY

CIRCUIT CLERK

## PETITION FOR LETTERS OF ADMINISTRATION

**BARBARA SIMS-MALONE and ANTHONY MALONE**, state under the penalties of

perjury:

1.        **ANTHONY DELANCE MALONE**, whose place of residence at the time of death was

601 Normal Avenue, Normal, Illinois, died August 29, 2003, at Normal, Illinois, leaving no will.

2.        The approximate value of the estate in this state is:

           Personal  $8,000.00

3.        The names and post-office addresses of decedent's heirs are set forth on Exhibit A and

made a part of this petition.

4.        The names and post-office addresses of persons who are entitled to nominate an

administrator in preference to or equally with petitioner are set forth on Exhibit A made a part of this

petition.  If none, so state: None .

5.        Petitioners are the parents of decedent and is legally qualified to act, or to nominate a

resident of Illinois to act, as administrator.

           Petitioners ask that Letters of Administration issue to the following, qualified and willing to act:

           Barbara Sims-Malone, 408 E. Douglas, Bloomington, IL 61701

           Anthony Malone, 408 E. Douglas, Bloomington, IL 61701


_____                    _____
BARBARA SIMS-MALONE                                    ANTHONY MALONE


Prepared by:
Susan Frances
Thomson & Weintraub                    Address _408 East Douglas St_
Attorneys for Petitioner                        _Bloomington, IL. 61701_.
105 North Center Street
Bloomington, Illinois  61701
Telephone: (309) 829-7069                    _____
Atty No. 6277486                                    Attorney Certification


EXHIBIT E

## EXHIBIT "A"

| NAME | ADDRESS | RELATION |
|------|---------|----------|
| Anthony Malone | 408 E. Douglas St., Bloomington, IL | Father |
| Barbara Sims-Malone | 408 E. Douglas St., Bloomington, IL | Sister |
| Keith Sims | 408 E. Douglas St., Bloomington, IL | Brother |
| Colleen Sims | 408 E. Douglas St., Bloomington, IL | Sister |
| Lychan Sims | 606 E. Walnut St., Bloomington, IL | Sister |
| DeBracey Malone | 408 E. Douglas St., Bloomington, IL | Brother |

None of the above listed heirs are minors and none are disabled.

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
COUNTY OF MCLEAN

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | |
| ESTATE OF: | ) | |
| | ) | |
| ANTHONY DELANCE MALONE, | ) | NO.  04-P-265 |
| DECEASED | ) | |
| | ) | |

# Appearance

I hereby enter my appearance in this cause.

_____
John Wm. Yoder, Attorney

John Wm. Yoder
John W. Yoder Law Firm
306 E. Grove St.
Bloomington, IL 61701
(309) 829-3344

EXHIBIT - F