E-FILED
Thursday, 08 December, 2005 08:43:04 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF ILLINOIS

**FILED**

DEC - 7 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY MALONE & BARBARA SIMS-MALONE, both on behalf of ANTHONY DeLANCE MALONE, deceased ) ) ) ) | |
| Plaintiff, ) | |
| v. ) ) ) | CaseNo.04-1137 |
| ILLINOIS SLATE BOARD OF EDUCATION. BLOOMINGTON SCHOOL DISTRICT #87 ROBERT NIELSON, BECKY FRANCOIS, ) ) | |
| BARRY REILLY, CINDY HELMERS, CINDY LUNDBERG, ANN MARIE STEPHEN, TIM MOORE, JOEL MISUKONIS, ) ) | |
| DONNA EAGLES, ) ) | |
| Defendants. ) | |

### Motion to Filing Additional
### Documents and Exhibits
### To Amend Case

Now comes Anthony Malone and Barbara Sims-Malone, both on behalf of

Anthony DeLance Malone, deceased, by and through Pro Se. Plea to the court for entry

of documents, exhibits, and letters that are vital to the outcome of our son's case. We are

asking to amend our case, in the United States District Court, Central District of Illinois.

This matter comes now before this Central District of Illinois. We are making a plea to this court to grant us entry of documents, exhibits, and letters to our son, Anthony DeLance Malone's, deceased, case. The aforementioned items are vital to the outcome of our son's case.

We apologize to this court for not submitting these sooner. We are Pro Se and we were not given a guide to follow on filing forms as we were given in the higher court. We were not informed about how and what to file with the original case presented in this court, so many issues were not heard or addressed as to vital information and proof needed to support our son's case. We, the Malones, were ordered to have a Summary judgment done and turned in with about two weeks to get all things turned in to be viewed by this court for our son's case. Because we are not attorneys and we lacked counsel, we did not know we were to turn in everything as if we were in a trial. This is the reason why these documents were not turned in at the time of the Summary judgment. We pray to the court that this is not held against us, for not knowing all that we are supposed to do. If we had known this court would have had this information at that time.

I noticed that there were many references to the 'alleged allegations', but these documents show that these were not allegations these were facts. I have the exhibits and other documents as proof of the facts.

Therefore, we, Anthony Malone and Barbara Sims-Malone, pray for entry of these documents and exhibits that are vital to our son's case and should be viewed by the courts before any final ruling is delivered. We are seeking justice for Anthony DeLance Malone.

Respectfully Submitted
Anthony Malone
Barbara Sims-Malone
12-7-05
Barbara Sims-Malone
408 E. Douglas st.
Blm. Ill. 61701
rh 309 828 8650

A-155

1                    STATE OF ILLINOIS

2                    DUE PROCESS HEARING

3

4       IN THE MATTER OF THE SPECIAL
        EDUCATION OF ANTHONY MALONE

5
                                       Julia Quinn Dempsey
6               and                     Impartial Hearing Officer

7
        BLOOMINGTON SCHOOL DISTRICT
8       NO. 87 LOCAL EDUCATION AGENCY,
        McLEAN COUNTY, ILLINOIS

9

10

11              **EXCERPTS OF DUE PROCESS HEARING**

12

13

14
                     Excerpts of due process hearing concerning
15      Anthony Malone taken on behalf at Bloomington High
        School, Bloomington, Illinois, on October 23, 2000.
16      Said hearing reported by Barbara A. Glover, CRR,
        RPR, and Certified Shorthand Reporter of the State
17      of Illinois.

18                                 CSR #84-1223

19
                        **GLOVER COURT REPORTING**
20
                            **5 Elm Ridge**
21
                    **Mattoon, Illinois   61938**
22
                 **(217) 235-2272 or 1-800-235-3350**
23

24

EXHIBIT A (1 of 12)

26

A·156

```
 1          MS. PAISLEY:  We're not resisting anything

 2    that Mr. Simkins mentioned in his opening statement

 3    nor have we resisted anything that the parents have

 4    proposed at mediation and thereafter and in fact

 5    we're perfectly willing to do each and everything

 6    that they've asked for.

 7          HEARING OFFICER DEMPSEY:  Well, then,

 8    after I listen to all of this about how bad last

 9    year was according to the parents and even according

10    to some extent to the school district, you know,

11    what is it that you want me to order?

12          You want me to enter an order saying that,

13    yes, last year was bad.  There were procedural and

14    possibly substantive violations of his rights, and

15    as a result this is what has to be done.  He has to

16    get a psy.  He has to have a reading evaluation.  He

17    has to get compensatory services.  They have to have

18    a behavior intervention plan that has progressive

19    discipline.  He has to get the makeup work in

20    Physical Science which they've just offered to do in

21    the opening statement, and I'll put that into an

22    order.

23          Is that what you all envision going on

24    here, because I have to tell you due process
```

EXHIBIT A (2 of 12)

 1    hearings are -- there's only one outcome from a due

 2    process hearing, and that's to change things for the

 3    kid.  All right?  It's to have an order from me that

 4    says, school district you do this, this, this, this,

 5    and this, and you do it within this time span, and

 6    the State Board of Education is going to come and

 7    check starting 30 days from that date to make sure

 8    that you are doing the things that you need to do.

 9         Now, if they are willing to sit down and

10    hammer out some kind of a, you know -- I have done

11    this with stipulated trials.  I have done this with

12    consents.  You know, you can do it any old way we

13    want.  I can enter an order if we're in agreement of

14    what the child needs, and we can save ourselves two

15    days of sitting here replaying last year, and

16    that's -- I'm saying what is going to come out of

17    that?

18         BARBARA MALONE:  Well, I've got something

19    to say.  I think that it's very important that the

20    due process go forward, one thing because of my son.

21    You know, we're dealing with, you know, he's not a

22    big cry baby, but my son does have feelings, and

23    there's been many times throughout the school year

24    where the school officials have actually told my son

GLOVER COURT REPORTING
(217) 235-2272

EXHIBIT A (3-4 12)

29

A-200

1    when they would do these things to him that he knew

2    was wrong and illegal and, you know, with the

3    taunting and picking and just messing with him, you

4    know, and violating his rights and everything, and

5    he would tell them I'm going to tell your mother.        highlighted,
                                                              KT

6    You know what I'm saying.  They would respond and

7    say tell your mother.  Your mother can't do anything

8    to me.  I think it's important that this is also a

9    lesson for my son for him to know that anytime -- if

10   someone violates your rights, you've got to right to

11   stand up to them.  You have a right for a voice.

12   This is my son's voice right now.

13            HEARING OFFICER DEMPSEY:  Where is he?

14            MRS. BARBARA MALONE:  Is going through

15   this due process.  He can be in here, and he really

16   wants to scream and get it all out, but my son was

17   hurt.  He was hurt mentally.

18            MR. SIMKINS:  Can I have about ten minutes

19   with them?

20            HEARING OFFICER DEMPSEY:  You probably

21   should have had him in here to listen to the

22   district's opening statement.

23            MR. SIMKINS:  That's my -- I'm the one

24   that asked him not to be here.  I don't like to have

GLOVER COURT REPORTING
(217) 235-2272

EXHIBIT A (4 of 12)

1    the children involved in something that's

2    adversarial.

3              Can I have ten minutes with them at this

4    point?

5              HEARING OFFICER DEMPSEY:  We'll take a ten

6    minute break.

7              (At this point a short recess was

8                   taken.)

9              HEARING OFFICER DEMPSEY:  We're back on

10   the record.  We have had a chance in the break to

11   talk a little bit about the things that I mentioned

12   after I heard the opening statements, and I think

13   that Ms. Paisley and Mr. Simkins have had an

14   opportunity to work a few things out and who would

15   like to kind of brief me in where we were to start?

16             MR. SIMKINS:  I've got some notes here.

17   As I understand it, the school district has agreed

18   that things last year were not ideal as it relates

19   to Anthony's schooling, the parents have agreed that

20   in fact the same is true, and the parents and the

21   school I think have come to some agreement as to

22   what could be done for Anthony to ensure his success

23   as a sophomore at Bloomington High School and in the

24   future.

EXHIBIT A (5 of 12)

1        HEARING OFFICER DEMPSEY:  And then I would

2    suggest after you get the results of that

3    reevaluation by a reading specialist that you

4    reconvene the IEP and see what services need to be

5    pulled together, the whole team, mother, father, and

6    the specialists, what services need to be pulled

7    together in order to help him to learn to raise, you

8    know, to increase his reading comprehension and his

9    reading levels.

10        MR. SIMKINS:  And the parents will agree

11    to have that evaluation done in addition to a

12    general case study evaluation that's currently due

13    today before we leave.

14        HEARING OFFICER DEMPSEY:  Okay.  So is it

15    going to be a -- it's going to be a re-eval.  All

16    right.

17        MS. FRANCOIS:  And as part of that we'll

18    include a reading assessment.

19        HEARING OFFICER DEMPSEY:  Yes, if you

20    don't have one here, you know you can contract with

21    the university or somebody else to get you one and

22    get a specialized evaluation.

23        MRS. BARBARA MALONE:  I would like to have

24    Mr. Stoner to --

Highlighted,
KT

GLOVER COURT REPORTING
(217) 235-2272

EXHIBIT A-(6 of 12)

A.202
Highlighted,
KT

1          MR. SIMKINS:  As I understand it -- this

2    is off the record.

3                    (At this point there was an off the

4                    record discussion.)

5          HEARING OFFICER DEMPSEY:  Mr. Stoner to be

6    allowed access and notice of all MDCs and IEP

7    meetings to advise the parents.

8          MS. PAISLEY:  Do we have speakerphone

9    capabilities?

10         HEARING OFFICER DEMPSEY:  And if he's got

11   a heavy schedule, by teleconference or in person,

12   but I'm like talking about not really your ordinary

13   assessment but a specialized reading evaluation.

14         BRENDA FRANCOIS:  I added that.

15         HEARING OFFICER DEMPSEY:  And then I would

16   also suggest that you make the behavior issue a

17   little more specific so if there does become any

18   escalation in behavior that a functional analysis is

19   done and a new behavior intervention plan developed

20   based on that functional analysis.

21         MR. SIMKINS:  That is the gist of my notes

22   as it relates to what the parents and the school are

23   going to do to work together.  The only thing I

24   would add is it's the utmost importance that the

GLOVER COURT REPORTING
(217) 235-2272

EXHIBIT A (7-9/12)

40

A-203

```
 1              HEARING OFFICER DEMPSEY:  That's a good

 2    idea.

 3              MRS. BARBARA MALONE:  Because one of the

 4    concerns there was some testing that Mr. Stoner said

 5    that should have been done for Anthony that wasn't

 6    done, and he wanted to do like a hearing test that

 7    is normally done at ISU, and he would send you

 8    out -- you know, something that he feels important.

 9              BRENDA FRANCOIS:  An audiological test?

10              MRS. BARBARA MALONE:  It's some testing

11    like that that he wanted to do.

12              HEARING OFFICER DEMPSEY:  He would just

13    say you need to have this done.

14              MS. PAISLEY:  Wouldn't our reading

15    specialist tell us if we needed that or do --

16              HEARING OFFICER DEMPSEY:  If you're going

17    to redo a case study evaluation, you do a hearing

18    screening.

19              BRENDA FRANCOIS:  We do a hearing

20    screening.  If there's any reason to suspect that we

21    need to do further --

22              HEARING OFFICER DEMPSEY:  But if the

23    psychologist is saying there is possibly, maybe you

24    want to do it as part of it.
```

*Highlighted,
KT*

**GLOVER COURT REPORTING**
**(217) 235-2272**

EXHIBIT A (8 of 12)

41

A-204

1          MRS. BARBARA MALONE:  The test has never ⟩ Highlighted,
2    been done.                                                        KT

3              BRENDA FRANCOIS:  We generally do those

4    through ISU.  They do audiologicals for us through

5    the speech and language clinic out at ISU, so we

6    could refer him.

7              HEARING OFFICER DEMPSEY:  And get an

8    audiological as part of the case study.

9              BRENDA FRANCOIS:  As part of that as well.

10             MR. SIMKINS:  The only other thing I was

11   going to add onto the record, and it's not an

12   outcome.  It's just a process.  You had mentioned I

13   think, Becky, that you were going to be writing a

14   grant for reading.

15             BRENDA FRANCOIS:  Yes, on Friday I

16   received a call from someone at the public library

17   telling me they had this new machine that you can

18   scan the text into it and it reads it to you, and

19   there's also a grant that from the Illinois Library

20   Association that is available for public schools as

21   well, so I had already sent it out Friday afternoon.

22   I send it out to the school.  They probably got it

23   today,  the grant.  We're going to apply for that

24   grant and see if we can get that here.  I think it

EXHIBIT A (9-4 12)

42

A-205

1      would be helpful for a lot of the students for some

2      of the content books, like science, and there's

3      another thing we're going to do.

4              HEARING OFFICER DEMPSEY:  Well, you can do

5      an assistive technology evaluation too.  You

6      probably have somebody that specializes in doing

7      those.  I wouldn't say do an assistive technology

8      until you see what the reading specialist says or

9      what the audiologist says, but if it turns out that

10     there are those problems, you can do a specialized

11     assistive technology evaluation.  They're becoming

12     pretty common, actually, for kids that have learning

13     disabilities, and that also would clue you into

14     whether or not computers is the instruction or what,

15     tape recorders, you know, even, you know, use the

16     books that -- talking books, books on tape, things

17     like that, but it all depends on what his learning

18     style is, and you need to have that determined by a

19     professional.

20              MRS. BARBARA MALONE:  And so what about

21     the books on tape, recorded --

> Highlighted, KT

22              MR. SIMKINS:  Let's wait and see what they

23     determine to be the most effective way for him to

24     actually get the information in.  It may be books on

EXHIBIT A (10 of 12)

43

A-206

```
 1    tape aren't the most effective.  Maybe it's

 2    something else and then we'll make sure in the IEP

 3    that we get in what in fact needs to be used.

 4              MRS. BARBARA MALONE:  Did you bring up

 5    about the Sylvan --

 6              MR. SIMKINS:  Sylvan Learning may be

 7    something that's needed after this evaluation is

 8    done and clearly --

 9              MRS. BARBARA MALONE:  So it still wouldn't

10    be too late to get enrolled in in order --

11              MR. SIMKINS:  The school has agreed

12    whatever is necessary.

13              MS. PAISLEY:  What the team comes up with

14    as necessary in order to get Anthony reading the way

15    we think he should be reading.

16              MRS. BARBARA MALONE:  And writing?

17              MR. SIMKINS:  Correct.

18              MS. PAISLEY:  Oh, yeah, I mean reading and

19    writing.

20              HEARING OFFICER DEMPSEY:  Reading.

21    Reading and writing.  I added writing.

22              BRENDA FRANCOIS:  So on the re-eval we

23    have that we are to do a psychological evaluation,

24    an audiological, and also reading evaluation by a
```

Highlighted.
KT

**GLOVER COURT REPORTING**
**(217) 235-2272**

EXHIBIT A (11 of 12)

44

A-159

1    reading specialist.

2              MS. PAISLEY:  The other thing is that

3    bills that come from Mr. Turner -- Stoner, can you

4    give them to Steve and --

5              MRS. BARBARA MALONE:  Would that include

6    what he's already done?

7              MR. SIMKINS:  It would be in the future

8    they've agreed to, six meetings in the future, one

9    month -- once a month for six months if needed.

10             MS. PAISLEY:  One times six times 100.

11             MRS. BARBARA MALONE:  What if it's still

12   needed after the six months?

13             MS. PAISLEY:  We will talk about it at the

14   end of the six months.  We're hoping we will have a

15   good plan in place by then, but we are not doing

16   that right now.

17             MRS. BARBARA MALONE:  Can the record

18   please clearly state that Ms. Helmers is to have

19   nothing to do with my son as far as his, anything

20   from now on going on -- why is she here now?

21             MS. PAISLEY:  I asked her to come in.

22             MRS. BARBARA MALONE:  I don't think she

23   should be here.  She's not supposed to have anything

24   else to do with my son.

**GLOVER COURT REPORTING**
**(217) 235-2272**

EXHIBIT A (12 of 12)

*[top handwritten note:]* They have NO right to do this, And No reason"

# BLOOMINGTON HIGH SCHOOL
## STUDENT REFERRAL

*[handwritten right margin:]* They dropped him from this class, No IEP meeting, No one knew they done this for almost 3 wee

*[handwritten:]* He had a D for the class and thats

TO: Assistant Principal *[handwritten:]* because Steffen was not working with Anthony and she did not follow his IEP.

FROM: Steffen

REF: Anthony Malone
Student's Name

Time _____

Date 2/17/00

Please write a short statement of the reason for the referral. A brief written summary of the action will be returned to the referring teacher with any office recommendations.

Statement of reason: During the four week of this quarter Anthony has been in class approx. 4 days. We will be moving into a lab situation with sewing. With a 7% he is too far behind and will not be able to catch up. I feel it would be best if he was dropped from class. In the lab I will not be able to stop and give him one on one attention to get him caught up.

This referral was preceded by:

_____ Conference(s) with pupil                    _____ Letter to/from parent

_____ Detentions (Approx. no.____)               _____ Earlier referral to Dean

_____ Call to/from parent

Disposition: _____

*[handwritten:]* dropped

*[handwritten:]* "EXHIBIT B"

(10b)

*[handwritten bottom:]* *"they lied on this." They had started child care, not sewing! And he had been in sewing class before and he done very good". So, Anthony being on a sewing machine would not have been a problem.

Teacher

C. Helmen
Asst. Principal Signature

## STATE OF ILLINOIS

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT

McLEAN COUNTY — IN PROBATE

**FILED**

McLEAN COUNTY

AUG 1 5 2005

**CIRCUIT CLERK**

Estate of

__ANTHONY DELANCE MALONE__
Deceased

No. __04 P 265__

### LETTERS OF OFFICE — DECEDENT'S ESTATE

__BARBARA SIMS-MALONE & ANTHONY MALONE__ **HAVE** ~~**HAS**~~ been appointed __INDEPENDENT CO-ADMINISTRATORS__ of the (office)

estate of __ANTHONY DELANCE MALONE__, deceased, who died __AUGUST 29TH__, __2003__,

and is authorized to take possession of and collect the estate of the decedent, and to do all acts required of **THEM** ~~**HIM**~~ by law.

Witness, __AUGUST 15TH__, __2005__

**SEAL**

__SANDRA K. PARKER__
Circuit Clerk

By __JASON A. DAZEY__
Deputy

### CERTIFICATE

I certify that this is a copy of the letters of office now in force in this estate.

__September 16th__, __2005__

**SEAL**

By _____
Circuit Clerk

Deputy

Name __JOHN WM. YODER__

Attorney for __CO-ADMINISTRAORS__

Address __306 EAST GROVE STREET__

City __BLOOMINGTON, IL 61701__

Telephone __(309)829-3344__

"EXHIBIT C" (1 of 1)

10/13/00

Brief review of
    Spec Ed. Documents Re: Anthony Malone
                         B.D. 9/2/84

Prob. areas:

1. No re-eval as required by law every three years
which was due in March of 1999.

    The school personnel made an illegal decision
not to perform the re-eval. The re-eval is
very specific in its requirements and must be
completed at least once each 3 year period.
If re-eval is requested prior to the elapse
of the 3 year period, school personnel can
refuse based upon the material available.

    The re-eval must focus upon documentation
of the needs to be served. Relative to these
needs no process disorder seems to have
been determined as the underlying cause for
failure to read at a higher level. In fact Anthony
has made no significant gains in reading

Received  Oct-18-00  16:26    From-809 768 4809
F-624    T-862  P.07    To-Miller Tracy Braun P    Page  07
Oct-18-00  17:02    From-Miller Tracy Braun Funk & Paisley

EXHIBIT D (1 of 4)

2)

achievement as reflected in documents presented to me by Mr & Mrs. Malone. This suggests that the only aspect of any learning disability that Anthony that was addressed in his IEP was his low academic skills. The IEP fails to address any underlying process disorders, which have not been identified which interferes with academic learning. If a minimum the "due process" should address this issue. This may be a rampant problem throughout the school district in its delivery of spec. ed. services or it may be a procedure that is selectively applied to minorities and other "so-called" underprivileged groups such as "poor" Whites.

2. Documents reflect preparation dates that precede actual conference dates. This suggests that decisions are made for in advance of the actual Child Review + without following all protective procedural guidelines.

EXHIBIT D (244)

3)

3.   There has been no parental involvement relative to required social developmental updates for any Child Review (MDC) except for the very 1st one. The district seems to go around or avoid this requirement by mailing some type of questionnaire to the family without making any attempt to have a personal face to face interview completed by a school social worker who would normally be assigned to complete this task. This may be a problem throughout the school district or again, maybe directed only towards specific groups - minorities and poor white.

4.   Mrs. Malone reports that person was out of school on suspension for a period in excess of 10 school days without the benefit of a management plan or change to help him with any problems that led to such suspension. Further, these suspensions seem to have been frivolous

EXHIBIT D (3 of 4)

4)

in nature and problems associated with administrative neglect/prejudice as opposed to specific problem behaviors of the student. Further, for the sake of argument, if Anthony demonstrated behavioral problems that led to suspension then it would have been appropriate to refer him back to the spec ed team for intervention This was not done.

Closing Statement

It would seem that the school district has failed not only this student but the implication of the documents I reviewed is that there is a total failure throughout the school district relative to implementing the procedural safeguards for either all spec ed students or selectively failing to implement such safeguards towards minority students.

Robert E. Stover, M.A.
Clinical Psychologist lic #071-1581
211.2 W. Jefferson #142
Joliet Ill. 60435

815/744-2326

EXHIBIT D (474)

MALONE, ANTHONY D.        GRD:09
SCHOOL :014   CALENDAR:307   HM ROOM:2003    ADVISOR:Lundberg

| BS. DATE | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | NT |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/26/99 | Thu. | A-TS | A-TS | A-TS | A-TS | | | | | N |
| 9/14/99 | Tue. | U-U | U-U | U-U | U-U | U-U | U-U | U-U | | N |
| 9/16/99 | Thu. | | | | | U-U | U-U | U-U | | N |
| 9/17/99 | Fri. | E-M | E-M | E-M | E-M | E-M | E-M | E-M | | N |
| 9/20/99 | Mon. | E-I | E-I | E-I | E-I | E-I | E-I | E-I | | Y |
| 9/22/99 | Wed. | E-OA | E-OA | E-OA | | | | | | Y |
| 9/23/99 | Thu. | | | A-TS | A-TS | A-TS | A-TS | A-TS | | N |
| 9/27/99 | Mon. | E-OA | E-OA | E-OA | E-OA | | | | | Y |
| 9/29/99 | Wed. | | | | | | A-TS | | | Y |
| 0/01/99 | Fri. | E-OA | E-OA | E-OA | E-OA | E-OA | E-OA | E-OA | | N |
| 0/04/99 | Mon. | E-OA | E-OA | E-OA | | | | | | N |
| 0/13/99 | Wed. | U-U | U-U | U-U | U-U | U-U | U-U | U-U | | N |
| 0/14/99 | Thu. | | | | O-OS | O-OS | O-OS | O-OS | | Y |
| 0/15/99 | Fri. | I-IS | I-IS | I-IS | I-IS | I-IS | E-OA | E-OA | | Y |
| 0/18/99 | Mon. | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | | N |
| 0/19/99 | Tue. | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | | N |
| 0/21/99 | Thu. | U-U | U-U | U-U | | | | | | Y |
| 1/03/99 | Wed. | | E-I | E-I | E-I | E-I | E-I | E-I | | N |
| 1/04/99 | Thu. | | | X-IB | | | | | | N |
| 1/08/99 | Mon. | | | | | | | U-U | | N |
| 1/10/99 | Wed. | | | | | | | X-IB | | N |
| 1/24/99 | Wed. | U-U | U-U | U-U | U-U | U-U | U-U | U-U | | N |
| 2/06/99 | Mon. | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | | N |
| 2/07/99 | Tue. | | | | | | X-IB | | | N |
| 2/09/99 | Thu. | I-IS | I-IS | I-IS | I-IS | I-IS | I-IS | I-IS | | N |
| 2/10/99 | Fri. | E-I | E-I | E-I | E-I | E-I | E-I | E-I | | N |
| 2/13/99 | Mon. | | | | | | U-U | | | N |
| 2/16/99 | Thu. | | | | | | U-U | | | N |
| 2/17/99 | Fri. | | E-IS | | | | | E-OA | | N |
| 2/20/99 | Mon. | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | | N |
| 2/21/99 | Tue. | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | | N |
| 1/05/00 | Wed. | U-U | U-U | U-U | U-U | U-U | U-U | U-U | | N |
| 1/10/00 | Mon. | X-IB | | | | | | | | N |
| 1/24/00 | Mon. | A-U | A-U | | | | | | | Y |
| 1/25/00 | Tue. | U-U | U-U | U-U | U-U | U-U | U-U | U-U | | N |
| 1/31/00 | Mon. | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | | N |
| 2/01/00 | Tue. | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | | N |
| 2/02/00 | Wed. | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | | N |
| 2/04/00 | Fri. | U-U | | | | | U-U | | | N |
| 2/07/00 | Mon. | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | | N |
| 2/08/00 | Tue. | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | | N |
| 2/09/00 | Wed. | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | | N |
| 2/10/00 | Thu. | | | | | | U-U | | | N |
| 2/11/00 | Fri. | | | | | | | U-U | | N |
| 2/14/00 | Mon. | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | | | N |
| 2/15/00 | Tue. | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | | N |
| 2/16/00 | Wed. | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | O-OS | | N |
| 2/17/00 | Thu. | E-OA | E-OA | E-OA | E-OA | E-OA | E-OA | | | N |
| 2/18/00 | Fri. | E-OA | E-OA | E-OA | E-OA | E-OA | E-OA | E-OA | | Y |

15 out of school suspension from Oct 18th to Feb 08 16th out of 34 school days this means 19 days out of 34 regular days in school.

EXHIBIT E (1 of 2)

```
                    BLOOMINGTON  HIGH  SCHOOL        TIME: 07:02:18   DATE: 06/09/00
                    Day Summary(Morning Report)                      PAGE:
```

*11 in Schools out of 19 days of school*

```
        MALONE, ANTHONY D.          GRD:09
SCHOOL:014   CALENDAR:307  HM ROOM:2003  ADVISOR:Lundberg
```

| ABS. DATE | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|---|
| 02/25/00 | Fri. | | | | I-IS | | | | |
| 02/28/00 | Mon. | | | | I-IS | | | | |
| 02/29/00 | Tue. | | | | I-IS | | | | |
| 03/01/00 | Wed. | U-U | | | U-U | | | | |
| 03/02/00 | Thu. | I-IS | I-IS | I-IS | I-IS | I-IS | I-IS | I-IS | |
| 03/03/00 | Fri. | I-IS | I-IS | I-IS | I-IS | I-IS | I-IS | I-IS | |
| 03/07/00 | Tue. | | | | I-IS | | | | |
| 03/08/00 | Wed. | | U-AT | | | | | | |
| 03/15/00 | Wed. | | | | | | E-CT | E-CT | |
| 04/05/00 | Wed. | E-I | E-I | E-I | E-I | E-I | E-I | E-I | |
| 04/06/00 | Thu. | U-U | U-U | U-U | U-U | U-U | U-U | | |
| 04/14/00 | Fri. | | I-IS | I-IS | I-IS | I-IS | I-IS | I-IS | |
| 04/20/00 | Thu. | | | | | | | U-U | |
| 04/25/00 | Tue. | | I-IS | I-IS | | E-I | E-I | E-I | |
| 04/26/00 | Wed. | E-I | E-I | E-I | E-I | E-I | E-I | E-I | |
| 04/27/00 | Thu. | E-CT | E-CT | E-CT | I-IS | I-IS | I-IS | I-IS | |
| 04/28/00 | Fri. | | | | | | I-IS | I-IS | |
| 05/01/00 | Mon. | I-IS | I-IS | I-IS | I-IS | I-IS | I-IS | | |
| 05/02/00 | Tue. | I-IS | I-IS | I-IS | I-IS | I-IS | E-OA | E-OA | |

*From Feb 25th thru May 2nd. this means only 8 days of regular class time that he was in class out of 19 days*

```
***************** END OF REPORT *****************
```

*But a total of 13 in school from Oct 14th thru May 2nd*

Barb. Malone wrote this:

*3 IU  
1 UN  
Meeting 5/9/00*

"This is work he was only some of the work he needed to make up in all classes!"

"Basic Physical Science"  
42% — 3 outstanding — redo corrections — 5 tardies to class r/w by Monday

"Keyboarding" —  
3 Tables to type — independent writing project 8 pages to do needs to come in about 1-2 hours

"Health" — 2 missing assignments did work while in -school

"B. Math" — some improvement since last meeting correct chapter 15 Test

"Shurault — reading level (mid 2nd grade) working on decoding small group"

EXHIBIT E (20f2)

On page ②* of 13

Under Strengths Anthony was
getting a D for the class

And on next page ①* of 9

Steffen, Helmers, Lundberg they were
all at this staffing on 3-2-00 and
"signed" their names. Anthony was
passing the class with a "D" but passing.

"None of these women said anything"
about Anthony being dropped from Home econ.
They made it look like he was still in her class.
They tried to keep this to themselves, but I found
on the very next day after this staffing when feedback
sheets come home and no 4th hour signed. That's when
Anthony broke down crying telling me they had dropped him? [!]

EXHIBIT F (1 of 14)

**Bloomington Public Schools - School District 87**
1:04-cv-01137-MMM-JAG   # 94   Page 24 of 71
300 East Monroe Street, P.O. Box 249, Bloomington, IL 61702
Telephone (309) 827-6031    FAX (309) 827-5717

Page 1 of 13

## INDIVIDUALIZED EDUCATIONAL PROGRAM (IEP)

### I.   Student Information

| | |
|---|---|
| Student Name  ANTHONY MALONE | Primary Language  English |
| DOB _____ Dist. ID  09/02/84 | Primary Mode of Communication   Verbal |
| Gender  M    Ethnicity    B    Code | Language(s) spoken in the home   English |
| Address  408 E DOUGLAS | Primary Disability  SLD |
| City/State/Zip  BLOOMINGTON, IL 61701 | Secondary Disability(ies) |
| Home Phone   309-827-2205 | |
| Parent/Guardian  Mr. and Mrs. ANTHONY Malone | Related Services |
| Work Phone    828-4602 Grandma | Resident District  Bloomington Public Schools |
| Home Phone, if different | Home School |
| Address, if different | School of Attendance   BHS          Grade  9-10 |
| City/State/Zip      · | District of Attendance   Bloomington Public Schools |
| Parent/Guardian (Noncustodial) | Current Teacher   SHINAULT |
| Ed. Surrogate | Reevaluation Due Date |

### II.   Conference Information   Purpose(s):                    **Date:**  03/2/2000

Review and/or develop your child's Individualized Education Program (IEP) and determine educational placement needs.

Review need to create or revise a transition plan.

Review anticipated date of graduation.

| Parent Notification of Conference: | Method: | Notification of Conference | Date: | 01/21/2000 |
|---|---|---|---|---|
| | | Letter | | 02/9/2000 |
| | | Letter | | 3/1/2000 |

### III.   Descriptions of Services for the Duration of This IEP (Complete this section last.  Check all locations and service delivery methods that apply.)

Placement for the Duration of this IEP      District:  87          School:  BHS          Grade:  9-10

| SPECIAL EDUCATION | Primary Implementer | Start Date | Duration | Minutes per Week | General Class | Separate | Consul-tation | Direct |
|---|---|---|---|---|---|---|---|---|
| Cross-categorical | Shinault | 8/24/2000 | 05/29/01 | 1500 | ☐ | ☒ | ☐ | ☒ |
| | | | | | ☐ | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ | ☐ |
| **RELATED SERVICES** | | | | | | | | |
| | | | | | ☐ | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ | ☐ |
| | | | | | ☐ | ☐ | ☐ | ☐ |

| List Subjects/Activities Requiring a | Reading Imp. | Cons. Ed | |
|---|---|---|---|
| Separate Classroom: | Math 9 | Basic Foods/Nut. | |
| | Life/Env. Science | Basic Prod/Trans | |

Reporting Student Progress:      ☒  IEP Progress Reports sent at end of each grading period.
                                 ☐  Other:

Person Responsible for this IEP and Reporting (Case Manager):      Shinault

EXHIBIT F (2-of 14)

## IV. General Considerations for the Development of this IEP

**A.** **Parent Report (vision for future; skills they wish the student to develop; perceptions regarding special education programming for this student, including concerns if applicable).**

To see continued academic progress. Concerned about his low reading skills.

**B.** **Impact of Student's Disability Upon Participation/Performance in the General Curriculum (For School-Age Students) or Upon Participation in Natural Environments (For Early Childhood Students).**

Processing skill deficits negatively impact participation/performance. Many absences interfere with success in school.

**C.** **Medical Information. Check and describe all items that apply.**
- ☐ Medicine: _____
- ☐ Glasses: _____
- ☐ Hearing Devices: _____
- ☐ Relevant Diagnoses: _____
- ☐ Other: _____

**D.** **Performance Areas for Which This Student Requires Special Instruction and Related Services**
Elsewhere in this IEP, describe present levels of performance, list necessary accommodations or modifications, and write goals and objectives or benchmarks for each of the areas checked below:

- ☒ Academic/Cognitive Performance
- ☐ Communication Skills
- ☐ Independent Functioning
- ☐ Motor/Sensory Development
- ☐ Social-Emotional/Behavioral Performance
- ☐ Vocational/Transition Planning

## V. Present Levels of Performance. For each performance area checked above, detail the student's skill strengths and disability-related weaknesses or needs. List goal numbers.

| Strengths | Needs | Goal # |
|---|---|---|
| **Academic/Cognitive Performance**<br><br>Fall semester grades: Basic Phys. Sci-D  Math -F Reading Improvement-D  Intro Home EC-D  Basic Keyboard-C  Affectiv Inter-D<br><br>Spring semester classes: Reading Improvement, Math, Basic Keyboard, Reading Improvement , Basic Physical Science<br>2.5 credits 1st sem.<br><br>KTEA: 1/99 Rdg Decoding: 2.2  Rdg Comp below 1.0 Math App. 5.2   Comp  6.5  Spelling 3.5 | 1. Needs to improve reading skills<br>2. Needs to improve math skills<br>3. Needs to improve written expression<br>4. Needs to follow school rules<br>5. Improve attendance | 1<br>2<br>3<br>4<br>5 |

| Strengths | Needs | Goal # |
|---|---|---|
| **Speech-Language Communication Skills** | | ———<br>———<br>———<br>———<br>——— |
| **Independent Functioning** | | ———<br>———<br>———<br>———<br>——— |
| **Motor/Sensory Development** | | ———<br>———<br>———<br>———<br>——— |
| **Social-Emotional/Behavioral Performance** | | ———<br>———<br>———<br>———<br>——— |
| **Vocational/Transition Planning** | | ———<br>———<br>———<br>———<br>———<br>——— |

EXHIBIT F (4 of 14)

Student Name:   ANTHONY MALONE          Conference Date:   03/2/2000        **Page 4A of 13**

## VI.   Goals and Objectives or Benchmarks.          Number  11

**Implementer(s):**   English Teacher

**Goal Statement:**   ANTHONY will improve content area reading and comprehension

**Present Level of Performance for this Goal:**

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY will identify and learn new vocabulary or concepts. | 71 - 80% | 06/4/2001 | Weekly | Review of work Tests |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY will identify important information in individual content areas and their textbooks. | 71 - 80% | 06/4/2001 | Weekly | Review of work Tests |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY will apply word attack skills to content-area words. | 81 - 90% | 6/4/2001 | Weekly | Review of work Tests |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY | | | | |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

EXHIBIT F (5-of 14)

Student Name:    ANTHONY MALONE          Conference Date:    03/2/2000          **Page 4B of 13**

## VI.    Goals and Objectives or Benchmarks.          Number 2

**Implementer(s):**    Broughton

**Goal Statement:**    ANTHONY Student will apply basic math skills

Present Level of Performance for this Goal:

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY As a consumer and worker, Anthony will apply basic math skills to life situations ( check writing, buying and selling goods, making change etc. | 91 - 100% | 8/24/2001 | Quarterly | Tests, Review of work |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY will write a monthly budget for spending money. | 91 - 100% | 8/24/2001 | Quarterly | Review of work Tests |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY Will apply banking skills (withdrawing money, reconcile and bank statement | 81 - 90% | 8/24/2001 | Quarterly | Review of work |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY will fill out a deposit slip to deposit money in checking or saving. | 91 - 100% | 8/24/2001 | Quarterly | Review of work |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

EXHIBIT F (6 of 14)

## VI.    Goals and Objectives or Benchmarks.                    **Number** 3

**Implementer(s):**      English Teacher

**Goal Statement:**      ANTHONY will organize & express ideas through writing

**Present Level of Performance for this Goal:**

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY will ask for assistance with editing (spelling, grammar, sentence structure, etc) followed by rewriting before handing in finished product. | 81 - 90% | 8/24/2001 | Quarterly | Review of work |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY will express personal feelings through writing (i.e. journal writing). | 81 - 90% | 8/24/2001 | Quarterly | Review of work |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY | | | | |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY | | | | |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

EXHIBIT F (7 of 14)

Student Name:  ANTHONY MALONE          Conference Date:    03/2/2000       **Page 4D of 13**

## VI.  Goals and Objectives or Benchmarks.                     Number  4

Implementer(s):    All Teachers

Goal Statement:    ANTHONY will accept responsibility for classroom behavior

**Present Level of Performance for this Goal:**

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY will follow classroom/school rules without reminders. | 91 - 100% | 8/24/2001 | Daily | Observational Records |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY Will accept consequences for behavior in an appropriate manner. | 91 - 100% | 8/24/2001 | Daily | Observational Records |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY | | | | |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY | | | | |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

EXHIBIT F (8 q 14)

| Student Name: | ANTHONY MALONE | Conference Date: | 03/2/2000 | Page 4AE of 13 |

## VI.    Goals and Objectives or Benchmarks.                    Number  5

**Implementer(s):**    All teachers

**Goal Statement:**    ANTHONY Improve Attendance

**Present Level of Performance for this Goal:**

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY Anthony will attend school on a regular basis. | 81 - 90% | 5/29/2001 | Daily | Observational Records |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY will attend all class on time | 91 - 100% | 5/29/2001 | Daily | Observational Records |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY | | | | |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

| Benchmark or Short-Term Objective | Criterion | Target Date | Eval. Schedule | Eval. Procedure |
|---|---|---|---|---|
| ANTHONY | | | | |

| Report | Date | Status | Mastery | Comments |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

EXHIBIT F (9 of 14)

## VII. Specialized Supports: Modifications, Accommodations, Positive Behavioral Interventions, Specialized Equipment or Assistive Technology, Supplementary Aids and Services. Consider each of the prompts below, listing any necessary supports below each one.

For all students,

Does this student's behavior impede his or her learning or impede the learning of other students?   ☐ Yes ☒ No
If yes, complete a functional assessment and (a) list positive behavioral interventions below or (b) complete and attach a behavior management plan that identifies positive behavioral interventions.    BMP? __

Is assistive technology required for the student to access any portion of the curriculum?   ☐ Yes ☒ No

Are accommodations necessary for accurately and fairly testing this student?   ☐ Yes ☐ No

Simplification of directions
Check for understanding of directions
Extended time
Alternate setting with fewer distractions
Read test items to student

To what extent will this student participate in state (ISAT) and local assessments? Complete the following.
(Note that any testing modifications or accommodations listed above also apply to these exams.)

| Subject | Grade | Can student take the state test? | Subject | Grade | Can student take the state test? |
|---|---|---|---|---|---|
| Reading | ☐ 3 ☐ 5 ☐ 8 ☒10 | ☐ Yes ☒ No | Social Studies | ☐ 4 ☐ 7 ☐ 11 | ☐ Yes ☐ No |
| Writing | ☐ 3 ☐ 5 ☐ 8 ☒10 | ☐ Yes ☒ No | Science | ☐ 4 ☐ 7 ☐ 11 | ☐ Yes ☐ No |
| Mathematics | ☐ 3 ☐ 5 ☐ 8 ☒10 | ☐ Yes ☒ No | Prairie State | ☐ 12 only | ☐ Yes ☐ No |

Applicable local assessment? _____    Will this student participate? ☐ Yes ☒ No
Explain why this student will not be participating in any of the above assessments.
    Lack of exposure to the curricular content

List alternative assessment(s) that will be given instead of the above assessments.
    Curriculum-Based Measurement:
    Other: Portfolio

For students who are
    deaf or hard of hearing, is specialized language or communication support needed?   ☐ Yes ☐ No
    blind or visually impaired, is it necessary for this student to use or receive instruction in Braille?   ☐ Yes ☐ No
    limited English proficient (LEP), will this student take the IMAGE exam?   ☐ Yes ☐ No
    limited English proficient (LEP), are there language needs to be addressed?   ☐ Yes ☐ No

For all students, list additional supports necessary for this student to have an opportunity to (a) participate in the general curriculum, (b) participate in the general classroom activities, (c) make sufficient progress toward IEP goals, or (d) have the same opportunity as peers to participate in extra-curricular activities. Include, if applicable, necessary instruction support for the general education teacher(s).

    written assignments - modified and extended time, use of computer and spellcheck for written work
    test accommodations, assignment notebook , preferential seating, multi-sensory instruction,
    use manipulatives, multi-sensory instruction, cue student to stay on task, individual feedback
    use in-school suspension rather than out of school suspensions for truancy and minor infractions

EXHIBIT F (10 of 14)

Student Name:  ANTHONY MALONE    Conference Date:    03/2/2000    Page 6 of 13

## VIII.    Determination of Least Restrictive Environment (LRE).  Check the least restrictive environment in which this IEP can be implemented.

Consultation/Speech -Language
- [ ]  A.  Regular Education with only consultation services
- [ ]  B.  Speech/language services ONLY

Services 50% or More of Student's School Day
- [ ]  D.  Services given IN general education
- [ ]  F.  Services given OUTSIDE general education
- [ ]  D.  Services mostly IN general education and some OUT of general education
- [x]  F.  Services mostly OUT of general education and some IN general education
- [ ]  H.  Full-time in special classrooms

Reg Ed Classes:

Services Less than 50% of Student's School Day
- [ ]  C.  Services given IN general education only
- [ ]  E.  Services given OUTSIDE general education
- [ ]  C.  Services mostly IN general education; some OUT of general education
- [ ]  E.  Services mostly OUT of general education; some IN general education

Separate School/Alternative Location
- [ ]  J.  Special public day school
- [ ]  P.  Private day school
- [ ]  P.  Out-of-state public school
- [ ]  Q.  Private residential school, in-state facility
- [ ]  S.  Homebound instructional program
- [ ]  T.  Hospital instructional program

Other: _____

Number of instructional minutes in this student's school week:    2025

## IX.    Justification for Placement Decision

Explain the extent to which this student will not participate in the general classroom, in extra-curricular activities, or in nonacademic activities with nondisabled peers.  Consider both the nature and severity of the child's disability and why the use of supplementary aides and services would be insufficient for such participation to occur.

Significant deficits cause the need for a highly modified or completely different curriculum.  The student will make better gains if that curriculum is delivered in a separate setting.

Were the potential disadvantages (for this student and others) of the selected LRE option considered?    [x] Yes  [ ] No

List at least two other educational settings that were considered and rejected.  Explain why each was rejected.

| LRE Option Considered by IEP Team | Reasons for Rejection |
|---|---|
| Resource services - special setting | Insufficient intensity of services |
| Self-contained special education | Less desirable environment for this student |
|  |  |
|  |  |

## X.    Transportation.  Check method of transportation used by this student.

- [ ]  Bus with nondisabled peers
- [ ]  Bus with only special students
- [ ]  Parent will transport
- [ ]  Other: _____
- [ ]  Student will walk

Approximate travel time:

Specialized Transportation Needs:
- [ ]  Wheelchair lift or adult carry on
- [ ]  Car seat/ Seat belt
- [ ]  Adult riding bus
- [ ]  Adult meeting bus
- [ ]  Harness
- [ ]  Other: _____

## XI.    Extended School Year (ESY)

Does this student require ESY services because regression/recoupment data suggest they are needed to maintain skills over the break?    [ ] Yes [x] No    For any other reason? _____

If yes, please describe: _____

## XII.    Transition Services

Y  Student will be age 14 or older during the implementation of this IEP.  A transition plan is attached.

Student will be age 14, but not 14.5, during the implementation of this IEP.  (Explain how his/her course of study relates to his/her goals):

EXHIBIT F (M 14)

## Special Considerations. Check all applicable statements

### ciplinary Considerations:
☐ A copy of the Disciplinary Decisions Guide was completed on:
__ The Disciplinary Decisions Guide is attached to this IEP.

### e of Majority:
☒ Student (age 17) and parents were advised that educational rights transfer to the student at age 18.
☐ Parents given a copy of:

### aduation:
☐ Graduation is expected (list date):   06/04/2003    Is termination/exit form attached? __
☐ Modified graduation criteria are needed. List or describe:
☐ The student is appropriate and interested in Home Based Services Program.   ☐ Yes ☐ No If yes, see transition plan.
☐ Other:

### eevaluation/Additional Evaluations:
☐ A triennial reevaluation is due within the duration of this IEP.
☐ For any other reason, a reevaluation is needed for this student.
__ An evaluation decisions guide was completed by the team and attached to the IEP.

### ther Considerations:
Regular Education Classes:    .; Safety/PE 10;   .

### ocedural Safeguards:
☐ If applicable, the parent agreed to hold this conference within 10 days of notification.
☐ "Explanation of Procedural Safeguards" was provided to parent/guardian prior to the IEP meeting.
☐ Copy of IEP given to parent/guardian.
☐ Copy of                   provided to parent/guardian.
☐ If applicable, a copy of the "Notification of Conference Recommendations" was given to the parents.
☐ If applicable, the parent was asked to sign the consent for initial special education placement.
☐ If applicable, the parent/guardian waived the 10 day waiting period prior to implementing this IEP.
☐ Parent acknowledges receipt of the Behavioral Interventions Guidelines Policies/Procedures

_____
Signature of Parent/Guardian

### V.   Participants (Names and Titles, Please sign and date.)

_[handwritten signatures and dates]_

Pg 7 decision guide y n

## INDIVIDUAL TRANSITION PLAN

**Student's Name** ANTHONY MALONE  **Dates Completed** 3/02/00 | | | | |

**Case Manager**  Shinault  **District**  Bloomington Public Schools

**Anticipated Year of Exit**  05/29/2003  **Disability** SLD

**Information obtained by:** Interview: ☒ Student  ☐ Parent  Survey: ☐ Student  ☐ Parent
Interest Inventory:  ☐ Formal Assessment ☐ Other: _____

| *Transition Goals* | 20 00 / 20 01 | 20 / 20 | 20 / 20 | 20 / 20 | 20 / 20 | POST |
|---|---|---|---|---|---|---|
| **EMPLOYMENT GOALS:** The student has expressed an interest or preference for the following goal area: | | | | | | |
| Employment following Post Secondary Education | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Competitive Employment Following Graduation | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Supported Employment Following Graduation | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Military Following Graduation | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Other _____ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **POST-SECONDARY GOALS:** The student has expressed an interest in gaining skills needed for: | | | | | | |
| Four-Year University/College | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Community College | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Technical/Trade School | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Apprenticeship/On-the-Job Training | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Adult Education Classes (GED) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Continuing Education Classes (Personal Enrichment) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Community Rehabilitation Training Program | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Developmental Training Program | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Other _____ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **COMMUNITY LIVING ALTERNATIVE GOALS:** Identify the appropriate options. | | | | | | |
| Establish Own Residence | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Live with Parents or Relatives | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Community Integrated Living Arrangement | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Group Home | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Nursing Facility | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Other (Public Aid, BHA Section 8) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

EXHIBIT (13 of 14)

## INDIVIDUAL TRANSITION PLAN

### Post Secondary Vision

| | | |
|---|---|---|
| 20 00 | 20 01 | live on own, graduate, undecided about job |
| 20 | 20 | |
| 20 | 20 | |
| 20 | 20 | |

### Community Agencies

| | | |
|---|---|---|
| Community College (CC) | Dept. of Human Services (DHS) | Dept. of Public Aid (DPA) |
| University (U) | Dept. of Mental Health (DMH) | Dept. of Dev. Disab. (DDD) |
| Technical/Trade School (TS) | Dept. of Children and Family Services (DCFS) | Office of Rehab. Ser. (ORS) |

### School Services

| | | |
|---|---|---|
| Aera Vocational Center (AVC) | Other Vocational (OC) | Work Program (WP) |
| Industrial Technology (IT) | Classroom Instruction (CI) | |
| Vocational Counseling (VC) | Community Based Instruction (CBI) | |

| *Transition Supports/Services* | | 20 00 / 20 01 | 20 / 20 | 20 / 20 | 20 / 20 | 20 / 20 | Post |
|---|---|---|---|---|---|---|---|
| **SERVICES/SUPPORTS PROVIDED THE STUDENT IN SCHOOL:** | | 1) Based upon the identified needs of the student in relation to his/her expressed goals, the student needs the following supports and services while in school. 2) Identify who will be responsible. | | | | | |
| Instruction | 1 | ☒ · CI | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · |
| | 2 | | | | | | |
| Related Services | 1 | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · |
| | 2 | | | | | | |
| Community Experience | 1 | ☐ · | ☐ · | ☐ · | ☐ · | ☐ ·· | ☐ · |
| | 2 | | | | | | |
| Acquisition of Daily Living Skill | 1 | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · |
| | 2 | | | | | | |
| Functional Vocational Evaluation | 1 | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · |
| | 2 | | | | | | |
| Other | 1 | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · |
| | 2 | | | | | | |
| **LINKAGES TO AFTER GRADUATION SUPPORTS/SERVICES** | | 1) To assure that the student is offered the opportunity to meet his/her transition goal, the student will need to be linked ot the following services. 2) Identify who will be responsible. | | | | | |
| Post-Secondary Education Supports | 1 | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · |
| | 2 | | | | | | |
| Vocational Training | 1 | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · |
| | 2 | | | | | | |
| Integrated Employment Supports | 1 | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · |
| | 2 | | | | | | |
| Adult Services | 1 | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · |
| | 2 | | | | | | |
| Independent Living Supports | 1 | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · |
| | 2 | | | | | | |
| Community Participation Supports | 1 | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · |
| | 2 | | | | | | |
| Transportation Supports | 1 | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · |
| | 2 | | | | | | |
| Case Management (PASS) | 1 | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · |
| | 2 | | | | | | |
| Other | 1 | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · | ☐ · |
| | 2 | | | | | | |

**Home - Based Support Services**  If applicable, describe plans for assisting the family to apply and plan for using these services.

EXHIBIT F (14 of 14)

Anthony & Barbara Malone
408 E. Douglas St.
Bloomington Ill 61701

Bloomington District 87
     E. Monroe
Bloomington Ill 61701

CC:  Special Education School Board
      Division of Program Compliance ISBE
      Bloomington High School

RE:  Official Notice and Letter of Complaint Prior to Legal Action
      (Concerning Student Anthony D. Malone) c/o Letter Dated 3-3-00

Dear Mr. Robert C. Neilson
      Superintendent of schools

     I am writing now to confirm my decision on the matters at hand. Concerning my
son Anthony D. Malone. I have decided to ask that Due Process Proceeding start as soon
as possible, before this school year ends.

     First reasons: I feel an investigation should start is because of the lack of concern,
I see here in the illegal matters concerning my son, by this school board. To think that
something is in this magnitude to be taken so lightly. This Harsh, Cold, Unwarranted
Illegal treatment that my son has been subject to, is not serious!

     Well, this is serious and I am serious. No one has the right to violate another
person's rights, NO ONE! This includes Cindy Helmers and Cindy Lumberg also Mr.
Reiley. The principle of this school, who has allowed these two women to violate my
sons rights. I am tried of my voice not being heard. I believe that our disabled students
are protected under a special law, and special rules apply to these students.

     Second reason: I went to Mr. Robert C. Neilson back in October or November of
1999. With concerns about the harassment of my sons Debracey and Anthony Malone
was under by Cindy Helmers. The assumptions, and made up stories, unreal, and
unfounded facts that were told on my sons. I informed Mr. Neilson at that time, about a
meeting I had with Mr. Reiley concerning Cindy Helmers. I told both Mr. Neilson and
Mr. Reiley, that I did not want Cindy Helmers as my son's assistant principal.

     Mr. Neilson and Mr. Reiley kept Cindy Helmers as my sons assistant principal
and the abuse continued and got worse, it went from Harassment to Excessive
Harassment to her Abusing her Authority.

EXHIBIT G  (1-9)

My son Rights have been violated here in more ways than one, and it does not seem to bother anyone on this school board. My son Anthony D. Malone has Legal Rights. He has the Right to come to school without the fear of being singled out and picked on, by piers or school officials.

He has the right to an equal and fair education as the next student. He has the right to attend his classes just like other students. He has the right to have the opportunity to make up his class work that he is behind in for day missed for whatever reason.

He has the right not to be lied to or on by school officials. For instants when Cindy Lumberg called Anthony out of his class to tell him. She was told by Cindy Helmers, that ALL of his teachers informed her that Anthony D. Malone had a very bad body odor and needed to bath, after talking with ALL of Anthony 's teachers. now knowing that this was just a lie made up by Cindy Lumberg and Cindy Helmers, because ALL of Anthony teachers informed me that they did not say any such thing in this nature to Cindy Lumberg or Cindy Helmers, nor was any statement written by any teacher.telling these two women to tell my son this lie and hurt his feeling the way they did.

He has the Right not to be mistreated by his teachers or school officials in this case. Like being taken out of his class and put in a Detention room, then instructed that he could not leave out of this Detention during the class hour he was dropped form or he would be suspended from school.

Anthony knows that a Detention room is where you go if you have done something wrong. He told me he felt like a criminal in jail, and he could not understand why he could not go to his class. Or why Ms Staffens did not want him in her class. They did not even have the Descends to tell him why he was not in her class at this time.

My son had done nothing wrong to warrant this treatment or action imposed on him by these Officials. He was dropped from his 4th hour class from Feb. 17th to March 9th-00. That is 15 school days missed out of this class. 15 days he felt like a criminal like he had done something wrong. 15 days that Cindy Lumberg or Cindy Helmers knew they had no right to remove my son out of his class, without.

a) Without a staffing set by the Special Education Board.
b) Without a written Notice at least 10 days prior to the proposed action that must include a description of the action and an explanation of Why the school or district [Helmers] & [Lumdberg] proposes to take this action.
c) A description of the basis for the proposed action.
d) What other provisions where going to be in place or supplied for my son so he would not lose credits from being removed, dropped from his class.
e) My signature or my Husbands signature agreeing to these changes taken places concerning my son.
f) My son's caseworker had no knowledge of this action.

2-9

g) The Special Education Board had no Knowledge of this action that was taken by
   Cindy Lumdberg or Cindy Helmers.                                    *NOT*
h) My sons other teachers [special ed. Teachers] or other teachers where informed that
   this action was taken.
i) The principal of this school Mr. Reiley have no knowledge that my son had been
   removed dropped from his 4th hour class.
j) Excessive Disciplinary Harassment imposed on my son by Cindy Helmers for
   appropriate educational setting or suspension for not more than 10 school days.
   Starting the 11th day my son's education should have continued, and it wasn't.
k) The lack of communication between the Bloomington High
   School officials, teachers and Special Education Teacher.

There were no provisions made for my son, When he was taken out of his 4th hour
class. A class he got a passing grade in 2nd. Quarter. To be told by his counselor Cindy
Lumberg that he had failed the 2nd quarter and there was no way he [Anthony] could pass
the rest of the year, so this was one of there reasons for taking Anthony out of his class.
They [Helmers] & [Lumberg] made sure his education did not continue by putting him in
a Detention room with a hall monitor, not a teacher, to assist him.

Cindy Helmers broke rules that are in place by State and Federal Laws that
protect our students. When it came to Anthony Malone she treated him like an animal,
she wanted to lock him up and throw away the key. She did things to Anthony Malone
that she just knew no one would find out about.

For Instant; I did not fine out, and no one knew [Anthonys teachers, his
caseworker did not know, nor did the Special Education Board know] about the removal
of my son from his 4th hour class, which he had with Ms Staffens. This action was not
legally done. After they [Helmers & Lumberg] they still did not let anyone know or bring
to anyone's attention their actions.

We had a staffing on March 2nd, with all of Anthonys teachers. Cindy Helmers
was there, Ms Lumberg was there, these women did not even bring it up at this staffing
what they had done. Yet, no one wants to think this is serious!

Hellmers and Lumberg did not want to bring it up, because they did not want any
one to know what they had done. Also, because they both admitted that they knew they
could not drop Anthony out of his class without a staffing, in the staffing we had on
March 9th. So, Why did they still do this unkind, inhuman thing to my son? Was it
because they did not like me, they did not like Anthony, was it out of prejudice, and if
was, any of these reasons. It does not give them the right to mistreat or abuse and hurt my
son.

It took a while but little by little the truth came out. Cindy Helmets kept up her
malicious secret attacks on my son. Slowly destroying him little by little inside. To the
point my son became deeply hurt, withdrawn, confused that he wanted to die. He showed

3-9

this feeling at school during one of his classes more of, this, will be brought out later as this case comes in place.

Mr. and Mrs. Anthony Malone

4-9

Anthony & Barbara Malone
408 E. Douglas st.
Bloomington, IL 61701


Bloomington High School
1202 East Locust st.
Bloomington, IL 61701-3394

CC: Special Education School Board
    District 87 School Board
    Robert C. Neilson, Superintendent of Schools
    Mr. Relley, School Principal
    Mrs. Cindy Helmers, Asst. Principal
    Mrs. Becky Francoise, Director of Special Ed.
    Mrs. Lombard, Student Counselor

Re:  Official Notice and Letter of Complaint prior to Legal Action.      *Anthony DeLance Malone*
       (Concerning Student, DeLance Malone)

        This letter and statement is in regards to my son Anthony D. Malone. I am filing this
formal complaint on the following actions that has been taken on Anthony D. Malone
1) **Being dropped from his 4th hour class. I** was never informed to this action being taken
before it was done or the reasons why! I have not signed anything to given anyone at this school
permission to take such action against my son.  I demand that he be put back in his 4th hour class,
and be given any work that he has missed so that he have the opportunity to make up this work!

2) **Being dropped out of 7th hour PE.** A class of all classes that be enjoys being in and doing
well in, just so you can assign someone to help him with reading, I'm not going to let you take my
sons joy like that, just to justify your actions!

3) **Excessive Harassment**. This letter will serve as a formal written complaint of Ms. Cindy
Helmers for excessive harassment of my son.  She has gone beyond a normal or acceptable limit in
abusing her authority.  To the point of provoking me to anger. My son to resentment, confusion,
and  annoying him with petty and persistent requests, like calling him to her office during classes
for questioning, such as the nature of the questions should be directed to me (his mother) or his
father only.

        Anthony Malone has a learning disability.  He has been having this disability since birth.
He not only have this problem, like all learning disability children, he has a short attention span,
and  he is very sensitive. His feelings get hurt and he gets confused very easily.  This type of
treatment that has been put on him by Cindy Helmers is uncalled for and abusive and harmful to
my sons education.  Mrs. Helmers has showed no regard or concern about my learning disabled
sons' education at all!  Instead she has used every opportunity that she can to find  more ways to
keep my son out of school and by kicking him out of school every chance she can gets, instead of

(5-9)

tying to find a better solution to the problems he is having. There are other things that could have been done besides kicking my learning disabled son out of school.

     The last time my son was kicked out for three days was because after his PE. class which is the last hour class, a teacher said Anthony had a plastic piece in his hand, something that look like a tip of a cigar and they kicked my learning disabled son out of school for three days for that!! I call this excessive abuse. No way should he had been kicked out of school for this, especially on a friday. I was told he could not come to school until that following Thursday. During the week he was kicked out. We had a family emergency and had to go out of town to Memphis,TN. I was not going to leave my learning disabled child home to care for himself for a week, so for thoughts two remaining days of that suspension week, Anthony was out of town with me and his father. To return to school the following week and Cindy Helmers telling him because I took him out of town and he was out for a whole week that it caused him to be dropped from his 4th hour class, I want to know why he was not given the opportunity to make up his work for this class? A class at the time that was teaching on child care and note taken. They were not doing anything in this class that the work could not have been made up. Cindy Helmers at this time had given my son a letter to give to me, which at the time he could not because I was still out of town, in which this letter had asked that I sign giving permission for my son to be dropped out of his 4th hour class. When she called him out of class again and she asked him about the letter he told he still had it and I was out of town, he ask her did he still need to give the letter to me. **Cindy Helmers took the letter from Anthony balled it up and threw it in the garbage and told him NO I did not have to sign it then told him he was dropped from the class.** I want to know by WHO's authority gives her, Cindy Helmers Asst. Principal, the right to do this? I call this abusing her authority. I want to see the written request that went to Cindy Helmers from my sons 4th hour teacher, who name is Ms. Steffen requesting or telling her, Cindy Helmers, that my son be dropped from her class. I would also like to know why Ms. Steffen did not let me know or inform me of what her plans were, or what the situation was that warrant this action, and did she inform the Special Education Board about her decision at all, or why she Ms. Steffen did not give Anthony a chance to turn in his late work.

     **Anthony has informed me that instead of being in his 4th hour class the week after his suspension he was placed in a room or office instead of his class. That Cindy Helmers told him he was dropped out of the class even though she has given him this letter for me to sign, she had already taken him out of his class!!** What's up with this!! I have been coming to this school and I have asked for meeting after meeting to try to get things straighten out to benefit my sons education not make it where he is loosing credits. This is what Cindy Helmers is insisting on making sure happens. Anthony still has a chance to get a credit in this class there is still nine weeks of school left. I want him put back in that class and if he needs help in there then he sure better get the help he needs. Because by right he should not have been put in that class anyway because the reading level is to high for him. So, after being put in there he should have, had an assistant helping him anyway.

     I, believe things have been done here that are against the law, and I am seeking an attorney at this time. I have been in meeting with Mr. Relley off and on since November of 1999. I have complained to him about Cindy Helmers and have asked that she not even be my sons assistant principal because of her persistent irritating excessive abuse. She has even gone as far as to have her own attendance policy for my sons that I their own mother can only call in for him two times out of a semester for approval after that he will be marked truant, no matter if I

(6-9)

call in with a reason why he is not in school or not this was decided in January to do this and why! what makes her think that she can take my parental right away of calling in for my son if he has to be out of school. I found out she was not approving my calls in December 1999. I called him out sick and she told the attendant office not to approve my call and to mark him truant. After this **She** assigned him a Saturday school.

    I know that some laws have been violated here. Now its time for this mess to stop or I will take legal action and sue to the fullest extent of the law. I have to include Mr. Relley in on this complaint because he have been aware of all of **This** and he has done nothing to correct or stop what has been going on here concerning my learning disabled son Anthony D. Malone.

Sincerely,

*Barbara Malone*

Mrs. Barbara Malone,

(7-9)

Anthony & Barbara Malone                                         3-03-00
408 E. Douglas St.
Bloomington, IL 61701


Bloomington Public Schools
School District 87
300 East Monroe St.
Bloomington, IL 61701


TO: Robert S. Nielsen, Superintendent of Schools

CC: Rebecca Francois, Director Of Special Education


        My Name is  Barbara Malone, the mother of Anthony D. Malone, student at B.H.S in the
Special Education Program.  I wanted to come and talk with you personally, but I have a doctors
appointment today, March 7th, in Chicago, IL. I do want to meet with you as soon as I return,
concerning my son Anthony.
        I have been trying to work things out at the high school for a long time, until now.  I am at
the point that I have to go over their heads, and I am seeking the counsel of an attorney.  I know
some laws have been violated and broken concerning my son Anthony.  Certain rights have been
denied and excessive action taken  against him. Please read the complaint letter attached I am
filing at the high school and  with the School Board and your office Special Education.
        This complaint letter only states half of all the things that have been going on at this school
concerning Anthony.
        He was dropped out of his 4th hour class and I want him put back in there with the
opportunity to make up his work.  He should not have never been taken out of this class.  I want
to know if this was his 4th hour teachers, Ms. Steffen, decision- or was it subjected to her by
Cindy Helmers, to drop Anthony from her class.
        If Ms. Steffen had decided to do this on her own, why didn't she speak with me about it
first, so I could have the opportunity to get my son back on track, or why didn't she seek the help
of the Special Education Board Staff that is working with my son, like Nancy Banghton, to get
him the extra help he needed to pass her class.
        I have asked for another staffing meeting, but I was told by Ms. Lambart that it will take
ten days to have another one.  I want you and Mr. Nielsen to attend this staffing.  I don't want my
son to be out of his 4th hour class for two more weeks waiting for this staff meeting.  So, please
**have him put back in Ms. Steffen class while we work on these issues.**
        I am looking forward in speaking with you, hopefully on March 8th or 9th, your earliest
convenience.  My phone number is 827-2205  home or my cell phone number is 242-1971 or we
can set an appointment so we can talk before this staffing.
        The Bloomington High School Principal, Assistant Principal, Teachers, Special Education
Board members in staffing have not met my child's educational needs.  They have neglected to
place him in proper class setting.  They have neglected to provide the proper tools like assistance

( 8-9 )

in classes with help to enable him to pass or just to get by without stress of failure. Yes, Anthony has to accept his part in some of this and he has . From being repeatedly kicked out of school to the point of all of these days missed has damaged his ability to pass his classes. I believe his failure fall on the Special Education Program, Cindy Helmers, and Mr. Relley for allowing this to happen. It is time for this mess to be corrected and my sons education and his success in school to be at the top of everyone's list.

Thank you for your time and consideration.

Sincerely yours,

*Barbara Malone*

Barbara Malone

(9-9)

Anthony & Barbara Malone     June 2,2000
408 E. Douglas St.
Bloomington, Ill. 61701

Bloomington High School
1202 East Locust St.
Bloomington Ill. 61701

CC:  Special Education Board
     Mrs. Becky Francoise
     Director of Special Education
     Robert C. Neilson
     Superintendent of Schools
     Division of Program Complaints ISBE
     Barry Reily Principal BHS

RE



C/o Anthony D. Malone Student

Dear Mr. B. Reiley

    I am writing this letter about a meeting my husband and I had with
on June-1-00, concerning my sons test grades for her class, and class assignments.

    When we proceeded to talk with her, she interrupted our conversation and told us
she had something to say in more than less, than an angry tone. We told her okay and
stood there so she could express her feelings. She reminded us about a staffing, on March
8th. Anthony was put back in her class, which he was wrongfully dropped from on this
day, with the opportunity to make up his work. It was suggested that he try to have all of
his work that was missed made up during his spring break, Ms. Staffens thought he was
suppose to have it all done.

    I never agreed that he would, or could do that! I said depending on how much
work he would have to do! If we were talking about a little work of course that could
have been done. But, after looking through all of the chapters that Ms Staffens assigned
Anthony to be done, knowing the extent of his reading disability it was an " impossible
task!" These were long chapters, she assigned 10 - 14, and gave him 5 magazine to fine a
story to read and give a report on, out of each book. "Not even a student that did not have
a reading disability could have been able to do all of that work in one week." (UNREAL)

    Than after thinking about it, I was not going to do that to my son. He was already
wrongfully taken out of his class. I was not going to make him spend his spring break,
working on class work that he should not have missed in the first place. That would have
been doing wrong to him again. He did work on his magazine reports and was able to

EXHIBIT (H 1 44)

turn a couple of those in after spring break. There was no way; he could have done all of that she assigned.

See here is another thing. I was told by another teacher that heard about some of the things that was going on here, and she "was not" one of Anthony's teachers. She told my husband and I that Ms Staffens could have waved all of that, if she had chosen to do so, that she did not have to assign, Anthony all of that work! What's up with this?

Ms Staffens let my husband and Jasmine and I know she was angry that he did not have it done during that time frame. Than she goes on to say that he failed his third quarter finial test, as she dropped them on the table. I told her Anthony was not ready to take that finials examine. She said: **Slapping her hands together as she spoke,** at my husband and I, like we were some preschooler being scolded for something we had done wrong, telling us that she did not care. She said she thinks, she gave Anthony plenty of time to make up his work, still **"Slapping her hands together,** she states that she told Ms Shaunlt, that she wanted Anthony's third quarter test done by March 23rd so she gave him the test. I don't believe Mrs. Staffens is in position to demand anything like that, after what she let happen to my son.

I told her now I have something to say. First of all Anthony should not have never been taken out of her class to have to make up any work or to make up test, he should have been working with all of the other students in her class. Than **he was not ready** to take the final examine and if he indeed did fail the test I wanted him **to retake the test when he is ready.**

I explained to her that her class was not the only class that Anthony was making up work in. He had all of his other classes that he had missed work in too, because of all the in and out of school suspension. So, Anthony had to divide his time to all of his classes so he could get catch up in order to receive all his credits for his classes. Anthony still had to do all of his regular assignments that was given to him by all of his teacher also on top of all the make up work.

I told her I wanted to see Anthony's test. She had dropped his test papers down on the desk with some sewing projects I guess Anthony was suppose to have done and repeated that she failed him. I told her she dropped them down like she was proud he failed them! I said it is ashamed that this seems to be the attitude of some teachers here that they don't care if their students pass or not. [I was thinking than of Ms Engals that has made sure my son has failed every test she ever gave him. Than she [Ms Engals] would try to make statements like my son never tried to do anything in her class to pass her class. Which shows what kind of teacher she is. She has been a teacher that made sure he was not successful in her class by not giving him, the required, tools, and assistant that is even wrote in his IEP. My son may be slow in learning, but he does have feeling and he knows if someone likes him or not, and he knows if his trying to do work for someone is going to pay off or not. He told me no matter what he has done for Ms Engals it was never good enough for her to give him a grade so his attitude with her class was "what's the use in doing anything when all she was going to do was fail him anyway]. Ms.

$EVHIBIT \# (244)$

Staffens goes on to say she think she is a nice person and that she had nothing else to say to us, and that she was failing Anthony for not passing his finial test in her class.

I am not a fool, and I am not going to let no one play me like one. My son better get the grade he deserves for her class [Ms. Staffens] he did not do failing work in her class. He turned in all of the assignments that she asked him to turn in for third quarter. She had him make a toy. He turned in a paper that went with that toy. He turned in 5 magazine reports that she gave him to do. He turned in chapter 10-13 childcare questions at the end of each chapter that she had asked him to do. I made sure all of this work was done, I have copies of these reports and other papers that he done. All of this work better not be "ignored!" My son worked just as hard for Ms.Staffens I would say, he worked harder for Ms. Staffens to get his work catch up so he could pass her class. I want all of my sons written reports that he turned in to her showing the grade she gave him. I want a copy of my son's test she gave him. Ms. Staffens told me she gave Anthony a low c or d on test 10 &11 he only had 1 or 2-test left for the third quarter to take. So, don't tell me that taking these two last tests are going to fail him for the whole quarter!! Than to even suggest that he failed the 4th quarter too.

I believe that it was suggested to her that she Ms.Staffens fail Anthony just to justify the wrong doings of Ms Cindy Helmers and Ms.Cindy Lumberg by them taking Anthony out of Ms.Staffens class. I guess I sent my last letter in too soon. To think that a teacher or school officials will stoop so low as to try something like this. My son did not fail Ms Staffens class and she knows it, I want all of my sons graded papers and if he have to take his test over than he have to take them all over.

Let me ask you all a question. What kind of parents would my husband and I be if we did not stand up for our son **RIGHTS,** and let someone strip him of his **DIGNITY**? " **What kind of parents would you be if you let someone do your child like that".** So don't be mad at me, and don't take things out on my son because this situation has gone to this level, when there was plenty of opportunity for you to take control of this situation.

You are going through Due Process Proceedings now. I really don't want to make things any worst than what they are, but if you think you are going to fail my son for this class and he does not deserve to be failed. I guess I will have to add another complaint. **Anthony jumped through every loop Ms.Staffens put out there for him to jump through and I want him to get every grade he is suppose to get and get the proper credit for it**

Like I said I don't want to make things any worst, I was not adding Ms. Staffens to my complaints I have on Cindy Helmers and Cindy Lumberg, even though I know she had some role in what happen to Anthony. My first and most complaint is on Cindy Helmers and the things she has done to my son all year and Cindy Lumberg for what she did. **Now my son is not going to pay for this mess created by these women by losing his credit that he has worked so hard for.**

EXHIBIT H (3 q 4)

It broke my heart when my son Debracey Malone, (Anthony's brother) told me he no longer wanted to attend the Bloomington High School, because of the things Helmers had done to him. He lost his will and they killed his spirit. He told me to send him anywhere but there. **I refuse to let them take away Anthony's spirit and kill his will.** Anthony has three more years at this school and **they will not break his heart and treat him like this again. I am not taking him out of this of this school unless I move away from Bloomington. As long as I have breath and blood in my body my some <u>WILL</u> graduate from this school.**

My phone number is 242-1971, 827-2205 or you can always leave a message for me at 8284602 I can be reached at one of these numbers. I also want copies of all of Anthony's grades for worked assignments and test he done in Ms Engals class his first hour teacher, for the school year. I would like this information as soon as possible.

I am thankful for all of Anthony's other teachers that have worked with him through this dilemma, and given him the opportunity to get his class work done and his credit so he can pass his classes. Also for their encouragement to him, and letting him know that he was a hard worker, and a good student. Also for letting him know that they were glad to have him in there class. Some teachers personally told him that they did not say the horrible things that were said about him.

Sincerely yours

Anthony and Barbara Malone

EXHIBIT H (log 4)

To: District 87 Board of Education, Bloomington Public Schools

From: Mr. Anthony Malone and Mrs. Barbara Malone

Cc: Dr. Robert Nielsen, Superintendent of Schools; Mrs. Sally Tucker, Superintendent of Curriculum; Mrs. Becky Francois, Director of Special Education, Dr. Joann Walters, Director of Title I., Gifted Services and Reading; Megan Paisley-Miller, Tracy Braun, Funk and Paisley, LTD

Date: March 13, 2002

I am writing in response to Mrs. Francois's letter dated March 7, 2002. I appreciate her attempts at providing a factual account of communication between the various parties, however, there are serious discrepancies in her account of our phone conversation on February 26, 2002, regarding Dr. Joanne Walters' qualifications to test my son. I would like to correct a statement made in her letter, "At no time did I state to you that Dr. Walters was not qualified to administer the test." Mrs. Francois clearly stated that Dr. Walters was not qualified to administer the test to my son because she was the Director of Title I and Gifted Services.

From her statement, I was made to believe that the Title I and Gifted Services had nothing to do with reading. I was aware however that Mrs. Francois introduced Dr. Walters as the Reading Specialist at the October, 2000 staffing. I asked her if she was qualified then to give the first test, why was she not qualified now. I realized then that the games were beginning and that's why I stated in my letter to you, that there will be no games played this time.

This is a perfect example of why my husband and I refused to meet with Mrs. Francois and Attorney Paisley without our attorney or a judge present. To me, she is indicating that I am a liar. It would not profit me or my son in any way to lie on Mrs. Francois or anyone else. I have in my possession the Parent/Guardian Consent for Evaluation/Reevaluation Form dated October 23, 2000, at which time Dr. Walters was

EXHIBIT I (1-5)

introduced by Mrs. Francois as the **Reading Specialist**.

Mrs. Francois has found herself in an uncomfortable position.  I can even understand why she feels like she needs to lie to save face.  However, I will not allow her to lie on me or my husband.  She owes her co-worker, Dr. Walters an apology for discrediting her and she owes my husband and me an apology for the stress that she caused when stating that Dr. Walters was unqualified.

Now that Dr. Walters is qualified and we are happy that she will administer the test, I have one remaining question:  What was District 87's real reason for wanting to use "someone other than Dr. Walters to administer" the test?

# BLOOMINGTON PUBLIC SCHOOLS
## SCHOOL DISTRICT 87

**300 East Monroe Street**
**Bloomington, IL 61701**

**Dr. Robert S. Nielsen**
**Superintendent of Schools**

**Telephone  (309) 827-6031**
**FAX       (309) 827-5717**

March 7, 2002

**Mr. Richard Laleman**
**Assistant Superintendent of Human Resources**

**Mr. Robert Meeker**
**Assistant Superintendent of Operations**

**Mrs. Sally Tucker**
**Assistant Superintendent of Curriculum**
**and Instruction**

Mr. and Mrs. Anthony Malone
408 East Douglas Street
Bloomington, IL  61701

Dear Mr. and Mrs. Malone:

I am writing in response to your memorandum dated March 1, 2002 addressed to the Bloomington District 87 Board of Education.

Anthony's annual review staffing was scheduled for February 18th at 10:10 a.m. Mrs. Whalen advised me that early in the morning of the 18th she received a call from you requesting that the review be cancelled and that additional assessments be conducted prior to the meeting being rescheduled. According to Mrs. Whalen, you indicated that you would contact Ms. Trissel, HILIA Facilitator regarding retesting at ISU and that you were requesting that Dr. Walters retest Anthony in reading. You further requested that representatives from Lincoln College and Heartland Community College attend the rescheduled review to assist with transition planning. In conversation with Ms. Trissel, she stated that she had previously contacted you to arrange for an audiological evaluation at ISU. It is my understanding that this has been scheduled for March 18th. She also stated that the April 19, 2001 report from the Eckelmann-Taylor Speech and Hearing Clinic recommended that Anthony return to the clinic if he noticed a change in his current hearing status. If the audiological evaluation completed on the 18th indicates a need for additional assessment, Ms. Trissel will assist you in scheduling the assessment. On February 26th, I contacted you by phone to discuss the requested reading evaluation. I advised you that the District would complete the requested reading evaluation but that someone other than Dr. Walters would administer it. I advised that I was not going to request Dr. Walters administer the test as she was the Director of Title and Gifted Services and did not typically conduct individual reading assessments.   At no time did I indicate to you that Dr. Walters was not qualified to administer the test.  Following our conversation, I spoke with Dr. Walters regarding the qualifications required to administer the assessment and she stated that she was more than willing to test Anthony. Dr. Walters is certified as a reading specialist and has been conducting reading assessments since 1987.  On February 28th, March 1st and March 5th I called and left messages requesting that you contact me.  The purpose of my calls was to clarify that Dr. Walters was the Administrative Director of Title, Gifted and Reading and that she would be testing Anthony in April. Finally, regarding your requests for the annual review staffing, Mrs. Whalen will invite the representatives from Lincoln and Heartland College to the meeting when it is rescheduled.

In our telephone conversation, I asked if you would be willing to meet with Ms. Paisley, School District Attorney, and myself prior to the pre-hearing scheduled for March 18th. I indicated that the District had not received a bill from Dr. Stoner but would be willing to pay upon receipt. I also inquired about your mileage and the number of times Anthony had seen Dr. Stoner. I understood you to say that you were waiting for information from Dr. Stoner and that he was getting that information together for you.  You certainly have the right to bring your attorney and/or tape record any meeting that you have with Ms. Paisley and myself.

Please contact me if you have any questions or would like to schedule a meeting.

Sincerely,

Rebecca Francois
Director of Special Education

Cc:     Dr. Robert Nielsen - Superintendent of Schools
        Megan Paisley - Miller, Tracy Braun, Funk and Paisley, LTD.

Dr. Walters has worked with Anthony's reading teacher and is responsible for assisting in setting up his reading program. The books he is currently using were recommended by her. She is more qualified to assess his reading skills than anyone else.

## Due Process Update

On or around February 26th the Mrs. Francois called my house. Mrs. Francois requested that my husband and I meet with her and the district's attorney Mrs. Paisley. We do not feel comfortable meeting with the director and the district's attorney without having our own present. We feel that our trust has been betrayed by the district and we refuse to attend any meeting without having everything recorded and again, our attorney or a judge present. This will prevent lies and slanderous statements from being made against my family and anyone else in support of our cause.

According to Attorney Paisley and Judge Judy Dempsey, our son lost a whole year of his education because of gross violations of his rights. These statements are recorded in the hearing transcript. Key administrators at Bloomington high school and the central office were rewarded rather than reprimanded for their actions. The district has refused to paid the certified psychologist his professional fees. Medical bills and other miscellaneous expenses have yet to be discussed with the district. Actions of retaliation against district employees who spoke out against the violations and advocated for my son have also taken place.

We are addressing our concerns to you, District 87 school board. If you were unaware of the reasons for the Due Process hearing, the gross negligence and mistreatment, singling out and profiling of my son by key administrators, you know as of now. My son was tormented to the point of suicide. You are duly elected representatives of the community and each and every child in the school district. You are responsible for the actions of all district personnel and ultimately responsible for what happens to our children. Again, my child's rights have been grossly violated. key administrators were informed and asked to stop the abuse and harassment. What they did do was to lie in their office about having a child who attended Bloomington high school and how a certain administrator harassed their kid too and kicked him out of school. We were appalled that an administrator in a top leadership position would stoop so low to protect another employee and lie rather help my child. After that meeting, my son was severely abused.....

If you are interested in documentation of the above charges and comments, please contact me at:
408 East Douglas
Bloomington, Illinois 61701

Sincerely,

Mr. Anthony Malone and Mrs. Barbara Malone

Barbara Malone
Anthony Malone

To: **Bloomington District 87 Board of Education**
**CC: Dr. Robert Nielsen, Superintendent, Mrs. Sally Tucker, Assistant**
**Superintendent of Curriculum, Mrs. Becky Francois, Director of Special Education**
**March 1, 2002**

As you are aware, I am reinstating the Due Process hearing on behalf of my son Anthony Malone. This reinstatement is due in part, because the Special Education Department and the Administration at Bloomington High School, once again are in violation of my son's I.E.P. After reviewing the previous records from the first Due Process hearing, in which the violators of my son's rights were Dr. Robert Nielsen, Mrs. Becky Francois, Mrs. Cindy Helmers, Mrs. Cindy Lundberg, Mr. Barry Reilley, Mrs. Anne-Marie Stephens, Mrs. Donna Engles, and the attendants clerks, it is time for the truth to be told.

In preparation for Anthony's I.E.P. meeting, I spoke with the psychologist at Bloomington high school and requested to have him retested by Dr. Joanne Walters. Mrs. Whalen responded positively stating that she was sure that Mrs. Francois would contact Dr. Walters. After about two weeks, I received a call from Mrs. Francois stating that Dr. Walters would not be administering the diagnostic test to Anthony. I was very upset and asked why.

Mrs. Francois proceeded to tell me that Dr. Walters was **not qualified** to give Anthony the test and that the district was going to use someone who was. She stated that Dr. Walters was Director of Title I and the Gifted program and not qualified to retest him. I am very upset. **There will be no game playing this time!** So what is she telling me, the first test doesn't count? **Did she have an unqualified person test my son?** My question to you and to Mrs. Francois is since Dr. Walters was qualified to administer the first test, why is she not qualified now? **Mrs. Francois continued to say that Dr. Walters was used because she was the only person available**. At the initial staffing, Mrs. Francois introduced Dr. Joanne Walters as the **district's reading specialist** who has done a number of these tests. Is she no longer the reading specialist? **I find Mrs. Francois's comments about Dr. Walters to be unprofessional and demeaning her character. Does the district tolerate this type of behavior from Mrs. Francois???**

My husband and I had the pleasure of working with Dr. Walters, a year ago when she first tested our son. At the staffing, Dr. Walters presented a professional, comprehensive and detailed report of my son's performance on the test. Anthony and Dr. Walters were able to establish a positive relationship and I believe he performed to the best of his ability for her.

We are submitting a written request to have Dr. Walters retest our son, Anthony Malone. We were satisfied with her testing and the results. **We feel that she was qualified then and she is qualified now.** Anthony responded well to Dr. Walters. She treated him with respect and dignity. He admires her for that. We feel that he will respond better with the same person.

To: Bloomington District 87 Board of Education
Cc: Dr. Robert Nielsen, Superintendent, Mrs. Sally Tucker, Assistant Superintendent of Curriculum, Mr. Barry Reilly, Principal-BHS, Mrs. Becky Francois, Director of Special Education, Mr. Timothy Moore, Assistant Principal-BHS
From: Mr. Anthony Malone and Mrs. Barbara Malone, Parents
**Re: Student Identification Badge: Suspension of Anthony Malone**

Date: March 13, 2002

This complaint is being filed against Bloomington High School-Mr. Tim Moore, Assistant Principal, Mr. Barry Reilley, Principal, Mrs. Cindy Helmers Associate Principal, Mrs. Becky Francois, Director of Special Education, Mrs. Sally Tucker, Superintendent of Curriculum and District 87 Board of Education.

On March 11, 2002, my son Anthony Malone was suspended because of an incident relating to the Student Identification Badge Policy. I received a letter Tuesday, March 12th from Mr. Tim Moore stating that my son was suspended from school for inappropriate language made to an administrator. What the letter failed to state was the inappropriate language used and the incident that preceded the infraction. The letter also failed to state that the incident involved the student identification badge and the denial of my son lunch that he had paid for. It was not until after I had spoken to Anthony that I became aware of the details of what had transpired. Please find Mr. Moore's letter enclosed.

### Details of the Incident

During the 11:30 lunch hour, Anthony was ordered by the cafeteria worker, to stop eating and put his lunch back until he got his badge. He was told that he was not allowed to eat if he was not wearing it. Anthony explained that he was running late and left his coat ( with badge in pocket) in Mrs. Irvin's classroom which was locked. The cafeteria worker called Mr. Moore over, yelling that Anthony did not have his badge and should not be allowed to eat. Anthony again explained the situation to Mr. Moore and asked if he could take him back to the classroom or get it for him so that he could eat because he was hungry. Mr. Moore refused, explaining that if he did it for Anthony, he would have to do it for everybody. Anthony, responded by reminding Mr. Moore that he had done it before. This incident took place in the presence of Mr. Reilley and Mrs. Helmers which made Anthony feel that if they had not been present Mr. Moore would have at least allowed him to eat the lunch that he had paid for. Mr. Moore did offer to take Anthony to the office to buy yet another identification badge. Anthony did not have any money. Anthony questioned the fairness of requiring him to purchase another badge when he had one in his classroom. This was an impossible situation. Students are allowed 30 minutes for lunch and 5 minutes to get to class. There was no way for him to get his badge out of a classroom that was locked and return to the cafeteria with anytime to eat and get to class on time. After being embarrassed in front of his peers, Anthony turned to leave and said "just forget it, I won't eat, this is all just B.S." Mr. Moore approached Anthony and asked

$$EXHIBIT \ J \ (1 \ of \ 4)$$

what he had said. In anger and humiliation, he said, this is just bull shit. In front of Anthony's peers and other administrators, Mr. Moore stated "You're out of here, you are suspended from school." Anthony responded with "I don't care."

## Educational Consequences

My son was suspended from school for the remainder of the day. He missed his last hour class which was Commercial Foods in the Area Vocational Center. This was a two hour class. On Friday, March 8, 2002, a building conference was held to discuss the attendance policy in the AVC program and how it related to Anthony's IEP. Participants were Dr. Steve Posnick Director of AVC, Mr. Tim Moore, Mrs. Whalen, Psychologist, Mrs. Jane Irvin, Case Manager, Mrs. Speers, Commercial Foods Teacher, and my husband and I. I requested the conference because I wanted clarification of the attendance policy and guidelines. I also wanted to make sure that Anthony's teachers were aware of his IEP and the importance that Special Education guidelines and procedures were followed. Dr. Posnick stressed the importance of class attendance because of the difficulty of repeating labs and cooking instructions. Mr. Moore, and Bloomington High School Administration and the Special Education Department was well aware of at least two things:

1. The court order by Judge Dempsey during the initial Due Process Hearing: Because of the gross misconduct of teachers and administrators toward my son, No Out of School Suspensions or Saturdays would be used to discipline him. Positive behavioral interventions, or before or after school detentions were to be issued. This stipulation is in the IEP.

2. During the March 8, 2002 building conference, the importance of attendance was stressed. Suspending Anthony from school prevented him from attending his class, thus violating his civil rights to a free and appropriate education.

**Legality of School Policy** The Bloomington District 87 Board of Education is the policymaking arm of the district. It's legal, moral and ethical responsibility is to make policies that are fair and equitable to all students. Who was involved in setting up this policy? Were parents and students allowed to voice their concerns. I never was. I challenge the legality and fairness of the Student Identification Policy for the following reasons:

1. It discriminates against low income students who can not afford to purchase or replace lost badges.

2. It discriminates against special education students like Anthony who are challenged in areas of memory and language processing skills (both visual & auditory).

3. It is a violation of the civil rights of students- According to Bloomington High School

$EXHIBIT (244)$

Policy, students are denied the right to eat lunch without wearing the identification badge. Anthony had purchased his lunch, and was not allowed to eat it.

4. Failure to wear the badge or inability to purchase or replace it if lost or damaged results in punishment that ranges from in-school suspensions to Saturday detentions, denial of food and in Anthony's case also the denial of his right to be educated.

5. Parents and the community at-large are uninformed of the guidelines and policies regarding the identification badge. There is nothing in the Student Handbook that states the denial of food if a student does not have his or her badge.

### Due Process Hearing

**The Due Process Hearing is being requested because of the continuation of gross violations to my son's IEP and orders and constraints placed on Bloomington High School Administration that are being ignored.**

**This complaint is intended to place District 87 Special Education Department on notice for neglecting to properly in-service, train and education the administrators throughout the district regarding the federal laws that are put in place to protect our children. It shows a continued lack of communication on the part of the Special Education Department that is ultimately to blame for the disproportionate number of black males and other special education students who have been wrongly suspended, expelled and set up to drop out of school. The Board of Education is responsible for ensuring that Federal and State policies are being followed. The curriculum and instruction that was denied to my son falls under the responsibility of not only Mrs. Becky Francois, Director of Special Education, but her supervisor, Mrs. Sally Tucker who is Assistant Superintendent of Curriculum. You are all responsible for the welfare of all children.**

We have had a number of conversations with Mr. Moore regarding the Identification Badge Policy. This is the second time we have written a formal complaint against Mr. Moore and the Bloomington High School Administration.

### Formal Complaint #1

We received a letter from Mr. Moore stating that Anthony was issued a 4 hour Saturday detention for not paying for a replaced badge. My husband and I met with Mr. Moore. My husband informed Mr. Moore that he had personally paid the money to him (Mr. Moore) in October of 2001. We refused to allow our son to serve the Saturday detention until Bloomington High School checked their records and proved that the badge had not been paid for. After filing a formal complaint, we received a letter from Mr. Moore stating that after reviewing their records they found that the badge had been paid for and

ERHIBIT J (374)

that Anthony didn't have to serve the detention. He also stated that the initial suspension letter had been sent out by mistake. Before issuing detentions and sending out letters, Mr. Moore should have double checked his records. It would have saved us all, considerable stress and discomfort. This is a form of harassment.

My personal feelings are that my son is being targeted as a form of retaliation because of our request for the Due Process Hearing to resume.

EXHIBIT J (4-14)

To: **Bloomington District 87 Board of Education**
CC: **Dr. Robert Nielsen, Superintendent, Mrs. Sally Tucker, Assistant**
**Superintendent of Curriculum, Mrs. Becky Francois, Director of Special Education**
**March 1, 2002**

As you are aware, I am reinstating the Due Process hearing on behalf of my son Anthony Malone. This reinstatement is due in part, because the Special Education Department and the Administration at Bloomington High School, once again are in violation of my son's I.E.P. After reviewing the previous records from the first Due Process hearing, in which the violators of my son's rights were Dr. Robert Nielsen, Mrs. Becky Francois, Mrs. Cindy Helmers, Mrs. Cindy Lundberg, Mr. Barry Reilley, Mrs. Anne-Marie Stephens, Mrs. Donna Engles, and the attendants clerks, it is time for the truth to be told.

In preparation for Anthony's I.E.P. meeting, I spoke with the psychologist at Bloomington high school and requested to have him retested by Dr. Joanne Walters. Mrs. Whalen responded positively stating that she was sure that Mrs. Francois would contact Dr. Walters. After about two weeks, I received a call from Mrs. Francois stating that Dr. Walters would not be administering the diagnostic test to Anthony. I was very upset and asked why.

Mrs. Francois proceeded to tell me that Dr. Walters was **not qualified** to give Anthony the test and that the district was going to use someone who was. She stated that Dr. Walters was Director of Title I and the Gifted program and not qualified to retest him. I am very upset. **There will be no game playing this time!** So what is she telling me, the first test doesn't count? **Did she have an unqualified person test my son?** My question to you and to Mrs. Francois is since Dr. Walters was qualified to administer the first test, why is she not qualified now? **Mrs. Francois continued to say that Dr. Walters was used because she was the only person available**. At the initial staffing, Mrs. Francois introduced Dr. Joanne Walters as the **district's reading specialist** who has done a number of these tests. Is she no longer the reading specialist? **I find Mrs. Francois's comments about Dr. Walters to be unprofessional and demeaning her character. Does the district tolerate this type of behavior from Mrs. Francois???**

My husband and I had the pleasure of working with Dr. Walters, a year ago when she first tested our son. At the staffing, Dr. Walters presented a professional, comprehensive and detailed report of my son's performance on the test. Anthony and Dr. Walters were able to establish a positive relationship and I believe he performed to the best of his ability for her.

We are submitting a written request to have Dr. Walters retest our son, Anthony Malone. We were satisfied with her testing and the results. **We feel that she was qualified then and she is qualified now.** Anthony responded well to Dr. Walters. She treated him with respect and dignity. He admires her for that. We feel that he will respond better with the same person.

EXHIBIT K (1-5)

Dr. Walters has worked with Anthony's reading teacher and is responsible for assisting in setting up his reading program. The books he is currently using were recommended by her. She is more qualified to assess his reading skills than anyone else.

## Due Process Update

On or around February 26th the Mrs. Francois called my house. Mrs. Francois requested that my husband and I meet with her and the district's attorney Mrs. Paisley. We do not feel comfortable meeting with the director and the district's attorney without having our own present. We feel that our trust has been betrayed by the district and we refuse to attend any meeting without having everything recorded and again, our attorney or a judge present. This will prevent lies and slanderous statements from being made against my family and anyone else in support of our cause.

According to Attorney Paisley and Judge Judy Dempsey, our son lost a whole year of his education because of gross violations of his rights. These statements are recorded in the hearing transcript. Key administrators at Bloomington high school and the central office were rewarded rather than reprimanded for their actions. The district has refused to paid the certified psychologist his professional fees. Medical bills and other miscellaneous expenses have yet to be discussed with the district. Actions of retaliation against district employees who spoke out against the violations and advocated for my son have also taken place.

We are addressing our concerns to you, District 87 school board. If you were unaware of the reasons for the Due Process hearing, the gross negligence and mistreatment, singling out and profiling of my son by key administrators, you know as of now. My son was tormented to the point of suicide. You are duly elected representatives of the community and each and every child in the school district. You are responsible for the actions of all district personnel and ultimately responsible for what happens to our children. Again, my child's rights have been grossly violated. key administrators were informed and asked to stop the abuse and harassment. What they did do was to lie in their office about having a child who attended Bloomington high school and how a certain administrator harassed their kid too and kicked him out of school. We were appalled that an administrator in a top leadership position would stoop so low to protect another employee and lie rather help my child. After that meeting, my son was severely abused.....

If you are interested in documentation of the above charges and comments, please contact me at:
408 East Douglas
Bloomington, Illinois 61701

Sincerely,

Mr. Anthony Malone and Mrs. Barbara Malone

Barbara Malone          EXHIBIT K
Anthony Malone  (2-5)

# BLOOMINGTON PUBLIC SCHOOLS
## SCHOOL DISTRICT 87

**300 East Monroe Street**
**Bloomington, IL 61701**

**Dr. Robert S. Nielsen**
**Superintendent of Schools**

**Telephone (309) 827-6031**
**FAX      (309) 827-5717**

March 7, 2002

**Mr. Richard Laleman**
**Assistant Superintendent of Human Resources**

**Mr. Robert Meeker**
**Assistant Superintendent of Operations**

**Mrs. Sally Tucker**
**Assistant Superintendent of Curriculum**
**and Instruction**

Mr. and Mrs. Anthony Malone
408 East Douglas Street
Bloomington, IL  61701

Dear Mr. and Mrs. Malone:

I am writing in response to your memorandum dated March 1, 2002 addressed to the Bloomington District 87 Board of Education.

Anthony's annual review staffing was scheduled for February 18th at 10:10 a.m. Mrs. Whalen advised me that early in the morning of the 18th she received a call from you requesting that the review be cancelled and that additional assessments be conducted prior to the meeting being rescheduled. According to Mrs. Whalen, you indicated that you would contact Ms. Trissel, HILIA Facilitator regarding retesting at ISU and that you were requesting that Dr. Walters retest Anthony in reading. You further requested that representatives from Lincoln College and Heartland Community College attend the rescheduled review to assist with transition planning. In conversation with Ms. Trissel, she stated that she had previously contacted you to arrange for an audiological evaluation at ISU. It is my understanding that this has been scheduled for March 18th. She also stated that the April 19, 2001 report from the Eckelmann-Taylor Speech and Hearing Clinic recommended that Anthony return to the clinic if he noticed a change in his current hearing status. If the audiological evaluation completed on the 18th indicates a need for additional assessment, Ms. Trissel will assist you in scheduling the assessment. On February 26th, I contacted you by phone to discuss the requested reading evaluation. I advised you that the District would complete the requested reading evaluation but that someone other than Dr. Walters would administer it. I advised that I was not going to request Dr. Walters administer the test as she was the Director of Title and Gifted Services and did not typically conduct individual reading assessments. At no time did I indicate to you that Dr. Walters was not qualified to administer the test. Following our conversation, I spoke with Dr. Walters regarding the qualifications required to administer the assessment and she stated that she was more than willing to test Anthony. Dr. Walters is certified as a reading specialist and has been conducting reading assessments since 1987. On February 28th, March 1st and March 5th I called and left messages requesting that you contact me. The purpose of my calls was to clarify that Dr. Walters was the Administrative Director of Title, Gifted and Reading and that she would be testing Anthony in April. Finally, regarding your requests for the annual review staffing, Mrs. Whalen will invite the representatives from Lincoln and Heartland College to the meeting when it is rescheduled.

In our telephone conversation, I asked if you would be willing to meet with Ms. Paisley, School District Attorney, and myself prior to the pre-hearing scheduled for March 18th. I indicated that the District had not received a bill from Dr. Stoner but would be willing to pay upon receipt. I also inquired about your mileage and the number of times Anthony had seen Dr. Stoner. I understood you to say that you were waiting for information from Dr. Stoner and that he was getting that information together for you. You certainly have the right to bring your attorney and/or tape record any meeting that you have with Ms. Paisley and myself.

Please contact me if you have any questions or would like to schedule a meeting.

Sincerely,

Rebecca Francois
Director of Special Education

Cc:    Dr. Robert Nielsen - Superintendent of Schools
       Megan Paisley - Miller, Tracy Braun, Funk and Paisley, LTD.

EXHIBIT K (3-5)

To: District 87 Board of Education, Bloomington Public Schools

From: Mr. Anthony Malone and Mrs. Barbara Malone

Cc: Dr. Robert Nielsen, Superintendent of Schools; Mrs. Sally Tucker, Superintendent of Curriculum; Mrs. Becky Francois, Director of Special Education, Dr. Joann Walters, Director of Title I., Gifted Services and Reading; Megan Paisley-Miller, Tracy Braun, Funk and Paisley, LTD

Date: March 13, 2002

I am writing in response to Mrs. Francois's letter dated March 7, 2002. I appreciate her attempts at providing a factual account of communication between the various parties, however, there are serious discrepancies in her account of our phone conversation on February 26, 2002, regarding Dr. Joanne Walters' qualifications to test my son. I would like to correct a statement made in her letter, "At no time did I state to you that Dr. Walters was not qualified to administer the test." Mrs. Francois clearly stated that Dr. Walters was not qualified to administer the test to my son because she was the Director of Title I and Gifted Services.

From her statement, I was made to believe that the Title I and Gifted Services had nothing to do with reading. I was aware however that Mrs. Francois introduced Dr. Walters as the Reading Specialist at the October, 2000 staffing. I asked her if she was qualified then to give the first test, why was she not qualified now. I realized then that the games were beginning and that's why I stated in my letter to you, that there will be no games played this time.

This is a perfect example of why my husband and I refused to meet with Mrs. Francois and Attorney Paisley without our attorney or a judge present. To me, she is indicating that I am a liar. It would not profit me or my son in any way to lie on Mrs. Francois or anyone else. I have in my possession the Parent/Guardian Consent for Evaluation/Reevaluation Form dated October 23, 2000, at which time Dr. Walters was

EXHIBIT K – (4 45)

introduced by Mrs. Francois as the **Reading Specialist**.

Mrs. Francois has found herself in an uncomfortable position. I can even understand why she feels like she needs to lie to save face. However, I will not allow her to lie on me or my husband. She owes her co-worker, Dr. Walters an apology for discrediting her and she owes my husband and me an apology for the stress that she caused when stating that Dr. Walters was unqualified.

Now that Dr. Walters is qualified and we are happy that she will administer the test, I have one remaining question: What was District 87's real reason for wanting to use "someone other than Dr. Walters to administer" the test?

EXHIBIT K (575)



DISTRICT NO. 87
# BLOOMINGTON HIGH SCHOOL
1202 EAST LOCUST STREET
BLOOMINGTON, ILLINOIS 61701-3394
(309) 828-5201

*Established 1857*

PARENT OR GUARDIAN OF:
ANTHONY D. MALONE
408 E DOUGLAS
BLOOMINGTON, IL 61701

STUDENT REPORT CARD FOR
ANTHONY D. MALONE
GR:09                AD:LUNDBERG
SEMESTER #2                1999-00

Grade Legend: A=Superior, B=Very Good, C=Average, D=Poor, F=Failure, P=Passing, FC=Failure and Loss of Credit
WF=Withdraw Failing, WI=Withdraw Incomplete, WP=Withdraw Passing

| | Q1 | Q2 | E1 | S1 | Q3 | Q4 | E2 | S2 | CRDTS | ABS |
|---|---|---|---|---|---|---|---|---|---|---|
| BASIC PHYS SCI ENGLE | F | D | D | D | | | | | 0.500 | 0 |
| BASIC PHYS SCI ENGLE | | | | | F | F | F | F | 0.000 | 21 |
| BASIC MATH ESS MULCAHY | F | D | F | F | | | | | 0.000 | 0 |
| BASIC MATH ESS MULCAHY | | | | | D | D | F | D | 0.500 | 21 |
| READING IMPROV SHINAULT | D | C | D | D | | | | | 0.500 | 0 |
| READING IMPROV SHINAULT | | | | | C | C | C | C | 0.500 | 18 |
| INTRO HOME EC STEFFEN | F | C | D | D | | | | | 0.500 | 0 |
| INTRO HOME EC STEFFEN | | | | | F | D | F | F | 0.000 | 17 |
| BASIC KEYBOARD YODER | C | C | B | C | | | | | 0.500 | 0 |
| BASIC KEYBOARD YODER | | | | | C | C | C | C | 0.500 | 21 |
| HEALTH DUMMER | | | | | D | B | D | C | 0.500 | 22 |
| AFFECTIV INTER BROUGHTON | D | C | D | D | | | | | 0.500 | 0 |
| PE 9 GARDNER | | | | | C | C | C | C | 0.500 | 19 |

TOTAL EARNED CREDITS        5.000
CUMULATIVE EARNED CREDITS   5.000
CUM GPA    1.250

| | EXCUSED | UNEXCUSED | TARDY |
|---|---|---|---|
| YEAR TO DATE | 16.00 | 23.50 | 0 |

*Both of these teachers told I and my husband they were going to fail our son Anthony for their class. This was told to us before final test and grades were done. After they made this statement they told us "to" "go get our attorney!!"*

EXHIBIT L (1 of 2)

G-96

11:15  5/15/03    AVC DESK

Anthony Malone and another lad
came out of the culinary class and came
up to my desk. They started snooping
around the papers and then Anthony
tried to grab something out the sign-in
book. I grabbed him by the wrist and
told him to not touch anything or
I would break his fucking arm. He walked
away and turned around and told me
to suck his dick.

C. Mansee

EXHIBIT L (2 of 2)



"Please Meet
"Anthony"
Delance
Malone"

I am in school writing this for you. I think you for all the thing you help me

with. I went to said I love you. Today is your day you can do what you

went to do O.K. That is all I have to said to you is have a fun time on

mother day.

Anthony Malone
Keyboarding-5
DEAR MOMMY



This picture was taken 2 days after Lance was put back in his classroom and lunch hour.

"He was just a small fry then"

"He still look sad, but relieved"

He was so happy "After I got him out of the detention room and back in school"

Anthony Malone Funeral Service

Introduce myself. I was one of Anthony's teachers at Bl. High School. I had the privilege of spending an hour a day with Anthony daily for two school years. I am grateful that I was able to play a small part and share a bit of Anthony's life.

Anthony was in one class that I remember for the challenge many of the children that hour would present to me in terms of behavior. There in the midst of this challenging group was Anthony Malone who never made life difficult for me. Anthony didn't seem interested in taking part when some of these children were trying my patience. Anthony always treated me with respect and impressed me with his politeness, his cooperation and his sweet disposition. Anthony was truly a joy to have in class.

We all know that children can be cruel sometimes to one another. I can't recall a single incident when Anthony exhibited mistreatment of another person—be it student or teacher. From my experience with Anthony, I doubt he ever did a mean thing to anyone in his life. Anthony was just there in class with his pleasant disposition and his sense of humor, enjoying his day and just there ready to be friends with everyone.

Anthony was a sweet child who brought joy to many lives. He was a product of a fine upbringing, obviously from a family who surrounded him with love all of his life!

Barbara and and Anton, in all my 27 years of teaching, I never met parents who were as involved with their child's education as the two of you. You wanted to be kept informed on a daily basis on your son's progress. You never left a stone unturned and you always went the extra mile to make certain that your child's rights were respected and his needs were met. I admire this dedication of yours and and I know it came from the deepest kind of love that there can be in this life. You raised a very happy and good child. I hope that knowing you did your job as wonderful parents brings you some comfort.

I bumped into Anthony a couple of times this past summer. He always had a hug and that beautiful smile for me. I will miss him.

EXHIBIT M (2 of 5)

To the parents and the rest of the family, my words are inadequate to express my sympathy. During this difficult time and always, I want to say to you in the words of a line from an old Irish blessing that my family loves—"May God hold you in the palm of His hand........

" This was written and read by one of Anthony teachers " That did care about him and our struggle.

School days should be a happy experiance for students, not a experiance of tears ...

" This is the young man they abused." I thank God that all of his teachers did not mistreat him. Only the ones listed in this suit Our son take what these people did to him to his grave. I think its ashame he had to go through what he experiance. I made my son a promise to be by his side throughout this case. My promise did not end because he died. I am seeking justice for Anthony DeXance Malone.

EXHIBIT M (3 of 5)

**The Jesse White Scholars**
**and**
**Tutoring Program**
**(Fax Transmittal)**

TO: _Mr. Robert F. Landesan_
_312- 567- 5187_

FROM:

Yvonne C. Jones
Executive Director
The Jesse White Scholars and Tutoring Program
Phone/Fax: (312) 943-4846

DATE: _Nov. 11, 2003_

PAGES: (Including Cover) _2_

NOTE:

_Care Re: Anthony DeLance Malone._
_# 002 615_

Thank you!

EXHIBIT A (4 of 5)

TO:         Mr. Robert F. Landensen
            Hearing Officer

FROM:       Yvonne C. Jones

DATE:       November 21, 2003

RE:         Mr. Anthony DeLance Malone
            Case # 002615

This memo is being written in support of the Malone Family to continue the Due Process Hearing on behalf of their son Anthony DeLance Malone.

I have known the Malone family for almost 15 years and was quite aware of the family desire to see justice prevail in this case that involved their son Lance. Lance was a very caring young man who felt that as a Special Ed student, he was treated unjustly by his teacher. The experience was a very difficult one for him and his family.

No one can really understand the frustration that a Special Ed student goes through as they try to navigate through the education process. That process becomes even more devastating when obstacles are put in their path toward success. Prior to Lance's death, he conveyed to his mom the importance of her continuing with the Due Process Hearing - not just for himself but for other students who may not have a voice.

I sincerely hope that his wish and hope for others will continue. He and his family will then believe that his life had a purpose to help others who may not have someone else to speak on their behalf.

EXHIBIT M (595)

## MALONE v. ILLINOIS STATE BOARD OF EDUCATION, et al.
### SERVICE LIST

CERTIFICATE OF SERVICE OF  MoTioN To ADD EXHiBiTs

The Malones hereby state that the above certificate and attachments were served upon the names below, at the addresses shown below by placing copies of same into envelopes correctly addressed as aforesaid. bearing sufficient first class postage prepaid, and depositing same into the U.S. Mail at ｐＯＳＴ ＯＦＦ ／ｃｅ ０Ｎ ＴＡＷＡＮＤＡ ＡＶＥ， Ｂ／Ｍ.Ｉ２.６／７０／ December 7ｙ⁻

Megan Guenther
MILLER, TRACY, BRAUN, FUNK, & GUENTHER, LTD.
316 South Second Street
P.O. Box 80
Monticello, Illinois 61856-0080

Stephanie L. Shallenberger
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62706

Darcy L. Procter
140 South Dearborn, 6th Floor
Chicago, Illinois 6060
Anthony Malone

Barbara Sims-Malone

408 East Douglas
Bloomington, Illinois 61701